**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**CYNTHIA D. PAJAK,**

**Plaintiff,**

**v.**

**UNDER ARMOUR, INC.,
UNDER ARMOUR RETAIL, INC.,
AND BRIAN BOUCHER,**

**Defendants.**

**Civil Action No. 1:19-CV-160
(JUDGE KEELEY)**

## MEMORANDUM OPINION AND ORDER

This matter is before the undersigned pursuant to Referral Orders (ECF Nos. 41 and 48) entered by Honorable Senior United States District Judge Irene M. Keeley. On December 19, 2019, District Judge Keeley entered a Referral Order (ECF No. 41) referring Defendant Under Armour Retail, Inc.'s Motion to Compel *Plaintiff to Produce Discoverable Information* (ECF No. 38) and Plaintiff Cynthia D. Pajak's Motion to Compel *Under Armour Defendants to Fully Respond to Plaintiff's Discovery Requests* (ECF No. 39) and Motion to Compel *Defendant Boucher to Fully Respond to Plaintiff's Discovery Requests* (ECF No. 40) to the undersigned for a hearing and disposition. On January 9, 2020, District Judge Keeley further entered an Order referring Plaintiff's Motion for Protective Order *Regarding the Deposition of Brian Boucher* (ECF No. 47) to the undersigned for a hearing and disposition.

The undersigned held a combined Motion Hearing on January 14, 2020, at which Plaintiff Cynthia D. Pajak appeared by Counsel Allison B. Williams, Esq. and Larry J. Rector, Esq., the Under Armour Defendants by Counsel Grace E. Hurney, Esq. and Justin M. Harrison, Esq., and Defendant Brian Boucher by Counsel Scott H. Kaminski, Esq. Accordingly, for the reasons stated herein, Defendant Under Armour Retail, Inc.'s Motion to Compel *Plaintiff to Produce*

*Discoverable Information* (ECF No. 38) is **GRANTED IN PART** and **DENIED IN PART** to the extent consistent with this Order; Plaintiff Cynthia D. Pajak's Motion to Compel *Under Armour Defendants to Fully Respond to Plaintiff's Discovery Requests* (ECF No. 39) is **GRANTED IN PART AND DENIED IN PART** to the extent consistent with this Order; Plaintiff's Motion to Compel *Defendant Boucher to Fully Respond to Plaintiff's Discovery Requests* (ECF No. 40) is **GRANTED;** and Plaintiff's Motion for Protective Order *Regarding the Deposition of Brian Boucher* (ECF No. 47) is **GRANTED**.

## I.  BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Cynthia D. Pajak ("Plaintiff") initiated this action by filing a Complaint on July 16, 2019, in the Circuit Court of Harrison County, West Virginia, alleging wrongful discharge, violations of the West Virginia Human Rights Act, Negligent Hiring, Supervision, and Retention, and Intentional Infliction of Emotional Distress or Tort of Outrage against her former employer, Under Armour, Inc., Under Armour Retail Inc., and her supervisor Brian Boucher ("Defendants") (ECF No. 1-1 at 3-20). Plaintiff's claims against the Defendants are rooted in allegations of gender-discrimination and retaliation.

Defendants, Under Armour, Inc., and Under Armour Retail, Inc. (collectively "Under Armour") removed this action from the Circuit Court of Harrison Count, West Virginia, to the United States District Court for the Northern District of West Virginia, Clarksburg Division, on August 19, 2019. (ECF No. 1).

On September 2, 2019, Defendant Under Armour Retail, Inc. served its *First Set of Interrogatories and Requests for Production of Documents to Plaintiff.* (ECF No. 12). On October 2, 2019, Plaintiff served her *First Set of Interrogatories* (ECF No. 13) and *First Request for Production of Documents* (ECF No. 14) on the Under Armour Defendants. On October 3, 2019,

Plaintiff further served her *First Set of Interrogatories* (ECF No. 15) and *First Request for Production of Documents* (ECF No. 16) on Defendant Brian Boucher. On October 28, 2019, Plaintiff served her *Answers, Responses and Objections to Defendant Under Armour Retail, Inc's First Set of Interrogatories and Requests for Production of Documents to Plaintiff* (ECF No. 27). On November 4, 2019, Defendant Brian Boucher served his *Responses to Cynthia Pajak's First Set of Interrogatories* (ECF No. 30) and *Responses to Cynthia Pajak's First for Production of Documents*. (ECF No. 31). The Under Armour Defendants filed their *Responses to Plaintiff's First Set of Interrogatories* (ECF No. 32) and *Responses to Plaintiff's First Requests for Production of Documents* (ECF No. 33).

On November 26, 2019, the Under Armour Defendants filed a Stipulation (ECF No. 36) in which the parties agreed to extend the thirty day deadline for filing motions of compel under L.R. Civ. P. 37.02(b) to December 18, 2019, in order to allow the parties to continue conferring on their discovery disputes in good faith.

Accordingly, on December 18, 2019, the Under Armour Defendants filed a Motion to Compel *Plaintiff to Produce Discoverable Information* (ECF No. 38) and Plaintiff filed a Motion to Compel *Under Armour Defendants Fully Respond to Plaintiff's Discovery Requests* (ECF No. 39) and a Motion to Compel *Defendant Boucher to Fully Respond to Plaintiff's Discovery Requests* (ECF No. 40). Plaintiff further filed a Motion for Protective Order *Regarding the Deposition of Brian Boucher* (ECF No. 47) on January 9, 2020. Each party submitted Responses in Opposition to the respective Motions and Replies to the Responses. This matter has been fully briefed. A combined motion hearing was held before the undersigned on January 14, 2020.

## II.   <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 26 states: "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Significantly, "relevant information need not be admissible at the trial if the discovery appears reasonable calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26.

Further, Federal Rule of Civil Procedure 33 governs interrogatories and provides in relevant part: "[e]ach interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for the objection and shall answer to the extent the interrogatory is not objectionable." Fed. R. Civ. P. 33. Further, all objections "must be stated with specificity." Id. Objections of the "familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive, and irrelevant' will not suffice." Momah v. Albert Einstein Medical Center, 164 F.R.D. 412, 417 (E.D. Pa. 1996) (quoting Josephs v. Harris Corp., 677 F.2d 985, 992 (3d Cir. 1982)).

Requests for Production and responses thereto are governed by Federal Rule of Civil Procedure 34. Fed. R. Civ. P. 34 states in relevant part: "[f]or each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Further, [a]n objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest."

When a party deems responses to interrogatories and requests for production insufficient or improper, a party may file a Motion to Compel under Federal Rule of Civil Procedure 37(a)(2)(B). Fed. R. Civ. P. 37(a)(2)(B) provides, in pertinent part, that if a party declines to answer

an interrogatory or request for production, the serving party "may move for an order compelling an answer, or a designation, or an order compelling inspection in accordance with the request." The party opposing the motion to compel bears the burden of proving why the motion should not be granted. Rogers v. Tri-State Materials Corp., 51 F.R.D. 234, 247 (N.D.W. Va. 1970). Pursuant to Local Rule of Civil Procedure 37.02(b) a motion to compel or other motion in aid of discovery is deemed waived if it is not filed within thirty (30) days after the discovery response or disclosure requirement sought was due. With these rules in mind, the undersigned will address each of the issues presented in the parties' Motions in the order which they were filed.

## III.    ANALYSIS

### A. Defendant, Under Armour Retail, Inc's Motion to Compel Plaintiff to Produce Discoverable Information (ECF No. 38)

#### 1. Interrogatory Nos. 4 and 5 and Requests for Production Nos. 8 and 9

Defendant's Interrogatory No. 4 submitted to Plaintiff in their *First Set of Interrogatories and Requests for Production of Documents*, Defendant requested Plaintiff to "[l]ist each and every physician, health care provider, counselor, psychiatrist, psychologist, hospital, clinic, and /or therapist that you have treated with from January 1, 2009, to the present, identifying for each the address, telephone number, and dates of treatment." (ECF No. 38 at 2). Plaintiff objected to this request as "overly-broad, unduly burdensome and meant to annoy, embarrass or harass her as the request is not limited to medical treatment related to Ms. Pajak's claims against Defendants and is overly-broad in temporal scope." Id. Plaintiff further objected as follows:

> Health care records are, by nature, highly confidential, and thus, entitled to special protection from unfettered release. *Keplinger v. Virginia Elec. And Power Co.*, 208 W. Va. 11, 23, 537 S.E.2d 632, 644 (2000). Even when a plaintiff's medical condition is placed at issue in a West Virginia action, it does not automatically follow that the defendants are entitled to collect all of the plaintiff's medical records. *Id.* ("While we acknowledge that a person who has filed a civil action that places a medical condition at issue has impliedly consented to a release of medical

information, this implied consent involves *only* medical information *related to the condition placed at issue*. In this regard, we stated in *Kitzmiller* that the "absence of [a physician-patient] privilege contemplates the release of medical information *only* as it relates to the condition a plaintiff has placed at issue in a lawsuit; it does not efface the highly confidential nature of the physician-patient relationship that arises by express or implied contract.'"). *Id.* (internal citations omitted). Subject to and notwithstanding this objection, Ms. Pajak has not sought medical or mental health treatment, or been prescribed any medications, as a result of the discrimination she suffered from Defendants.

Id. at 3.

Defendant's Interrogatory No. 5 submitted to Plaintiff in their *First Set of Interrogatories and Requests for Production of Documents*, asks Plaintiff to "[l]ist each and every pharmacy or other facility where you have had prescriptions filled from January 1, 2009, to the present, identifying the address and telephone number." Id. Plaintiff's Answer to Interrogatory No. 5 states the same objection as detailed above in Plaintiff's Objection to Interrogatory No. 4.

Defendant's Request for Production No. 8 asks Plaintiff to "[e]xecute and return the attached 'Authorization for Release of Health Information' to enable Defendant's counsel to obtain the medical records of Plaintiff from January 1, 2009, to the present. (Defense counsel will provide a copy of all records received to Plaintiff's counsel free of charge)." (ECF No. 38 at 3 – 4). Plaintiff's Answer to Defendant's Request for Production No. 8 states the same objection as detailed above in Plaintiff's Objection to Interrogatory No. 4.

Defendant's Request for Production No. 9 asks Plaintiff to "[p]roduce complete copies of any and all medical records, medical bills, and/or pharmacy records in your possession encompassing the time period of January 1, 2009, through the present." Id. at 4. Plaintiff's Answer to Defendant's Request for Production No. 9 states the same objection as detailed above in Plaintiff's Objection to Interrogatory No. 4.

Defendant argues in their Motion to Compel (ECF No. 38) that Plaintiff has placed her medical history at issue in this case due to Plaintiff seeking emotional distress damages as a result of being discharged from her employment. Id. at 7. Defendant argues "Plaintiff's medical history is apt to have bearing on causation and the extent of her emotional distress damages." Id.

In her Response (ECF No. 43), Plaintiff argues the Under Armour Defendants' request is "overly-broad" and will "elicit medical information that is completely unrelated to Ms. Pajak's claims: for instance, information concerning whether Ms. Pajak sought medical treatment for a common cold, appeared for a gynecological examination or received a script for an antibiotic for an infection." (ECF No. 43 at 5). Plaintiff further states that she does not plan to "blackboard" any "medical bills at trial" nor has she "sought treatment related to the claims set forth in her Complaint." Id. Plaintiff further argues that Defendant's request is overly broad in temporal scope as Defendant seeks medical records dating from January 1, 2009, through the present when Plaintiff did not begin "working for the Defendants until **November 2012**" and the allegations of Plaintiff's Complaint did not occur "until **2018**." Id. at 6.

### a. Order

The undersigned has considered the arguments of both parties and the undersigned is of the opinion that the case of Carpenter v. RES-CARE Health Servs., 3:12-CV-08047, 2013 U.S. Dist. LEXIS 57928 (S.D.W. Va. Apr. 23, 2013) is the most relevant and on point for the issues presented by the Under Armour Defendants' Motion to Compel (ECF No. 38). In Carpenter, the Defendant sought discovery of Plaintiff's medical records. Plaintiff argued that "her medical records are not relevant because she has not placed her medical, physical, or psychological condition at issue." Carpenter, 2013 U.S. Dist. LEXIS 5798, at *5. Plaintiff had alleged only a "garden variety" emotional distress claim and had not undergone any mental health treatment. Id.

In ruling in the Defendant's favor, Judge Eifert conducted a "review of cases decided by courts in the Fourth Circuit." Id. Judge Eifert cited the case of EEOC v. Sheffield, LLC, 2007 U.S. Dist. LEXIS 43070 (M.D.N.C. June 13, 2007), wherein the case was summarized as follows:

> In EEOC v. Sheffield, LLC, 2007 U.S. Dist. LEXIS 43070 (M.D.N.C. June 13, 2007), the District Court addressed the very argument raised by Plaintiff regarding "garden variety" emotional distress claims, finding that "[w]hen a plaintiff seeks damages for mental anguish, '[t]he medical and psychological information sought by interrogatories and requests for production are relevant as to both causation and the extent of plaintiff's alleged injuries and damages.'"

Carpenter, 2013 U.S. Dist. LEXIS 5798, at *6 (citing Sheffield, 2007 U.S. Dist. LEXIS 43070, [WL] at *4 (quoting Garrett v. Sprint PCS, 2002 U.S. Dist. LEXIS 1914, 2002 WL 181364, at *2 (D. Kan. Jan. 31, 2002)). Here the Plaintiff, like the terminated employees in Sheffield and Carpenter, is not claiming to have incurred any medical or mental health treatment as a result of the termination and Plaintiff is not planning to call any witnesses, present medical bills, or call an expert regarding any medical treatment in this case.

"Nevertheless, the Court" in both Sheffield and Carpenter "determined that defendant was entitled to plaintiff's medical, mental, and pharmaceutical history 'to determine if any prior event may affect his demand for damages.'" Id. (citing EEOC v. Dolgencorp, LLC, 2011 U.S. Dist. LEXIS 35195, 2011 WL 1260241 (M.D.N.C. Mar. 31, 2011) (Medical records are subject to discovery when a party claims emotional or mental distress.); EEOC v. Smith Bros. Truck Garage, Inc., 2011 U.S. Dist. LEXIS 2774, 2011 WL 102724, at *2 (D.Md. Sept. 8, 2010) ("Plaintiff's mental state is at issue for purposes of discovery because her emotional suffering is germane to the calculation of damages she requested in her complaint."); Jimoh v. Charlotte-Mecklenburg Housing Partnership, Inc., 2009 U.S. Dist. LEXIS 113964, 2009 WL 4062881 (W.D.N.C. Nov. 20, 2009) ("Plaintiff has placed her alleged mental state and any factor causing that mental state squarely at issue in this case. Plaintiff's medical, psychological and counseling records are both

relevant and discoverable. A party claiming compensatory damages for emotional distress, pain and suffering, and mental anguish puts her mental and physical condition at issue and must produce requested medical records."); <u>Teague v. Target Corp.</u>, 2006 U.S. Dist. LEXIS 89945, 2006 WL 3690642 (W.D.N.C. Dec. 11, 2006); <u>Coffin v. Bridges</u>, 72 F.3d 126 (4th Cir. 1995) (unpublished).

Here, the undersigned finds that by claiming damages for "severe emotional distress" and alleging that she will "likely suffer emotional distress in the future, all as a consequence of Defendants' wrongful actions (ECF No. 1-1 at 15, ¶ 38), Plaintiff has placed her mental and physical condition at issue and must be required to produce requested medical records. The undersigned further finds that Defendant is entitled to a review of Plaintiff's medical records to determine if any prior event may affect her demand for damages. However, the undersigned does find that Defendants' request for production of medical and mental health records and pharmaceutical records from January 1, 2009, through the present is overly broad in temporal scope. Therefore, the undersigned will limit Defendant's request for production of medical and mental health records to five years preceding Plaintiffs' termination of employment to the present. The undersigned further finds that Defendants' Request for Production No. 8, asking Plaintiff to execute and return an Authorization for Release of health Information, is not necessary and Defendants' Motion to Compel (ECF No 38) will be denied in this respect.

As such, **Defendants will be permitted to receive in discovery all records as framed in Interrogatory Nos. 4 and 5 and Request for Production No. 9 from December 10, 2013[1] through the present.** Accordingly, to the extent consistent with this Order, the Under Armour Defendants' Motion to Compel (ECF No. 38) is **GRANTED IN PART with respect to Interrogatory Nos. 4 and 5 and Request for Production No. 9 and DENIED IN PART with**

---

[1] Plaintiff's Complaint alleges that Plaintiff's employment with Under Armour was terminated on December 10, 2018. (ECF No. 1-1 at 14, ¶ 34).

respect to **Request for Production No. 8**. All information provided will be subject to the Protective Order previously entered in this matter. (ECF No. 35). Further, there being no objection, the undersigned has permitted the parties to revise the Protective Order (ECF No. 35) to allow for an "attorneys' eyes only" provision. The information shall be provided within three weeks from the date of this Order, **on or before February 7, 2020**.

### B. Plaintiff's Motion to Compel Under Armour Defendants to Fully Respond to Plaintiff's Discovery Requests (ECF No. 39)

#### 1. Interrogatory No. 1

Plaintiff's Interrogatory No. 1 submitted to the Under Armour Defendants in *Plaintiff's First Set of Interrogatories* (ECF No. 13) requests the Under Armour Defendants to "[i]dentify each person who provided any information used, or considered, in answering these Interrogatories." (ECF No. 39-1 at 2 ¶ 1). Defendant objected arguing that the interrogatory "seeks information that is protected by attorney client privilege and/or attorney work product privilege." Id.

##### a. Order

The undersigned is of the opinion that Plaintiff's request in Interrogatory No. 1 is standard and necessary for the progress of the case. Accordingly, the undersigned **ORDERS** that Plaintiff's Motion to Compel (ECF No. 39) with respect to Interrogatory No. 1 be **GRANTED**. The undersigned **DIRECTS** the Defendants to provide a responsive answer to Plaintiff's Interrogatory No. 1 within three weeks from the date of this Order, **on or before February 7, 2020**. To the extent Defendants seek to claim information responsive to the request is protected by attorney client privilege and/or attorney work product privilege, the undersigned **DIRECTS** Defendants to provide specific objections regarding the request demonstrating how the information is protected by the privilege.

### 2. Interrogatory No. 7 and Request for Production No. 35

Plaintiff's Interrogatory No. 7 requests Defendants to identify "each legal proceeding (lawsuits, arbitration proceedings, and complaints filed with administrative agencies) filed against Under Armour which claims of sexual harassment or gender discrimination are alleged, other than this lawsuit." (ECF No. 39-1 at 11 ¶ 7). Plaintiff agreed to limit the request to lawsuits filed within the past "five years." The Under Armour Defendants objected to this request stating that the interrogatory "seeks information that is not relevant to any claim or defense and will not lead to admissible evidence." Id. The Under Armour Defendants further objected on the basis that the interrogatory did not contain any geographical limitation nor a limitation on the scope of decisionmakers involved. Id. at 11-12. The Under Armour Defendants provided a response to the "non-objectionable portion of" the interrogatory stating "there have been no legal proceedings initiated by individuals who were supervised by Brian Boucher that alleged gender discrimination or sexual harassment within the last five years." Id. at 13.

Request for Production No. 35 submitted to the Under Armour Defendants in Plaintiff's *First Request for Production of Documents* (ECF No. 14) similarly requests Defendants to provide "[c]opies of pleadings (including complaints, petitions, counter-claims, cross-claims, cross-petitions, and answers) filed in any lawsuit naming Under Armour, Inc. and Under Armour Retail, Inc. as a party in which allegations were made concerning claims of: wrongful discharge; retaliatory discharge; or unlawful discrimination" where the lawsuit was filed within the last five years. (ECF No. 39-1 at 28, ¶ 35). The Under Armour Defendants again objected based upon relevance and stating the request will not lead to admissible evidence. The Under Armour Defendants again further objected to the request based upon the absence of nay geographic limitation or "similar basis for discrimination." Id.

At the hearing, Plaintiff's Counsel, Allison Williams, Esq. represented to the Court that Request for Production No. 35 was intended to be a request for information regarding pleadings where the lawsuit or action arose based upon allegations of gender discrimination or sexual harassment.

In Plaintiff's Motion to Compel (ECF No. 39), Plaintiff argues that "information relating to other lawsuits and/or administrative actions of a similar nature to a plaintiff" can "lead to evidence of general patters of discrimination by the UA Defendants as well as to evidence that will support a claim for punitive damages against it and may identify other witnesses who would support Ms. Pajak's claims." (ECF No. 39 at 6 – 7). The Under Armour Defendants in their Response (ECF No. 44) object to providing "any information about claims or administrative charges brought against the UA Defendants for other claims of discrimination unrelated to those asserted in Plaintiff's Complaint." (ECF No. 44 at 10). The Under Armour Defendants further reiterate their objections to both Interrogatory No. 7 and Request for Production No. 35 as previously stated.

### a. Order

Upon discussion with both parties at the hearing and considering the arguments presented, the undersigned **ORDERS** the Under Armour Defendants to provide information responsive to Plaintiff's requests as framed in Interrogatory No. 7 and Request for Production No. 35. The information shall be limited geographically to North America and shall not reach below the level of District Managers as shown in Under Armour's Organizational Flowchart and shall reach as high as the President of North America. All information regarding lawsuits, complaints, and administrative actions as framed in Plaintiff's Interrogatory No. 7 and Request for Production No. 35 shall be limited only to those in which the claims arose from allegations of gender

discrimination and sexual harassment, including claims of retaliation and wrongful discharge.

Defendants are **DIRECTED** to provide information responsive to Plaintiff's requests that is consistent with the limitations stated herein within three weeks from the date of this Order, **on or before February 7, 2020**. Accordingly, the undersigned **ORDERS** Plaintiff's Motion to Compel (ECF No. 39) be **GRANTED** with respect to Interrogatory No. 7 and Request for Production No. 35 to the extent consistent with the limitations provided herein.

### 3. Interrogatory No. 10 and Request for Production No. 32

Plaintiff's Interrogatory No. 10 asks the Under Armour Defendants to "identify every employee and every contract worker working for Under Armour, Inc. and Under Armour Retail, Inc. in West Virginia for calendar years 2017 and 2018." (ECF No. 39-1 at 15, ¶ 10). Plaintiff's Request for Production No. 32 similarly requests "[d]ocuments reflecting the number of employees and contract workers employed by Under Armour, Inc. and Under Armour Retail, Inc. and any other Under Armour subsidiary or affiliate who lived in West Virginia in 2017 and 2018. Id. at 24, ¶ 32.

Defendant objected to Plaintiff's Interrogatory No. 10[2] and Request for Production No. 32 stating that the information sought is not "relevant to any party's claim or defense and will not lead to admissible evidence." Id. at 24, ¶ 32; Id. at 15, ¶ 10. At the center of Defendants' objection and this particular discovery dispute is the statutory interpretation of the West Virginia Human Rights Act, West Virginia Code § 5-11-3 which defines "employer" for purposes of the Act as "employing twelve or more persons **within the state**") (emphasis added).

---

[2] Defendant responded to Plaintiff's Interrogatory No. 9, asking Defendants to "identify every employee and every contract worker working for Under Armour, Inc. and Under Armour Retail Inc., for calendar years 2017 and 2018 by stating, "Cynthia Pajak was employed by Under Armour and worked in West Virginia during 2017 and 2018. She was the only Under Armour employee who worked in West Virginia during these years." (ECF No. 39-1 at 15, ¶ 9).

Defendant argues the plain meaning of the statute is unambiguous in that, to qualify as an "employer" for purposes of the West Virginia Human Rights Act, one must employ twelve or more people **working within the state of West Virginia**. However, Plaintiff argues the statute leaves open an argument under which one could qualify as an "employer" for purposes of the West Virginia Human Rights Act if there are twelve or more people employed by a person or entity that **live within the State of West Virginia** but perhaps work in a neighboring state.

This issue was, in part, the subject of the Under Armour Defendants' recent Partial Motion to Dismiss (ECF No. 5) in which Defendants argues Plaintiff's claims in Count Two under the West Virginia Human Rights Act should be dismissed for failure to plead the "numerosity requirement", and therefore, Plaintiff has failed to allege the Under Armour Defendants are "statutory employers under the West Virginia Human Rights Act." (ECF No. 6 at 4 – 5). District Judge Keeley entered an Order denying the Defendants' Partial Motion to Dismiss (ECF No. 19) on October 21, 2019. District Judge Keeley's ruling was in regard to Plaintiff's failure to plead the numerosity requirement and whether the numerosity requirement is a "substantive element of a West Virginia Human Rights Act claim." (ECF No. 53 at 5, lines 1-7). District Judge Keeley did not address the issue as to the interpretation of the definition of "employer" as stated in W.Va. Code § 5-11-3(d).

The parties represented on the record at the motion hearing on January 14, 2020, that the interpretation as identified herein would be an issue of first impression and there is currently no case law in the State of West Virginia or the Fourth Circuit providing guidance on this issue. Accordingly, in reviewing the statute, the undersigned is of the opinion that the definition of "employer" is ambiguous in that, Plaintiff's argument regarding the number of individuals employed by Under Armour living in West Virginia but working elsewhere may be permissible to

meet the definition of the statute. Therefore, the undersigned, without a definitive case on the issue, will not substitute his judgment for that of the District Judge or the West Virginia Supreme Court of Appeals. The undersigned is of the opinion that discovery should be permitted on this issue in order for the case to proceed without precluding potential legal and statutory arguments to be made by the parties.

### a. Order

Accordingly, the undersigned **ORDERS** Defendant to provide information responsive to Plaintiff's Interrogatory No. 10 and Request for Production No. 32. However, the undersigned **FINDS** it is not necessary for Plaintiff to receive the identities of every employee and every contract worker living in West Virginia and working for Under Armour, Inc. and Under Armour Retail, Inc. for calendar years 2017 and 2018 as framed in Plaintiff's Interrogatory No. 10. The undersigned further **FINDS** that documents reflecting the number of employees and contract workers working for Under Armour, Inc. and Under Armour Retail, Inc. and any other Under Armour subsidiary or affiliate living in West Virginia in 2017 and 2018 is permissible.

Accordingly, the undersigned **ORDERS** Defendant to provide documents reflecting the number of employees and contract workers working for Under Armour, Inc. and Under Armour Retail, Inc. and any other Under Armour subsidiary or affiliate living in West Virginia in 2017 and 2018 within three weeks from the date of this Order, **on or before February 7, 2020**. As a result, Plaintiff's Motion to Compel (ECF No. 39) is **GRANTED IN PART** with respect to Request for Production No. 32 and **DENIED IN PART** with respect to Interrogatory No. 10.

### 4. Interrogatory No. 8 and Requests for Production Nos. 24, 28, and 50

Plaintiff's Interrogatory No. 8 requests the Defendants to disclose, "[f]or the entirety of their employment at Under Armour . . . all disciplinary action taken with respect to Brian Boucher, Brendan Costigan, Joey McKenna, and/or Jim Toner." (ECF No. 39-1 at 13, ¶ 8).

Plaintiff's Request for Production No. 24 requests "[a]ll job descriptions" for the positions "occupied by Ms. Pajak" and "[a]ll positions occupied by Boucher, Costigan and McKenna from 01/01/2012 until the time of trial of this lawsuit." Id. at 17, ¶ 24. Plaintiff's Request for Production No. 28 requests as follows:

> All personnel files, disciplinary files, and human resources files for the following persons; and all other documents for the following persons reflecting: (a) complaints about the person, (b) any contemplated disciplinary action against the person, (c) any actual disciplinary action (including warnings) against the person, (d) any investigations relating to the person, and (e) performance reviews:
>
> > a. Brian Boucher, Brendan Costigan, Joey McKenna, and Jim Toner;
> >
> > b. Any current or former employees of yours who complained about the behavior of Brian Boucher, Brendan Costigan, Joey McKenna or Jim Toner;
> >
> > c. Any current or former employees of yours who you intend to call as a witness at trial. This includes but is not limited to persons who are identified by you in any document filed with the court that purports to identify definite or possible trial witnesses; and
> >
> > d. Any current or former employees of yours who you contend is relevant for comparing to Ms. Pajak in connection with examining the work characteristics and qualities of Ms. Pajak, or in connection with purportedly refuting claims by Ms. Pajak that Ms. Pajak was the subject of retaliation.

(ECF No. 39-1 at 22-23, ¶ 28).

Plaintiff's Request for Production No. 50 asks for "[a]ny severance agreement or similar document setting forth the terms and conditions of the separation from employment of any of the following: Brian Boucher, Brendan Costigan, Joey McKenna, or Jim Toner." Id. at 36, ¶ 50.

Pursuant to Plaintiff's factual allegations in her Complaint and the representations of Plaintiff's Counsel on the record at the motion hearing held on January 14, 2020, Brian Boucher, a Defendant in this matter was Plaintiff's direct supervisor. Brendan Costigan and Joey McKenna were individuals employed by Under Armour that received complaints of sexual harassment and/or inappropriate behavior from subordinates of Plaintiff. Plaintiff elevated the complaints against Mr. Costigan and Mr. McKenna to her direct supervisor, Mr. Boucher. Jim Toner is the Human Resources Representative involved in the handling of the discharge of Plaintiff from her employment and further handled Ms. Pajak's concerns regarding her feeling that she was being retaliated against.

Defendants objected to producing the information requested in Interrogatory No. 8 and Requests for Production Nos. 24, 28, and 50. Regarding Interrogatory No. 8, Defendant objected as to Brendan Costigan, Joey McKenna and Jim Toner stating the "interrogatory seeks information that is not relevant to any claim or defense and will not lead to admissible evidence because these individuals are not comparators." (ECF No. 39-1 at 14). The Under Armour Defendants further objected on the bases that Under Armour "has an obligation to safeguard the information contained in the personnel files of its employees and former employees, which includes disciplinary information." Id.

Regarding Request for Production No. 24, Defendants objected on the grounds of "relevance" and refused to produce the "job descriptions for Brendan Costigan and Joey McKenna." Id. at 17, ¶ 24. The Under Armour Defendants produced the job descriptions for Plaintiff and Defendant Brian Boucher. Id. For Request for Production No. 28, Defendants objected, stating the Request "seeks information that is not relevant to any party's claim or defense and will not lead to admissible evidence." Id. at 23. Defendants reiterated Under Armour's

obligation "to safeguard against the unauthorized disclosure of personnel files." Id. Finally, in objecting to Plaintiff's Request for Production No. 50, Defendants stated that the Request "seeks information that is not relevant. Whether these individuals were provided severance or separation agreements, or any similar document has no bearing on Plaintiff's claims in this case." Id. at 36, ¶ 50.

### a. Order

Having considered the arguments of both parties as well as the confidential nature of these files, the undersigned is of the opinion that discovery on these issues may be permitted in a limited fashion, subject to an agreed upon Protective Order as well as an "attorney's eyes only" provision. Accordingly, Defendants are **DIRECTED** to provide responsive information and files as requested by Plaintiff in Interrogatory No. 8 and Requests for Production Nos. 24, 28, and 50 to the extent consistent with this Order. Defendant shall provide the job descriptions of the employees' requested by Plaintiff in Request for Production No. 24. Defendant shall provide separation agreements, if any, regarding the employees as requested by Plaintiff in Request for Production No. 50.

Finally, Defendant shall provide the files as requested in Plaintiff's Interrogatory No. 8 and Request for Production No. 28. The request for disciplinary records shall be limited to actions related to sexual harassment, inappropriate workplace behavior, and performance evaluations. The personnel and human resources records for Mr. Costigan, McKenna, Toner, and Boucher, nor the personnel files of any potential witnesses and current and former employees, shall not extend to include medical and health care related information, workers' compensation, or beneficiaries. Further, the information for potential witnesses, current and former employees, and Mr. Costigan, McKenna, and Toner shall not extend to include their salary or compensation for employment.

Accordingly, the undersigned **ORDERS** Plaintiff's Motion to Compel (ECF No. 39) be **GRANTED** with respect to Interrogatory No. 8 and Request for Production Nos. 24, 28, and 50 to the extent consistent with this Order within three weeks from the date of this Order, **on or before February 7, 2020**.

### 5. Requests for Production Nos. 16 and 17

Plaintiff's Request for Production No. 16 requests "[d]ocuments describing any potential bonuses and raises available to employees in the final positions occupied by Ms. Pajak during her employment and afterwards. This request includes documents that explain the amount of any potential bonus or raise, the circumstances under which the bonus or raise may be awarded (including eligibility and performance requirements), and the methodology by which the bonus or raise is calculated." (ECF No. 39-1, at 12, ¶ 16).

Defendant objected to the Request stating it "seeks information that is not relevant to any party's claim or defense and will not lead to admissible evidence." Defendant further indicates that documents related to bonuses and raises available to Plaintiff during her employment were provided. Id.

Plaintiff's Request for Production No. 17 seeks "[d]ocuments reflecting the compensation of any employees who replaced Ms. Pajak." Plaintiff request includes "all documents which would allow an expert witness to calculate monthly pay history of the employee or employees replacing Ms. Pajak. The time period for this request starts at the time of Ms. Pajak's departure from employment with Under Armour and continues through the present time to the time of trial." Id.

Defendants objected stating that the Request "seeks information that is not relevant to any party's claim or defense and will not lead to admissible evidence." Id.

Plaintiff argues such information is relevant to the issue of damages for Ms. Pajak, specifically the calculation of future damages or front pay damages. Defendant contends that Plaintiff's past salary is the proper basis upon which to calculate front pay damages, citing any deviation in pay may be for any number of reasons, including due to her replacement living in a different locale, market, or change in responsibilities.

### a. Order

The undersigned is of the opinion that the information requested is a relevant consideration for the calculation of Plaintiff's potential damages. The Protective Order in this matter applies to expert witnesses and sufficiently protects the confidential nature of the information requested. Accordingly, the undersigned **ORDERS** Plaintiff's Motion to Compel (ECF No. 39) with respect to Requests for Production of Documents Nos. 16 and 17 be **GRANTED**. Defendants are **DIRECTED** to provide information responsive to these requests within three weeks from the date of this Order, **on or before February 7, 2020**.

### 6. Request for Production No. 23

Plaintiff's Request for Production No. 23 requests "[a]ll resumes and applications for employment for persons who were considered in deciding who would replace Ms. Pajak." (ECF No. 39 at 15, ¶ 23). Defendant objected to this request stating it is "overly broad, unduly burdensome, and seeks materials that are not relevant to any party's claim or defense and will not lead to admissible evidence." Id. at 16.

At the hearing, the parties agreed that what Plaintiff was really seeking through this request was the date on which the Under Armour Defendants began searching and accepting applications for Plaintiff's replacement. The Defendants agreed to provide the date to the Plaintiff and Plaintiff acknowledged that such information would satisfy the request.

### a. Order

Accordingly, Defendants are **DIRECTED** to provide to Plaintiff the date on which Under Armour, Inc. and Under Armour Retail, Inc. began searching and accepting applications for Plaintiff's replacement. Defendants must do so within three weeks from the date of this Order, on or before February 7, 2020. As such, Plaintiff's Motion to Compel (ECF No. 39) is **GRANTED IN PART AND DENIED IN PART** with respect to Plaintiff's Request for Production No. 23.

### 7. Requests for Production Nos. 26 and 27

At the Motion Hearing held on January 14, 2020, Plaintiff advised the Court that, by the nature of the Court's rulings on the previous disputes contained herein, Plaintiff believed it would receive the desired information that is the subject of Requests for Production Nos. 26 and 27. Accordingly, to the extent Plaintiff has advised these Requests are satisfied, Plaintiff's Motion to Compel (ECF No. 39) is **DENIED IN PART AS MOOT with respect to Requests for Production Nos. 26 and 27**.

### 8. Requests for Production Nos. 51 – 53, 58, 59, 70, and 72 – 74

Plaintiff's Requests for Production Nos. 51 – 53, 58, 59, 70, and 72 – 74 all request information, including communications and reports sent to and from Under Armour CEO Kevin Plank, reflecting Under Armour, Inc. and Under Armour Retail, Inc's response to a Wall Street Journal article titled, "Under Armour's #MeToo Moment: No More Strip clubs on Compan Dime." (ECF No. 39-1 at 36, ¶ 51; at 38, ¶ 52; at 39, ¶ 53; at 45, ¶ 58; at 46, ¶ 59; at 52, ¶ 70; at 53-54, ¶¶ 72-74). The requests further seek the alleged "open email" sent by CEO Kevin Plank detailing "talking points" and steps the company would take to address the issues presented in the Wall Street Journal article. This includes steps taken subsequent to the "open email."

The Under Armour Defendants objected on the basis that the request is "overly broad" and "not relevant" and "unduly burdensome." Defendants disagreed with Plaintiff's characterization of the Wall Street Journal article as being one which demonstrated the "male-dominated, misogynistic workplace culture." (ECF No. 39 at 12). Defendants characterized the article as being more directed at "inappropriate expense reimbursement."

### a. Order

Upon considering the arguments of both parties, the undersigned proposed the Requests be limited geographically as previously stated herein to North America. The temporal scope of the Requests shall be from the time of the publication of the Wall Street Journal article, November 6, 2018, to the present. The undersigned, therefore, **DIRECTS** Defendant to provide information responsive to Plaintiff's Requests for Production Nos. 51 – 53, 58, 59, 70, and 72 – 74 **within three weeks from the date of this Order, on or before February 7, 2020**. Accordingly, Plaintiff's Motion to Compel (ECF No. 39) with respect to Requests for Production Nos. 51 – 53, 58, 59, 70, and 72 – 74 is **GRANTED**.

### 9. Additional Matters Raised During the Motion Hearing on January 14, 2020

#### a. Email and Document Search – Requests for Production Nos. 2, 3, 4, 8, 11, 12, 19, 21, 37, 38, 62, and 66-69.

In Plaintiff's Reply brief (ECF No. 50), Plaintiff stated that "Ms. Pajak and the UA Defendants agreed to confer further about an e-discovery search for responsive documents which would include search terms and custodians." (ECF No. 50 at 12). Plaintiff states that she "provided the UA Defendants with her proposed terms for that search as well as a list of proposed custodians." Id. Following the filing of Plaintiff's Motion to Compel (ECF No. 39), Plaintiff "received the response from the Under Armour Defendants in which they rejected her proposed

search terms and instead, unilaterally set for their own proposal for a very limited search." (ECF No. 50 at 13).

At the Motion Hearing held on January 14, 2020, Plaintiff represented to the Court that the Defendant had provided documents to the Plaintiff the day prior to the hearing and Counsel had not yet had a chance to review them. Defendants stated that Plaintiff's request and proposed custodians and search terms were "extremely burdensome" identifying over "100 search terms" and over "20 users" to run searches for "all emails" regarding Plaintiff Pajak. Defendants contend they have produced over 700 pages of emails to Plaintiff and has spent a considerable amount of time reviewing emails and performing searches. Defendants used "six usernames/emails" for the search of all emails involving Plaintiff Pajak. Plaintiff contended that Defendant's search was too limited in that it did not include the names of the employees that had reported workplace complaints to Plaintiff Pajak that are a significant part of the allegations surrounding Plaintiff's Complaint.

Accordingly, the undersigned **ORDERS** the Plaintiff to provide a copy of the letter of Plaintiff's proposed search terms and custodians to the Court; the undersigned **DIRECTS** the parties to confer regarding an appropriate time period for a responsive search and regarding the names of the employees that submitted complaints to Plaintiff to be used as search terms. The undersigned **DIRECTS** the parties to submit this information to the undersigned's Law Clerk, Cory Lowe, by email at cory_lowe@wvnd.uscourts.gov. Once received, the undersigned will issue a further Order on this matter.

### b. Insurance Information

Plaintiff further advised the Court that the Under Armour Defendants have failed to supplement their initial disclosures to provide the required insurance information under Rule 26

of the Federal Rules of Civil Procedure. The Under Armour Defendants advised they had the insurance information desired by Plaintiff and would provide it to Plaintiff. The undersigned **ORDERS**, the Under Armour Defendants to supplement their initial disclosures with the requested insurance information **within one week from the date of this order, on or before January 24, 2020.**

### C. Plaintiff's Motion to Compel Defendant Boucher to Fully Respond to Plaintiff's Discovery Requests (ECF No. 40)

#### 1. Interrogatory No. 16 and Request for Production Nos. 33, 34, and 35

Plaintiff's Motion to Compel Defendant Boucher to Fully Respond to Plaintiff's Discovery Requests (ECF No. 40) seeks an order compelling Defendant Boucher to respond to Plaintiff's Interrogatory No. 16 and Requests for Production Nos. 33, 34, and 35.

Plaintiff's Interrogatory No. 16 asks Defendant Boucher to "identify all positions or other non-Under Armour employment that you sought while still employed with Under Armour and the dates when you sought such non-Under Armour employment or position." (ECF No. 40 at 5). Defendant Boucher objected stating the request is "overly broad and unduly burdensome and because it seeks information that is neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence." Id.

Plaintiff's Request for Production No. 33 seeks "[a]ll employment applications or other documents related to your employment with Taymax Group Holdings." Id. Defendant objected on the basis that the request is "neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence." Id.

Plaintiff's Request for Production No. 34 seeks "[a]ll offer letters or other documents related to the terms of your employment with Taymax Group Holdings." Id. Defendant reiterated the same objection as identified above.

Finally, Plaintiff's Request for Production No. 35 seeks "[a]ll employment applications, resumes, cover letters or other documents related to any effort to secure other employment while you were still employed at Under Armour." Id. Defendant raised the same objection as identified above.

Plaintiff argues that while Plaintiff Pajak was employed, Plaintiff views Defendant Boucher as having pressured her to leave her position with Under Armour and that Defendant Boucher allegedly made statements to Plaintiff indicating he was looking for a new job and she should as well. Plaintiff argues such information could be used as evidence of credibility. Defendant argues that the information requested has merely a tangential relationship to credibility and is not relevant to the matter at hand.

### a. Order

Having considered the arguments of both parties, the undersigned **ORDERS** Plaintiff's Motion to Compel (ECF No. 40) be **GRANTED**. The undersigned **DIRECTS** Defendant Boucher to provide responsive information to Plaintiff's requests from June 2018 to the time of Plaintiff's discharge in December of 2018 within three weeks from the date of this Order, on or before **February 7, 2020**.

### D. Plaintiff's Motion for Protective Order Regarding the Deposition of Brian Boucher (ECF No. 47)

The Under Armour Defendants filed a Notice of Deposition of Defendant Brian Boucher for Friday, January 31, 2020, beginning at 8:00 A.M. in New Hampshire. (ECF No. 37). Due to the issues presented in the Motions to Compel addressed herein and the lack of written discovery, Plaintiff requests a Protective Order Regarding the Deposition of Defendant Brian Boucher (ECF No. 47) due to a scheduling conflict and the need to receive discovery in order to adequately prepare for the Deposition. Defendant Boucher objects to continuing the Deposition on the grounds

that Mr. Boucher has already made arrangements to be available on January 31, 2020, including arrangements to be off of work.

However, the undersigned is of the opinion that both sides would benefit from receiving full written discovery responsive to their requests and time to review said discovery prior to the deposition of Defendant Boucher. Accordingly, the undersigned **ORDERS** Plaintiff's Motion for Protective Order Regarding the Deposition of Brian Boucher (ECF No. 47) be **GRANTED** and the undersigned **DIRECTS** the parties to confer on availability and file a new Notice of Deposition **within one week from the date of this Order, on or before January 24, 2020**.

## IV.   ORDER

Accordingly, for the reasons stated herein, the undersigned **ORDERS** as follows:

1. Defendants will be permitted to receive in discovery all records as framed in Interrogatory Nos. 4 and 5 and Requests for Production Nos. 8 and 9 from December 10, 2013, through the present. Accordingly, to the extent consistent with this Order, the **Under Armour Defendants' Motion to Compel (ECF No. 38)** is **GRANTED IN PART with respect to Interrogatory Nos. 4 and 5 and Request for Production No. 9 and DENIED IN PART with respect to Request for Production No. 8.** All information provided will be subject to the Protective Order previously entered in this matter. (ECF No. 35). Further, there being no objection, the undersigned has permitted the parties to revise the Protective Order (ECF No. 35) to allow for an "attorneys' eyes only" provision. The information requested shall be provided within three weeks from the date of this Order, **on or before February 7, 2020**

2. The undersigned **ORDERS** that **Plaintiff's Motion to Compel (ECF No. 39) with respect to Interrogatory No. 1** be **GRANTED**. The undersigned **DIRECTS** the Under Armour Defendants to provide a responsive answer to Plaintiff's Interrogatory No. 1 within three weeks from the date of this Order, **on or before February 7, 2020**. To the extent Defendants seek to claim information responsive to the request is protected by attorney client privilege and/or attorney work product privilege, the undersigned **DIRECTS** Defendants to provide a specific information regarding the request demonstrating how the information is protected by the privilege.

3. The undersigned **ORDERS** the Under Armour Defendants to provide information responsive to Plaintiff's requests as framed in Interrogatory No. 7 and Request for Production No. 35. The information shall be limited geographically to North America and shall not reach below the level of District Managers as shown in Under Armour's Organizational Flowchart and shall reach as high as the President of North America.

All information regarding lawsuits, complaints, and administrative actions as framed in Plaintiff's Interrogatory No. 7 and Request for Production No. 35 shall be limited only to those in which the claims arose from allegations of gender discrimination and sexual harassment, including claims of retaliation and wrongful discharge. Defendants are **DIRECTED** to provide information responsive to Plaintiff's requests that is consistent with the limitations stated herein within three weeks from the date of this Order, **on or before February 7, 2020**. Accordingly, the undersigned **ORDERS Plaintiff's Motion to Compel (ECF No. 39)** be **GRANTED with respect to Interrogatory No. 7 and Request for Production No. 35** to the extent consistent with the limitations provided herein.

4.  The undersigned **ORDERS** the Under Armour Defendants to provide documents reflecting the number of employees and contract workers working for Under Armour, Inc. and Under Armour Retail, Inc. and any other Under Armour subsidiary or affiliate living in West Virginia in 2017 and 2018 within three weeks from the date of this Order, **on or before February 7, 2020**. As a result, **Plaintiff's Motion to Compel (ECF No. 39) is GRANTED IN PART with respect to Request for Production No. 32 and DENIED IN PART with respect to Interrogatory No. 10.**

5.  The undersigned **ORDERS Plaintiff's Motion to Compel (ECF No. 39) be GRANTED with respect to Interrogatory No. 8 and Request for Production Nos. 24, 28, and 50** to the extent consistent with this Order. The Under Armour Defendants shall provide the information consistent with the limitations stated herein within three weeks from the date of this Order, **on or before February 7, 2020.**

6.  The undersigned **ORDERS Plaintiff's Motion to Compel (ECF No. 39) with respect to Requests for Production Nos. 16 and 17** be **GRANTED**. The Under ARmour Defendants are **DIRECTED** to provide information responsive to these requests within three weeks from the date of this Order, **on or before February 7, 2020**.

7.  The Under Armour Defendants are **DIRECTED** to provide to Plaintiff the date on which Under Armour, Inc. and Under Armour Retail, Inc. began searching and accepting applications for Plaintiff's replacement. **Defendants must do so within three weeks from the date of this Order, on or before February 7, 2020**. As such, **Plaintiff's Motion to Compel (ECF No. 39) is GRANTED IN PART AND DENIED IN PART with respect to Plaintiff's Request for Production No. 23.**

8.  To the extent Plaintiff has advised these Requests are satisfied, **Plaintiff's Motion to Compel (ECF No. 39) is DENIED IN PART AS MOOT with respect to Requests for Production Nos. 26 and 27**.

9.  The undersigned **DIRECTS** the Under Armour Defendants to provide information responsive to Plaintiff's Requests for Production Nos. 51 – 53, 58, 59, 70, and 72 – 74 **within three weeks from the date of this Order, on or before February 7, 2020**. Accordingly, **Plaintiff's Motion to Compel (ECF No. 39) with respect to Requests for Production Nos. 51 – 53, 58, 59, 70, and 72 – 74 is GRANTED**.

10. The undersigned **ORDERS** the Plaintiff to provide a copy of the letter of Plaintiff's proposed search terms and custodians to the Court; the undersigned **DIRECTS** the parties to confer regarding an appropriate time period for a responsive search and regarding the names of the employees that submitted complaints to Plaintiff to be used as search terms. The undersigned **DIRECTS** the parties to submit this information to the undersigned's Law Clerk, Cory Lowe, by email at cory_lowe@wvnd.uscourts.gov. Once received, the undersigned will issue a further Order on this matter.

11. The undersigned **ORDERS**, the Under Armour Defendants to supplement their initial disclosures with the requested insurance information **within one week from the date of this order, on or before January 24, 2020.**

12. The undersigned **ORDERS Plaintiff's Motion to Compel (ECF No. 40)** be **GRANTED**. The undersigned **DIRECTS** Defendant Boucher to provide responsive information to Plaintiff's requests from June 2018 to the time of Plaintiff's discharge in December of 2018 **within two weeks from the date of this Order, on or before January 31, 2020.**

13. The undersigned **ORDERS Plaintiff's Motion for Protective Order Regarding the Deposition of Brian Boucher (ECF No. 47) be GRANTED** and the undersigned **DIRECTS** the parties to confer on availability and file a new Notice of Deposition **within one week from the date of this Order, on or before January 24, 2020**.

The Court directs the Clerk of the Court to provide a copy of this Order to any parties who appear *pro se* and all counsel of record, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED**: January 17, 2020

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE