IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CYNTHIA D. PAJAK,**

    **Plaintiff,**

v.                                                            **CIVIL ACTION NO. 1:19-CV-160**
                                                                                                                                  **Hon. Irene M. Keeley**

**UNDER ARMOUR, INC.,**
**UNDER ARMOUR RETAIL, INC.,**
**and BRIAN BOUCHER,**

    **Defendants.**

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR LEAVE TO AMEND COMPLAINT, OR IN THE
<u>ALTERNATIVE, FOR AN ADVERSE INFERENCE JURY INSTRUCTION AT TRIAL</u>**

**I.     INTRODUCTION**

    Plaintiff Cynthia D. Pajak submits this memorandum in support of her motion for leave to amend her complaint to add claims of intentional and negligent spoliation of evidence against Defendants Under Armour Inc. and Under Armour Retail, Inc. ("Under Armour") and Defendant Brian Boucher, or in the alternative, for an adverse inference jury instruction at trial regarding the spoliation of evidence by Defendants.[1]

    As discussed more fully below, disturbing information has come to light through discovery in this case which unequivocally establishes that Defendants intentionally allowed the spoliation of critical evidence to occur. This spoliation is highly prejudicial to Ms. Pajak's presentation of her case. Therefore, this Court should grant Ms. Pajak's motion and enter an Order granting Ms. Pajak leave to amend her Complaint. In the alternative, Ms. Pajak respectfully requests that this Court issue an adverse inference jury instruction at trial regarding the spoliation of evidence by Defendants.

---

[1] Counsel for Defendants were provided an early draft of Ms. Pajak's Motion and Supporting Memorandum and they have indicated their opposition to the motion.

12413099

## II.     HISTORY OF THE DISPUTE

In June of 2018, Defendant Brian Boucher first informed Ms. Pajak that her employment was in jeopardy and would be terminated. On June 22, 2018, the date after which Mr. Boucher first blind-sided her, Ms. Pajak told Mr. Toner (Human Resources) that she thought Mr. Boucher had a motive to get rid of her, and she thought she might need to get a lawyer. In September, after she asked questions about her Performance Improvement Plan, Mr. Boucher and Mr. Toner speculated that she had an attorney reviewing the PIP. In November 2018, when Mr. Boucher and Mr. Toner told Ms. Pajak she should consider taking a severance package, she again informed them that she had been speaking with a lawyer. Then, in December 2018, when Ms. Pajak's employment with Under Armour was terminated, she was presented with a severance agreement containing a broad release of claims and which encouraged her to consult counsel before releasing all claims against Under Armour; she ultimately, and with good reason, rejected the agreement.

If these activities were not enough to put Under Armour on notice that litigation was impending, then two months later, in February 2019, Ms. Pajak made her intent to bring a claim undisputedly clear. On February 15, 2019, counsel for Ms. Pajak sent to Under Armour a demand letter, outlining her claims and notifying Under Armour of Ms. Pajak's intent to file a lawsuit against it. This letter contained a robust document preservation paragraph, instructing Under Armour to institute a litigation hold on relevant documentation:

> As you know, you are legally required to preserve all communications between Under Armour and Ms. Pajak, as well as any other communications relating to the issues set forth in this letter, whether electronic or otherwise, and you must take immediate steps to do so. In addition, please preserve all communications regarding Ms. Pajak maintained by Brian Boucher, Megan McClain, Jim Toner, Jocelyn Carpenter, Shea Louie, Brendan Costigan, Tara Stewart, and Joey McKenna, specifically including any text messages on any company-issued or personal cell phones used by these individuals. The Yammer and email accounts for each of the

> individuals identified in this letter must be preserved. I am instructing you to advise each of these managerial employees of their legally required evidence preservation obligations. You are also specifically requested to preserve all documents relating to Under Armour's investigation of the matters set forth in this letter, including the behavior of Brendan Costigan and Joey McKenna. The video memory on the surveillance camera located in the Clarksburg, Maryland Factory House location during January 2018 should be preserved. You are also requested to maintain and preserve all documents related to Under Armour's Human Resources' actions to address the corporate culture that was reported by the Wall Street Journal in its November 2018 and subsequent reporting.

[Letter from Larry Rector to Kristen Herbert (Feb. 15, 2019)]. Thus, Under Armour's duty to preserve evidence did not only include text messages and email communication, but also extended to *any* documents, records, or data relevant to Ms. Pajak's claims. This would involve things like photographs, Word documents, notes taken in Microsoft OneNote, and any other physical or digital records or data which would have been relevant to Ms. Pajak's case. Other records relevant but not preserved by Under Armour included Cynthia Pajak's "My Game Plan" Under Armour's Human Resources Information System Dashboard maintained for all Under Armour employees. Similarly, Under Armour failed to preserve its "HRAnalytics" applicable to Ms. Pajak.

Then, on March 14, 2019, Ms. Pajak's counsel communicated to Under Armour's in-house lawyer, Kristen Herber, that Ms. Pajak understood that Mr. Boucher's last day was the very next day and again instructed Under Armour to protect evidence, including Mr. Boucher's devices. *See* Exhibit A. Although Ms. Herber did eventually respond to the letter from Ms. Pajak's lawyer dated February 2019, she did not confirm whether evidence had been preserved.

On November 20, 2020, counsel for Ms. Pajak took the deposition of Brian Boucher.[2] During his employment with Under Armour, Under Armour issued Mr. Boucher a cellular phone, an iPad, and a laptop. He backed up all of these devices to a "cloud." Mr. Boucher used these

---
[2] The relevant portion of Mr. Boucher's deposition transcript is attached as "Exhibit B."

12413099

devices to conduct Under Armour's business, including communicating with Ms. Pajak, her peers, and her subordinates. He also used these devices to communicate with his human resources support staff and his supervisors relating to Ms. Pajak and to take notes about Ms. Pajak's performance.

Mr. Boucher testified that upon his departure from Under Armour in March 2019, he provided Under Armour with his company-issued devices and passwords and their corresponding clouds. [Boucher Dep. at 259:6-13]. At first, Mr. Boucher testified that he had provided Under Armour with access to his devices and that he had not deleted any content. Later, based upon some questioning by Under Armour's counsel, Mr. Boucher testified that he had erased vast amounts of data before doing so, despite the litigation hold in place. [Boucher Dep. at 259:14-16]. Among this erased data were text message conversations between Mr. Boucher and Ms. Pajak, notes that he kept relating to his meetings with Ms. Pajak, and text messages between him and K.G., a subordinate of Ms. Pajak's to whom he sent inappropriate messages.[3] [*Id.*].

On February 13, 2021, counsel for Ms. Pajak took the Rule 30(b) deposition of Under Armour.[4] Under Armour's corporate designee confirmed that Mr. Boucher's deletion of data from his phone before providing it to Under Armour was a clear violation of the Under Armour litigation holds in place at the time. [Under Armour Dep. at 125:21-24, 126:1].

In addition to Mr. Boucher's intentional deletion of data relevant to Ms. Pajak's lawsuit, Under Armour intentionally neglected to preserve the contents of Mr. Boucher's devices at the time it issued the litigation hold or at any time prior to Mr. Boucher's departure. Ms. Pajak knows that some relevant information has been destroyed because she has been able to recover some of

---

[3] Under Armour has admitted in its Responses to Ms. Pajak's Requests for Admission and in its 30(b)(6) deposition that Mr. Boucher's text messages were inappropriate and violated certain of its policies.
[4] The relevant portion of Under Armour's 30(b)(6) deposition transcript is attached as "Exhibit C." This expedited transcript as provided by the Court Reporter is still in rough draft format, but Ms. Pajak will provide the Court with a copy of the finalized version upon her receipt of it.

4

the information purged from Mr. Boucher's devices through subpoenas to third parties, and through the preservation of the information on the devices she maintained which informs her that Mr. Boucher did have materials relating to her and her claims on his devices that he destroyed.

After imaging Mr. Boucher's phone and finding that he had erased relevant data from it, Under Armour failed to preserve the physical phone itself. This failure resulted in the loss of the phone's metadata such that Ms. Pajak is unable to ascertain exactly what content was deleted by Mr. Boucher and when. Furthermore, Under Armour not only failed to preserve relevant data on Mr. Boucher's devices, but it also failed to preserve information on its own systems. For example, Under Armour failed to preserve its MyGamePlan[5] (Under Armour's human resources information system) data related to Ms. Pajak, and similarly failed to preserve its "HR Analytics" data for Ms. Pajak, despite producing the same data for Under Armour employees Shea Louie and Tara Stewart. – Ms. Pajak's peers.[6] There is other evidence relating to Ms. Pajak's claims that has not been preserved as well. Such information related to the financial performance of Ms. Pajak's region and her "9 Box" ratings for years prior to her termination.

### III. DISCUSSION

#### A. Standard of Decision

Federal Rule of Civil Procedure 15 provides that a party may amend a pleading "only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Where a party seeks to amend a pleading after the

---

[5] Although Under Armour was able to produce some items found in "MyGamePlan" such as Plaintiff's annual performance evaluations, it was not able to provide (or confirm that information did not exist) relating to her Half-Time Huddle for 2018 – Under Armour's name for mid-year reviews – or, Talent Cards for the years 2016 and 2017 relating to Ms. Pajak.

[6] The HR Analytics data would include information such as attrition and turnover in Ms. Pajak's region. Comparison to her peers in this area is relevant and important, particularly in light of the fact that Ms. Pajak's alleged deficiencies in her leadership related in part to her "people skills." If she was a difficult leader, her attrition and turnover could be expected to be greater than that of her peers, but because this information has been spoiled, she will not be able to make such a comparison to the jury.

5

12413099

deadline for doing so has passed, it should be granted leave to amend where (1) the party satisfies the good cause requirement of Rule 16(b) by showing that "despite diligence, the proposed claims could not have been reasonably brought in a timely manner"; and (2) the amendment is not prejudicial, made in bad faith, or would be futile. *Matheny v. L.E. Myers Co.*, No. 2:16-cv-09304, 2018 WL 1095584 at *2 (S.D. W. Va. Feb. 26, 2018).

> **B. Ms. Pajak should be granted leave to amend her complaint to add claims of intentional and negligent spoliation against Under Armour and Brian Boucher.**

As explained above, the facts regarding Defendants' spoliation of evidence came to light in discovery in this case, mainly through the depositions of Under Armour and of Brian Boucher. For that reason, Ms. Pajak could not have reasonably brought her claims of spoliation earlier.[7] These facts were discovered only after Ms. Pajak had filed her original Complaint, and despite Ms. Pajak's diligence in filing her claims against Defendants, she could not have discovered spoliation at that time. For the reasons explained below, Ms. Pajak's claims of intentional spoliation against Defendants, as set forth in her proposed Amended Complaint, have merit and therefore amending the Complaint would not be futile nor has the statute of limitations run with respect to these claims. It would be more efficient to amend the Complaint in this case rather than require Ms. Pajak to pursue these claims in a new lawsuit.

West Virginia law recognizes a cause of action for the intentional spoliation of evidence. Syl. Pt. 9, *Hannah v. Heeter*, 213 W. Va. 704, 584 S.E.2d 560 (W. Va. 2003). The elements of the tort of intentional spoliation of evidence under West Virginia law are:

> (1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the

---

[7] Plaintiff's retained forensics expert is scheduled to inspect Mr. Boucher's laptop and other data on February 22, 2021.

>spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages.

*McDowell v. Town of Sophia*, No. 5:12-cv-01340, 2013 WL 525177 at *4 (S.D. W. Va. Feb. 11, 2013) (citing *Hannah,* 584 S.E.2d at 573). The *Hannah* court noted that "[o]nce the first six elements are established, there arises a rebuttable presumption that but for the fact of the spoliation of evidence, the party injured by the spoliation would have prevailed in the pending or potential litigation." *Hannah*, 584 S.E.2d at 573. The party that committed spoliation therefore must "overcome the rebuttable presumption or else be liable for damages." *Id.*

Additionally, sanctions for spoliation are appropriate in the Fourth Circuit where the movant establishes that:

>(1) [T]he party having control over the evidence had an obligation to preserve it when it was destroyed or altered; (2) the destruction or loss was accompanied by a "culpable state of mind;" and (3) the evidence that was destroyed or altered was "relevant" to the claims or defenses of the party that sought the discovery of the spoliated evidence, to the extent that a reasonable factfinder could conclude that the lost evidence would have supported the claims or defenses of the party that sought it.

*In re Ethicon, Inc. Pelvic Repair Systems Product Liability Litigation*, 299 F.R.D. 502, 511-512 (S. D. W. Va. 2014) (quoting *Goodman v. Praxair Services, Inc.,* 632 F.Supp.2d 494, 509 (D. Md. 2009)).

Courts within the Fourth Circuit have also recognized negligent spoliation "where a party failed to properly preserve, collect, and review evidence, resulting in the destruction of relevant materials." *In re Ethicon,* 299 F.R.D. at 519 (S. D. W. Va. 2014). (internal quotes and citations omitted). In *In re Ethicon*, the Southern District of West Virginia dealt with claims of spoliation where a company's document retention program was inadequate in preserving relevant information in response to a litigation hold. *Id.* at 520. The Court concluded that the company's

"failure to better implement and monitor its litigation holds was negligent, and perhaps grossly negligent in some cases." *Id.* at 521.

### 1. Defendant Under Armour intentionally and/or negligently spoliated evidence.

Here, Under Armour intentionally spoliated evidence by failing to prevent the deletion of information relevant to Ms. Pajak's claims from its systems, and by failing to preserve the contents of Mr. Boucher's devices upon his separation from employment. Under Armour was undoubtedly aware of a potential civil action as early as December of 2018 (if not before), and without question was aware of Ms. Pajak's impending lawsuit by February of 2019. From that point, Under Armour should have taken affirmative steps to preserve evidence.

A prime example of the evidence Under Armour should have preserved is Under Armour's MyGamePlan and HR Analytics data with regard to Ms. Pajak. These systems housed information relevant to Ms. Pajak's employment and separation from employment at Under Armour. Under Armour's production of this data for other employees, namely Shea Louie and Tara Stewart – Ms. Pajak's peers – shows that at the least, Under Armour intentionally failed to preserve the same data for Ms. Pajak, and at the worst, intentionally deleted that data. Under Armour's failure to preserve data specifically related to Ms. Pajak shows that its motive was to adversely affect her claims against it. Under Armour also failed to preserve Mr. Boucher's phone and any associated metadata on it which could have showed the content that he deleted.

The inability of Ms. Pajak to use this and other data deleted in discovery is highly prejudicial to the presentation of her case. Spoliation causes prejudice when "as a result of the spoliation, the party claiming spoliation cannot present evidence essential to its underlying claim." *In re Ethicon*, 299 F.R.D. at 522. Data that Under Armour erased would have shown information essential to her claims, including Under Armour's reaction to her complaints and Under Armour's

pretextual reason for her termination. Without the now-deleted critical data from Under Armour, Ms. Pajak will be prejudiced in the presentation of her claims, as she no longer has access to the same data.

Even if Under Armour's failure to preserve data does not rise to the level of intentional spoliation, it at least constitutes negligent spoliation. Under Armour clearly failed to preserve and collect critical and relevant evidence, which resulted in its destruction and the inability of Ms. Pajak to use the same data in support of her case.

Furthermore, allowing the amendment of the Complaint as a sanction due to Under Armour's spoliation is appropriate here. Under Armour clearly had a duty to preserve relevant evidence, and its failure to do so was intentional at worst and negligent at best. The information Under Armour failed to preserve was relevant to Ms. Pajak's case because it pertained to her complaints to the company, the inappropriate behavior of Under Armour employees, and how Under Armour retaliated against her.

### 2. Defendant Brian Boucher intentionally and/or negligently spoliated evidence.

Mr. Boucher's intentional spoliation could not be more clear. He had obvious knowledge of an impending lawsuit during the same time frame that Under Armour did, and Mr. Boucher himself testified that he intentionally destroyed data from his phone before turning it in to Under Armour. Under Armour's corporate designee confirmed that Mr. Boucher intentionally deleted data in violation of the litigation hold issued by Under Armour's legal department. As with Under Armour, Mr. Boucher's intentional deletion of data relevant to Ms. Pajak's case establishes that his intent was to thwart Ms. Pajak's claims against him and Under Armour. This spoliation is again, highly prejudicial to Ms. Pajak's case, and the presentation of her case will be materially harmed by it. Potentially hundreds, if not thousands, of text messages, emails, photos, notes, and

other documents relevant to Ms. Pajak's case were deleted at the hands of Mr. Boucher, and Ms. Pajak's inability to secure that information will substantially harm her case. And again, as with Under Armour, Mr. Boucher's spoliation of evidence constituted negligent spoliation at the very least.

Allowing the Amendment of the Complaint is more than appropriate in light of Mr. Boucher's admitted intentional spoliation of evidence. Mr. Boucher clearly had a duty to preserve evidence and was aware of that duty. Despite the litigation hold in place, Mr. Boucher intentionally erased vast amounts of data from his phone before handing it over to Under Armour. This data included potentially thousands of text messages, notes, photos, and any other forms of data that relate directly to Ms. Pajak's case because they show the inappropriate behavior of Under Armour employees and the company's reaction to her claims. Mr. Boucher's deletion of this data shows a clear intent to thwart Ms. Pajak's lawsuit against him and Under Armour, and therefore his conduct is sanctionable. Moreover, neither Mr. Boucher or Under Armour preserved the actual phone to prevent any forensic examination of the device.

### C. Alternatively, this Court should give an adverse inference jury instruction at trial regarding Defendants' spoliation of evidence.

Where a party requests an adverse inference instruction as to spoliation under West Virginia law, the court must consider the following factors as to the party charged with spoliating evidence:

> (1) the party's degree of control, ownership, possession or authority over the destroyed evidence; (2) the amount of prejudice suffered by the opposing party as a result of the missing or destroyed evidence and whether such prejudice was substantial; (3) the reasonableness of anticipating that the evidence would be needed for litigation; and (4) if the party controlled, owned, possessed or had authority over the evidence, the party's degree of fault in causing the destruction of the evidence.

12413099

*Landis v. Hearthmark, LLC*, No. 2:11-CV-101, 2014 WL 1017894 at *1 (N.D. W. Va. Mar. 14, 2014) (quoting *Tracy v. Cottrell*, 524 S.E.2d 879 (W. Va. 1999)).

Here, an adverse inference instruction relating to Defendants' spoliation of evidence is warranted. As explained above, the conduct of Under Armour and Mr. Boucher in spoliating evidence is sanctionable. Under Armour and Mr. Boucher controlled and had in their possession all of the data that they intentionally destroyed or otherwise failed to preserve. As a result of Defendants' spoliation, Ms. Pajak's case is substantially harmed because of her inability to access or otherwise use these records and data. Without this data, Ms. Pajak is missing out on the opportunity to use critical evidence in support of her claims. Defendants' anticipation that this evidence would be used for litigation was clear; as explained above, Defendants had notice of an impending lawsuit not only during Ms. Pajak's separation from employment, but as early as February of 2019 when Under Armour received Ms. Pajak's counsel's demand letter. Finally, the Defendants are clearly at fault for the destruction of this data. Under Armour knew of its obligation to preserve relevant information and failed to do so, while Mr. Boucher blatantly erased vast amounts of relevant data from his devices upon his separation from employment. These facts show that Defendants did intentionally spoliate evidence, and therefore an adverse inference instruction regarding that spoliation is warranted.

## IV.  CONCLUSION

WHEREFORE, for the foregoing reasons, the Court should grant Ms. Pajak's Motion for Leave to Amend Complaint, or in the Alternative, for an Adverse Inference Jury Instruction at Trial.

12413099

Dated this the 18th day of February, 2021.

/s/ *Larry J. Rector*
Larry J. Rector (WV Bar No. 6418)
Allison B. Williams (WV Bar No. 11329)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330
(304) 933-8151 (telephone)
(304) 933-8753 (facsimile)
Email:  larry.rector@steptoe-johnson.com
          allison.williams@steptoe-johnson.com

*Counsel for Plaintiff*

12413099

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CYNTHIA D. PAJAK,**

    **Plaintiff,**

v.                           **CIVIL ACTION NO. 1:19-CV-160**
                               **Hon. Irene M. Keeley**

**UNDER ARMOUR, INC.,**
**UNDER ARMOUR RETAIL, INC.,**
**and BRIAN BOUCHER,**

    **Defendants.**

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of February 2021, I electronically filed the foregoing **"Memorandum in Support of Plaintiff's Motion for Leave to Amend Complaint, or in the Alternative, for an Adverse Inference Jury Instruction at Trial"** with the Clerk of the Court using the CM/ECF System, which will send notification of such filing to the following:

| | |
|---|---|
| Justin M. Harrison | Scott Kaminski |
| Grace E. Hurney | Ray, Winton & Kelley, PLLC |
| Jill E. Hall | 109 Capitol Street, Suite 700 |
| Jackson Kelly PLLC | Charleston, WV 25301 |
| 500 Lee Street, East, Suite 1600 | |
| Post Office Box 553 | |
| Charleston, WV 25322 | |

                                      /s/ *Larry J. Rector*
                                      Larry J. Rector  (WV Bar No. 6418)

12413099