# EXHIBIT C

                                                                1

 1                    ROUGH DRAFT DISCLAIMER

 2        UNEDITED, UNPROOFREAD, UNCERTIFIED ROUGH DRAFT

 3

 4              JIM TONER, 30(b)(6) DESIGNEE OF

 5        UNDER ARMOUR, INC., and UNDER ARMOUR RETAIL, INC.

 6

 7                      FEBRUARY 13, 2021

 8

 9                           WARNING!

10

11         This transcript has been produced in rough draft

12   form.  There WILL BE discrepancies in this form and the

13   final form, because the rough draft form has not been

14   edited, proofread, finalized, indexed or certified.

15   There will ALSO BE a discrepancy in page and line

16   numbers appearing on the rough draft and the edited,

17   proofread, finalized and certified form.

18

19

20

21

22

23

24

2

1       My name is Connie Nichols, I'm a state notary

2  public and court reporter, and this deposition is being

3  held via Zoom videoconferencing.  The witness and

4  reporter are not in the same room.  The witness will be

5  sworn in remotely pursuant to agreement of all parites.

6  The parties stipulate that the testimony is being given

7  as if the witness was sworn in person.

8          Does everyone agree?

9              MR. RECTOR:  Counsel for the plaintiff

10 agrees.

11             MR. HARRISON:  Counsel for the Under

12 Armour defendants agrees.

13            MR. KAMINSKI:  Counsel for Mr. Boucher

14  agrees.

15                    -----

16                 JIM TONER,

17  called as a witness by the plaintiff, was first duly

18  sworn, as hereinafter certified, examined, and testified

19  as follows:

20                    -----

21              DIRECT EXAMINATION

22  BY MR. RECTOR:

23     Q.   Good morning, Mr. Toner.

24     A.   Good morning.

3

1     Q.   My name is Larry Rector I'm with the law firm

2  of Steptoe & Johnson and I represent Cynthia Pajak in a

3  case of Cynthia Pajak versus Under Armour, Inc., Under

4  Armour Retail, Inc., and Brian Boucher.  Are you

23            MR. RECTOR:  Mr. Harrison do you mind

24  sharing that document on the screen.

125

1            MR. HARRISON:  Yeah I don't have it up

2  right now.  You want to give me a second.

3            MR. RECTOR:  Sure we'll go off the record

4  and you can put it on the screen and we'll let the

5  witness review it.

6    Q.    Mr. Toner let me know when you've reviewed the

7  entirety of the document?

8            MR. RECTOR:  Going off the record at 1:47.

9    A.    I have the document.

10   Q.    Okay.  You see on the second page, about

11  midway down, says for now there is no need for you to

12  take any steps other than to make sure not to delete

13  overwrite or otherwise alter or destroy such documents.

14  Did I read that correctly?

```
15      A.      Yes.
16      Q.      And immediately before that it references
17  emails insta messages text messages faxes voice mails
18  tweets blogs and communications via social media.  Did I
19  read that correctly?
20      A.      Yes.
21      Q.      Mr. Toner or I'm sorry Mr. Boucher's deleting
22  of the text messages from that phone after getting this
23  litigation hold was a clear violation of Under Armour's
24  directive in this litigation hold wasn't it?
```

126

```
1       A.      Yes.
2       Q.      And can you explain why he would intentionally
3   delete the text messages and other data held on that
4   cell phone prior to turning it over to Under Armour for
5   imaging?
6               MR. HARRISON:  Objection beyond scope
7   witness can answer if he knows.
```

```
 8     A.    I don't know why he made that decision to
 9  delete everything.  It would be speculation on my part.
10     Q.    He knew that when Under Armour was coming to
11  see him to image that phone that it was doing so to
12  gather information because of an ongoing litigation
13  against Under Armour didn't he?
14           MR. HARRISON:  Object to form no litigation
15  been filed.
16     A.    Yeah I don't know the answer to that question.
17     Q.    You testified that this was Brian Boucher
18  phone that's not true is it Under Armour gave him that
19  phone?
20           MR. HARRISON:  Objection beyond the scope.
21     A.    That I don't know the answer to that question.
22  There are some people that get a phone issued at Under
23  Armour.  Many many people use their own phone and have a
24  instead of having two phones a personal one and work one
```