```
             IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


CYNTHIA D. PAJAK,

             Plaintiff,

v.                                      CIVIL ACTION NO. 1:19CV160
                                              (Judge Keeley)

UNDER ARMOUR, INC.;
UNDER ARMOUR RETAIL, INC.; and
BRIAN BOUCHER;

             Defendants.
```

### MEMORANDUM ORDER AND OPINION
### GRANTING MOTION TO CERTIFY QUESTIONS
### TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]

On December 4, 2020, the Court heard argument on the motion of the defendants, Under Armour, Inc., and Under Armour Retail, Inc., (collectively, "Under Armour"), to certify a legal question to the West Virginia Supreme Court of Appeals (Dkt. No. 130). For the reasons that follow, the Court **GRANTS** Under Armour's motion and proposes that the following questions be certified:

1. Whether an "employer" as defined in West Virginia Code § 5-11-3(d) means one who employs twelve or more persons working within the state for twenty or more calendar weeks in the calendar year the discrimination allegedly took place or in the preceding calendar year?

2. Whether a corporate employer is a "person" as defined in West Virginia Code § 5-11-3(a), regardless of whether it is also an "employer" as defined in § 5-11-3(d)?

**MEMORANDUM ORDER AND OPINION**
**GRANTING MOTION TO CERTIFY QUESTIONS**
**TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

**I. BACKGROUND**

**A.   Brief Statement of the Parties' Dispute**

This action stems from the discharge of the plaintiff, Cynthia Pajak ("Pajak"), by Under Armour. Pajak alleges that after she reported inappropriate conduct that created a hostile work environment she was the victim of gender discrimination and a retaliatory discharge (Dkt. No. 1-1 at 3).

In November 2012, Under Armour hired Pajak as its director of the East and Canada regions.[1] Id. at 6. Pajak worked remotely from Bridgeport, West Virginia and reported to the defendant, Brian Boucher ("Boucher"). Id. at 6-7. In January and April 2018, female employees reported several instances of inappropriate workplace conduct to Pajak. Such conduct included a district manager taking off his shirt and pretending to do a striptease and posting a photo of himself on Under Armour's internal social media site posing for a body building competition in a speedo, and another district manager making comments about a female colleague's appearance. Id. Pajak encouraged these employees to submit written statements, which she then provided to Boucher. Id. at 7-8. According to Pajak, Boucher minimized the employees' concerns and directed Pajak to "move on." Id. at 7-9.

---

[1] The facts are taken from Pajak's complaint.

**MEMORANDUM ORDER AND OPINION
GRANTING MOTION TO CERTIFY QUESTIONS
TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

On June 12, 2018, Boucher delivered Pajak's midyear review, which raised no concerns about her job performance. Id. at 9. But a mere nine (9) days later, on June 21, 2018, Boucher, for the first time, raised concerns about Pajak's job performance, and asked her to voluntarily leave her position at Under Armour. Id. at 9-10. Boucher had not consulted Under Armour's human resources department before approaching Pajak. Id. at 9-10. Pajak declined to leave her position and, on September 10, 2018, Boucher placed her on a sixty-day Performance Improvement Plan ("PIP"), although the typical "PIP period" at Under Armour is ninety days. Id. at 10-11.

Pajak contends Boucher provided no guidance in the PIP as to what areas of her performance needed to improve. Id. at 10. She further alleges that the PIP contained only subjective performance metrics, and that, although Boucher told her he would meet with her regularly during the PIP period, he did so only once and that was at her request. Id. at 11.

Pajak further asserts that the culture at Under Armour created a hostile work environment. During her PIP period, for example, Under Armour's workplace culture attracted national notoriety,

**MEMORANDUM ORDER AND OPINION
GRANTING MOTION TO CERTIFY QUESTIONS
TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

prompting Under Armour's CEO to publicly pledge to improve the workplace environment for its employees.[2] Id. at 11.

Pajak, however, contends that Under Armour was never committed to this promise, as evidenced by its failure to respond to inappropriate comments made by a district manager during a conference call, the sole purpose of which was to discuss the media's criticisms of Under Armour's corporate culture. Id. Although Pajak and other female employees reported their discomfort with the district manager's comments and the company's failure to address them on the call, no action was taken. Id. Finally, on December 10, 2018, Boucher fired Pajak after her PIP period expired. Id. at 14.

On July 16, 2019, Pajak sued Under Armour and Boucher in the Circuit Court of Harrison County, West Virginia, alleging she was discharged in retaliation for reporting various instances of inappropriate workplace behavior and seeking damages and potential reinstatement. Her complaint alleges four causes of action, including: (1) wrongful discharge under Harless v. First National Bank of Fairmont, 246 S.E.2d 270 (W. Va. 1978); (2) violations of the West Virginia Human Rights Act ("WVHRA"); (3) negligent hiring,

---

[2] On November 5, 2018, the Wall Street Journal published an article entitled "Under Armour's #METOO Moment: No more Strip Clubs on Company Dime."

**MEMORANDUM ORDER AND OPINION**
**GRANTING MOTION TO CERTIFY QUESTIONS**
**TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

supervision, and retention; and (4) intentional infliction of emotional distress. Under Armour timely removed the case to this Court on August 19, 2019 (Dkt. No. 1).

**B.   WVHRA Numerosity Requirement Dispute**

Count II of Pajak's complaint alleges that Under Armour violated § 5-11-9(7) of the West Virginia Human Rights Act, which prohibits any person or employer from retaliating against an employee for opposing an employment practice she reasonably and in good faith believes violates the provisions of the statute. W. Va. Code § 5-11-9(7); see also Brown v. City of Montgomery, 775 S.E.2d 653, 663 (W. Va. 2014).

Throughout this case, the parties have disagreed about whether Under Armour is either a "person" or an "employer" as those terms are defined in the WVHRA. Under the WVHRA, a "person" is "one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons." Id. § 5-11-3(a). An "employer" is "any person employing twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year." Id. § 5-11-3(d).

**MEMORANDUM ORDER AND OPINION**
**GRANTING MOTION TO CERTIFY QUESTIONS**
**TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

The issue at hand arose when, pursuant to Federal Rule of Civil Procedure 12(b)(6), Under Armour moved to dismiss Count II of Pajak's complaint for failure to state a claim (Dkt. No. 5). In its motion, Under Armour contends it is not an "employer" under § 5-11-3(d) of the WVHRA because fewer than twelve of its employees worked within the state of West Virginia during the relevant time (Dkt. No. 6 at 1).

In response, Pajak argued that discovery was necessary before the Court could determine whether Under Armour meets the WVHRA's definition of either a "person" or an "employer" (Dkt. No. 7 at 1). This Court denied Under Armour's motion to dismiss and granted discovery on the issue (Dkt. No. 53 at 4-5).

During discovery, Pajak requested that Under Armour identify every individual who lived in West Virginia and worked for Under Armour during the 2017 and 2018 calendar years (Dkt. No. 39-7). She sought this information to support her theory that the WVHRA's numerosity requirement could be satisfied if a company employed at least twelve employees who lived in West Virginia, regardless of where they worked.

Under Armour identified two employees who worked remotely from West Virginia in 2017 and 2018, one of whom was Pajak. Based on its interpretation of the definition of an "employer" in § 5-11-3(d), it asserted that the numerosity requirement could only be

**MEMORANDUM ORDER AND OPINION
GRANTING MOTION TO CERTIFY QUESTIONS
TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

satisfied if at least twelve of its employees actually "worked" within the state. Accordingly, it declined to provide information about employees who lived in West Virginia but worked elsewhere (Dkt. No. 44 at 13). This Court then ordered Under Armour to produce information to Pajak about employees who lived in West Virginia in 2017 and 2018 but worked elsewhere (Dkt. No. 107 at 98-99). Under Armour did so, but based on the parties' dispute about the numerosity requirement of § 5-11-3(d), it asked this Court to certify the following question to the West Virginia Supreme Court of Appeals:

> Whether an "employer" as defined in West Virginia Code § 5-11-3(d) means one who employs twelve or more persons <u>working</u> within the state for twenty or more calendar weeks in the calendar year the discrimination allegedly took place or in the preceding calendar year?

(Dkt. No. 130) (emphasis in original).

Under Armour contends the answer to this question is outcome determinative as to Count II and asserts it should be answered in the affirmative because it is undisputed that (1) more than twelve Under Armour employees lived in West Virginia but worked elsewhere, and (2) fewer than twelve Under Armour employees actually worked within West Virginia in 2017 and 2018 (Dkt. No. 131 at 6). Because fewer than twelve employees worked within West Virginia during the relevant time period, Under Armour contends it is not an "employer"

Case 1:19-cv-00160-IMK-MJA Document 290 Filed 03/05/21 Page 8 of 17 PageID #: 2371

**PAJAK V. UNDER ARMOUR**                              **1:19CV160**

**MEMORANDUM ORDER AND OPINION
GRANTING MOTION TO CERTIFY QUESTIONS
TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

under the WVHRA, and Pajak's claim in Count II fails as a matter of law.

Pajak opposes certification but, should the Court certify Under Armour's proposed question, contends it should be answered in the negative (Dkt. No. 136). She avers that the WVHRA's definition of an "employer" is satisfied so long as, during the relevant time, Under Armour employed at least twelve individuals who lived in West Virginia even if they worked remotely or from a physical location in another state. She argues that the term "working" should not be read into § 5-11-3(d), which is clear on its face, and that the definition of an "employer" should be liberally construed in accord with West Virginia's public policy of "provid[ing] all of its citizens equal opportunity for employment." Id. at 13-16.

In addition to the parties' dispute about the definition of an "employer" under the WVHRA, Pajak suggests an additional question for certification:

> Whether a corporate employer is a "person" as defined in West Virginia Code § 5-11-3(a), regardless of whether it is also an "employer" as defined in § 5-11-3(d)?

Under Armour disputes Pajak's contention that it is liable as a "person" under the WVHRA and reads that statute to preclude a plaintiff from classifying a corporate employer as a "person" if

Case 1:19-cv-00160-IMK-MJA Document 290 Filed 03/05/21 Page 9 of 17 PageID #: 2372

PAJAK V. UNDER ARMOUR                                            1:19CV160

**MEMORANDUM ORDER AND OPINION
GRANTING MOTION TO CERTIFY QUESTIONS
TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

it does not also meet the definition of an "employer" (Dkt. No. 137 n.2).

## II. RELEVANT LAW

West Virginia has enacted the Uniform Certification of Questions of Law Act, ("UCQLA"), W. Va. Code § 51-1A-1, et seq., which provides:

> The Supreme Court of Appeals of West Virginia may answer a question of law certified to it by any court of the United States ... if the answer may be determinative of an issue in a pending case in the certifying court and if there is no controlling appellate decision, constitutional provision or statute of this state.

W. Va. Code § 51-1A-3. The Supreme Court of Appeals has recognized that the purpose of this statute is "to provide foreign courts with the benefit of [its] determination of West Virginia law" and "to resolve ambiguities or unanswered questions" in the same. Abrams v. W. Va. Racing Comm'n, 263 S.E.2d 103, 106 (W. Va. 1980) (internal quotations omitted); see also Morningstar v. Black and Decker Mtg. Co., 253 S.E.2d 666, 669 (W. Va. 1979). The provisions of the UCQLA are discretionary for both the certifying court and the Supreme Court of Appeals. Abrams, 263 S.E.2d at 105; see also Lehman Bros. v. Schein, 416 U.S. 386, 391 (1974) ("[Certification's] use in a given case rests in the sound discretion of the federal court.").

Case 1:19-cv-00160-IMK-MJA   Document 290   Filed 03/05/21   Page 10 of 17   PageID #: 2373

**PAJAK V. UNDER ARMOUR**                                **1:19CV160**

**MEMORANDUM ORDER AND OPINION
GRANTING MOTION TO CERTIFY QUESTIONS
TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

### III. DISCUSSION

Certification of the questions proposed by Pajak and Under Armour is appropriate because their resolution will determine the viability of Pajak's WVHRA claim, and there is no controlling precedent under West Virginia law.

#### A. Issue Determinative

The first prong of the UCQLA requires that a certified question be issue determinative. W. Va. Code § 51-1A-3. The certified question must "be pertinent and inevitable in the disposition of the case below." Hairston v. Gen. Pipeline Constr., Inc., 704 S.E.2d 663, 673 n.5 (W. Va. 2010). The Supreme Court of Appeals "will not consider certified questions not necessary to the decision of a case." Zelenka v. City of Weirton, 539 S.E.2d 750, 752 (W. Va. 2000) (citing Shell v. Metropolitan Life Ins. Co., 380 S.E.2d 183 (W. Va. 1989). To that end, "certification requires 'a sufficiently precise and undisputed factual record on which the legal issues can be determined ... [and that] such legal issues ... substantially control the case.'" Zelenka, 539 S.E.2d at 752 (alteration in original) (quoting Bass v. Coltelli, 453 S.E.2d 350, 356 (W. Va. 1994)).

Because the answers to the proposed questions will determine whether Pajak has asserted a viable claim against Under Armour in Count II of her complaint, they are dispositive of the outcome of

Case 1:19-cv-00160-IMK-MJA   Document 290   Filed 03/05/21   Page 11 of 17   PageID #: 2374

**PAJAK V. UNDER ARMOUR**                                                      **1:19CV160**

**MEMORANDUM ORDER AND OPINION
GRANTING MOTION TO CERTIFY QUESTIONS
TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

that claim. Hairston, 704 S.E.2d at 673 n.5. Resolution of Pajak's WVHRA's claim requires a determination whether Under Armour is either a "person" or an "employer" to whom the statute applies. Thus, each question relates to the ultimate issue of whether Under Armour may be held liable for the violations of the WVHRA alleged by Pajak in Count II of her complaint.

The factual record is sufficiently developed for certification. Under Armour acknowledges that, at the relevant time, it employed more than twelve individuals who lived in West Virginia but worked outside the state, and that fewer than twelve employees actually worked in the state (Dkt. No. 131 at 3). Thus, no material facts are in dispute. The proposed questions present purely legal questions involving the interpretation of the WVHRA. Syl. Pt. 1, Appalachian Power Co. V. State Tax Dept., 466 S.E.2d 424 (W. Va. 1995) ("interpreting a statute presents a purely legal question").

B.   **No Controlling Appellate Authority**

The second prong of the UCQLA is satisfied if it "appears to the certifying court there is no controlling precedent in the decisions of the [S]upreme [C]ourt of [West Virginia]." Morningstar, 253 S.E.2d 666, 669 (W. Va. 1979).

Here, there appears to be no controlling authority addressing whether a corporation satisfies the WVHRA's definition of an

Case 1:19-cv-00160-IMK-MJA   Document 290   Filed 03/05/21   Page 12 of 17   PageID #: 2375

**PAJAK V. UNDER ARMOUR**                                                 **1:19CV160**

**MEMORANDUM ORDER AND OPINION
GRANTING MOTION TO CERTIFY QUESTIONS
TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

"employer" when it employs at least twelve individuals who live in the state, regardless of where they actually work (Dkt. Nos. 131 at 4; 107 at 97-99). The Supreme Court of Appeals of West Virginia has concluded that, to satisfy the definition of an "employer" in § 5-11-3(d), an employer must have twelve employees at the time the acts giving rise to the alleged unlawful discriminatory practice were committed. Williamson v. Greene, 490 S.E.2d 23, 29 (W. Va. 1997). But it has not determined what is required for a business to "employ at least twelve individuals within the state." § 5-11-3(d).

Moreover, whether a corporation is a "person" under the WVHRA, regardless of whether it is an "employer," is a novel issue. The Supreme Court of Appeals has "liberally construed [the WVHRA] to accomplish its objectives and purposes," Conrad v. ARA Szabo, 480 S.E.2d 801, 815 (1996) (citing W. Va. Code § 5-11-15), and has held that the WVHRA imposes liability on employers and individuals alike. See e.g., Syl. Pt. 4, Holstein v. Norandex, Inc., 461 S.E.2d 473 (W. Va. 1995) ("A cause of action may be maintained by a plaintiff . . . against another employee under the [WVHRA]."); Sly. Pt. 9, Hanlon v. Chambers, 464 S.E.2d 741 (W. Va. 1995) ("A supervisory employee can state a claim for relief against an employer on the basis of a hostile work environment created by one or more subordinate employees . . . ."); Michael v. Appalachian

Case 1:19-cv-00160-IMK-MJA   Document 290   Filed 03/05/21   Page 13 of 17   PageID #: 2376

**PAJAK V. UNDER ARMOUR**                          **1:19CV160**

**MEMORANDUM ORDER AND OPINION
GRANTING MOTION TO CERTIFY QUESTIONS
TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

Heating, LLC, 701 S.E.2d 116, 117-18 (2010) ("An insurance company is included within the meaning of the term "person" as used in W. Va. Code § 5-11-9(7).").

Although the Supreme Court of Appeals has not directly addressed whether a defendant who does not satisfy the numerosity requirement of an "employer" under the WVHRA is, alternatively, a "person" to whom the WVHRA applies, three cases offer helpful insight. First, in Williamson v. Greene, 490 S.E.2d 23, 29-30 (W. Va. 1997), the court held that a nonprofit organization was not an "employer" under the WVHRA because it employed fewer than twelve individuals at the time the plaintiff was sexually harassed by her supervisor and terminated in retaliation for her opposition to his harassment. The court also held that, although the plaintiff's WVHRA claim failed, she could maintain a common law claim for retaliatory discharge against her former employer. Id. at 33. It did not consider whether the nonprofit was alternatively a "person" subject to suit under the WVHRA.

Second, in Holstein v. Norandex, Inc., 461 S.E.2d 473, 475 (W. Va. 1995), the Supreme Court of Appeals addressed whether an "employer" who committed unlawful discriminatory practices could be aided and abetted by its employees. The plaintiff alleged that his employer had discriminated against him on the basis of his age, and that his manager had aided and abetted his employer in

Case 1:19-cv-00160-IMK-MJA   Document 290   Filed 03/05/21   Page 14 of 17   PageID #: 2377

**PAJAK V. UNDER ARMOUR**                                          **1:19CV160**

**MEMORANDUM ORDER AND OPINION
GRANTING MOTION TO CERTIFY QUESTIONS
TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

its unlawful conduct. The trial court dismissed the plaintiff's claim against his employer because, as an "employer," the defendant was excluded from the WVHRA's definition of a "person." Id. On appeal, the Supreme Court of Appeals reversed, stating:

> The term "person," as defined and utilized within the context of the West Virginia Human Rights Act, includes both employees and employers. Any contrary interpretation, which might have the effect of barring suits by employees against their supervisors, would be counter to the plain meaning of the statutory language and contrary to the very spirit and purpose of this particular legislation.

Id. at Syl. Pt. 3. Holstein, accordingly, stands for the limited proposition that an employer meets the definition of a "person" under the WVHRA insofar as it can be aided or abetted by another in its discriminatory practices. Id. at Syl. Pt. 4.

Finally, in Kalany v. Campbell, 40 S.E.2d 113, 116 (W. Va. 2006), where the plaintiff had sued her former employer for sexual harassment and retaliatory discharge under both the WVHRA and the common law, the trial court concluded that the defendant did not meet the definition of an "employer" under the WVHRA because he employed fewer than twelve employees. It granted judgment as a matter of law in favor of the defendant on the plaintiff's WVHRA claims, but submitted her common law sexual harassment and retaliation claims to the jury, which found that the plaintiff's

**MEMORANDUM ORDER AND OPINION**
**GRANTING MOTION TO CERTIFY QUESTIONS**
**TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

discharge was in retaliation for having made a sexual harassment complaint. Id.

After dismissing the plaintiff's WVHRA claim, the trial court awarded the defendant his attorney's fees under the WVHRA, finding that it was a "person" under the statute. On appeal, the Supreme Court of Appeals reversed, stating that a defendant who does not meet the numerosity requirement of an "employer" under the WVHRA "cannot be deemed a statutory 'person' for purposes of award[ing] fees and costs...." Id. at Syl. Pt. 2.

Although each of these cases is relevant to Pajak's WVHRA claim, none directly addresses whether a corporate defendant which may not satisfy the numerosity requirement of an "employer" under the WVHRA may still be liable for discrimination as a "person" under that statute. Therefore, because the Court concludes that there is no controlling decision, constitutional provision, or statute on either proposed question, the second prong of the UCQLA is satisfied. Morningstar, 253 S.E.2d at 669. Given that the substantive law governing this case is unclear, certification of these questions will further the purpose of the UCQLA by providing this Court with the benefit of West Virginia's highest court's definitive interpretation of the WVHRA and resolution of the questions presented. Abrams, 263 S.E.2d at 106.

# MEMORANDUM ORDER AND OPINION
# GRANTING MOTION TO CERTIFY QUESTIONS
# TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]

## IV. CONCLUSION

For the reasons discussed, the Court **GRANTS** Under Armour's motion to certify legal questions to the Supreme Court of Appeals (Dkt. No. 130) based on:

1. Under Armour's argument that an "employer" must employ at least twelve employees who perform work within the state;

2. Pajak's counterargument that a corporation may be a "person" under the WVHRA even if it does not meet the definition of an "employer;"

3. The recognition by the Supreme Court of the United States and courts within this District that the state certification procedure is an efficient and useful mechanism for resolving an unanswered question of state law; and

4. Pajak's lack of a persuasive argument against certification.

Further, it **PROPOSES** the following questions for certification:

1. Whether an "employer" as defined in West Virginia Code § 5-11-3(d) means one who employs twelve or more persons working within the state for twenty or more calendar weeks in the calendar year the discrimination allegedly took place or in the preceding calendar year?

2. Whether a corporate employer is a "person" as defined in West Virginia Code § 5-11-3(a), regardless of whether it is also an "employer" as defined in § 5-11-3(d)?

**MEMORANDUM ORDER AND OPINION**
**GRANTING MOTION TO CERTIFY QUESTIONS**
**TO THE WEST VIRGINIA SUPREME COURT OF APPEALS [DKT. NO. 130]**

The parties are directed to review these proposed questions and provide their respective comments and any proposed reformulations by **no later than March 15, 2021.**

It is so **ORDERED.**

The Clerk **SHALL** transmit copies of this Memorandum Opinion to counsel of record.

DATED: March 5, 2021.

/s/ Irene M. Keeley
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE