IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**CYNTHIA D. PAJAK,**

    Plaintiff,

v.                                                           Civil Action No. 1:19-CV-160
                                                                (JUDGE KEELEY)

**UNDER ARMOUR, INC.,**
**UNDER ARMOUR RETAIL, INC.,**
**AND BRIAN BOUCHER,**

    Defendants.

**MEMORANDUM OPINION AND ORDER DENYING**
**DEFENDANT UNDER ARMOUR, INC.'S MOTION FOR LEAVE**
**TO REVIEW ELECTRONIC FILES MAINTIANED ON A LAPTOP**
**COMPUTER THAT BELONGS TO UNDER ARMOUR, INC. [ECF NO. 393]**

and

**ORDER DIRECTING EXAMINATION**
**OF PLAINTIFF'S LAPTOP OTHERWISE**

    Presently pending before the Court is Defendant Under Armour, Inc.'s Motion for Leave to Review Electronic Files Maintained on a Laptop Computer that Belongs to Under Armour, Inc. [ECF No. 393], filed on May 19, 2021. The Court also is in receipt of Plaintiff's response in opposition, thereto [ECF No. 407], filed on May 24, 2021.

    By Order [ECF No. 395] dated May 20, 2021, Senior United States District Judge Irene M. Keeley referred the motion to the undersigned Magistrate Judge for hearing and order as to appropriate disposition.

    On May 25, 2021, the undersigned Magistrate Judge conducted a hearing on the subject motion and other pending motions referred in this matter, and took the parties' arguments under

advisement. [ECF No. 410]. During this hearing, the undersigned directed Plaintiff's counsel to provide the materials in question to the Court for an in camera review. Plaintiff's counsel provided the materials that same day, and the undersigned has reviewed them.[1]

## I. PROCEDURAL BACKGROUND AND POSTURE

By way of background, Plaintiff and Under Armour have been engaged in various discovery disputes concerning electronic devices and electronic data. They also have, more recently, litigated Plaintiff's later-arising claims as to intentional spoliation of evidence. Several such issues have centered on electronic devices issued to both Plaintiff and Defendant Brian Boucher by Under Armour during their respective terms of employment at Under Armour. Under Armour issued a laptop computer to Plaintiff, which Plaintiff returned upon the termination of her employment by Under Armour. Throughout much of this litigation, Under Armour has been advising Plaintiff and the Court that Plaintiff's laptop had not been located. However, on May 11, 2021, Under Armour's counsel advised Plaintiff's counsel that Plaintiff's laptop had been located. [See ECF No. 407-6].

Previously, on or about February 16, 2021, Plaintiff had responded to certain discovery requests propounded by Under Armour on or about January 14, 2021. Plaintiff invoked the attorney-client privilege as to certain discrete materials. [See ECF Nos. 260, 407-5]. These are the materials at issue here. It appears that during an earlier volley of discovery requests and responses in or about May 2020, Plaintiff likewise invoked the attorney-client privilege and provided a privilege log as to these materials. [ECF No. 407-2].

The issues are (1) whether Under Armour timely and properly raised this issue at this stage of the litigation, and (2) whether Plaintiff has waived the attorney-client privilege with respect to

---

[1] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. [ECF No. 412].

these materials. As to the first issue, Judge Keeley allowed for limited additional discovery on Plaintiff's later-added spoliation claims, so Under Armour must show why its motion is properly filed at this stage. As to the second issue, Plaintiff created these materials on the laptop issued to her by her then-employer (and emailed them from her Under Armour account to a private email account), but did so for the benefit of her legal counsel and to share with legal counsel. Under Armour claims that Plaintiff has waived the attorney-client privilege by dint of utilizing Under Armour's IT equipment and resources to create and transmit the materials. Plaintiff argues there is no such waiver.[2]

## II. ANALYSIS

The undersigned addresses, in turn, the two issues as set forth above.

### A. Timeliness and Propriety of Under Armour's Motion

As summarized above, after this litigation had been underway for some time, Plaintiff developed claims for intentional spoliation of evidence. Plaintiff sought, and was granted, the Court's permission to amend her complaint to assert these claims. [ECF No. 292]. By Order dated March 8, 2021, Judge Keeley allowed for <u>limited</u> additional discovery for a period of 90 days as to Plaintiff's new spoliation claims.

However, as to the materials which are the subject of Under Armour's motion, Plaintiff resisted their disclosure by asserting attorney-client privilege approximately one year ago. Under Armour did not challenge Plaintiff's assertion of privilege then. Under Armour seems to base its

---

[2] The undersigned has taken up a similar issue in this matter. In a prior discovery dispute, Under Armour argued that Plaintiff could not claim the marital confidence privilege with regard to certain communications with her husband, because, at least in part, the communications were transmitted using Under Armour's IT equipment/resources in which Plaintiff had no expectation of privacy. Under Armour relied on its internal policies as to employee usage of its IT resources. The undersigned disagreed, and denied relief to Under Armour on the issue. [ECF No. 237.] For the instant motion, Under Armour appears to rely on similar arguments and the same or similar of its internal policies.

motion now, at least in part, on a deposition of Plaintiff taken on January 12, 2021 during which the assertion of the privilege as to these materials arose again. Further, Under Armour seems to base its motion, at least in part, on its discovery requests dated on or about January 14, 2021 to which Plaintiff objected on or about February 16, 2021. While Under Armour filed a motion on March 15, 2021 [ECF No. 300] which appears to pertain to these same materials, it later withdrew the motion on May 11, 2021. [ECF No. 372]. Under Armour then brought the instant motion on May 19, 2021. [ECF No. 393].

In short, it is not clear what bearing the instant motion has on Plaintiff's spoliation claims. Thus, Under Armour is not entitled to the relief it seeks at this stage of the litigation. On the record at the hearing before the undersigned, Plaintiff's counsel stated that Plaintiff created the materials after she retained counsel in 2018, and created the materials at counsel's request. Moreover, based upon the undersigned's in camera review of the materials, they appear to be just as Plaintiff's counsel represented. In other words, they do not pertain to spoliation which Plaintiff alleges as to Defendants.

Thus, it makes no sense for Under Armour to shoehorn this late-arising motion into the limited opportunity otherwise allowed for discovery here. It is unavailing that Under Armour's brings its motion here shortly after its recent discovery of Plaintiff's laptop; after all, the materials it has flagged as to the laptop are the same ones which arose in earlier discovery, summarized above.

Thus, Under Armour's motion must be denied on this basis.

## B. Applicability of Under Armour's Policies for Electronic Devices

Under Armour argues that its policy for employees' use of electronic devices and IT infrastructure abrogate any attorney-client privilege for the materials at issue. The undersigned disagrees.

Of course, while the Federal Rules of Civil Procedure may generally allow for broad discovery, they clearly limit discovery of privileged information. Fed. R. Civ. P. 26(b)(1), (b)(3). This is for good reason. "[T]he [attorney-client] privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 390 (1981). "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." Id. at 389.

As noted above, the undersigned has no question that Plaintiff created the materials at issue for the purpose of obtaining legal advice related to issues and claims arising in this case. That Under Armour would purport to invade such a sacrosanct privilege, by operation of its unilateral IT policies, is, in a word, offensive. Just because Under Armour decrees to its employees (who presumably have no say in the matter) that they give up virtually all expectation of privacy should not necessarily make it so. Certainly, it is understandable that Under Armour might impose some sort of IT usage policy to safeguard its business operations, infrastructure, productivity and privacy. But it is beyond the pale, as the undersigned concluded before [ECF No. 237], that an employer could purport to override certain fundamental legal privileges of its employees.

Based upon the undersigned's in camera review of the materials in question, the materials were not created on Under Armour's behalf. The materials were not generated to conduct Under Armour's business, and were not otherwise generated in the course of Under Armour's business.

Moreover, Under Armour purports to impose its policies "[e]xcept as provided by local law." [ECF No. 393-6 at 6]. Here, it goes without saying, the attorney-client privilege is well-ensconced in the law. And from a review of the policies appended to Plaintiff's motion, it appears that a primary objective of the policies is to stem inappropriate and unprofessional activity (e.g. transmitting pornographic and sexually explicit content, engaging in hate speech, accessing illegal websites). Nothing about Plaintiff's usage here contravenes that objective.

Under Armour relies on Fourth Circuit authority in the matter of United States v. Simmons, 206 F.3d 392, 398 (4th Cir. 2000). But this authority is unpersuasive in this context. Simmons pertains to an issue in a criminal matter – whether a defendant had an expectation of privacy under the Fourth Amendment in utilizing an employer's computer. The attorney-client privilege was not at issue. Thus, it is inapposite here.

Thus, Under Armour's motion also must be denied on this basis.

### III. CONCLUSION AND ORDER

Accordingly, based on the foregoing, Plaintiff's motion [ECF No. 358] is hereby **DENIED**. It is so **ORDERED**.

On a related note, at the hearing before the undersigned on May 25, 2021, the Court noted that, aside from any privileged or confidential contained thereon, all parties here have a right to conduct a forensic examination of the laptop which Plaintiff utilized while employed by Under Armour. Under Armour's counsel indicated that Under Armour can transmit a copy of the digital data of the laptop's contents to Plaintiff's counsel. The undersigned **DIRECTED** that by the **close of business on May 26, 2021**, Plaintiff's counsel shall communicate to Under Armour's counsel as to the format such a copy of the digital data should be. The undersigned further **DIRECTED** that Under Armour shall provide the data in such format to Plaintiff by **close of business on May**

**28, 2021**. Finally, the undersigned **DIRECTED** that, if Plaintiff so chooses, Under Armour shall make the physical laptop available to Plaintiff's counsel and IT expert for an examination at Under Armour's Baltimore, Maryland location on or before the discovery deadline set forth in Judge Keeley's prior order. [ECF No. 292].

It is all so **ORDERED**.

The Clerk of the Court is directed to provide a copy of this Order to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: May 26, 2021**

_____
MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE