IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG

**CYNTHIA D. PAJAK,**

    **Plaintiff,**

v.                                                              Civil Action No. 1:19-CV-160
                                                                (JUDGE KEELEY)

**UNDER ARMOUR, INC.,**
**UNDER ARMOUR RETAIL, INC.,**
**AND BRIAN BOUCHER,**

    **Defendants.**

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION [ECF NO. 466] TO COMPEL FULL AND COMPLETE RESPONSES TO HER DISCOVERY REQUESTS REGARDING HER SPOLIATION CLAIMS

Presently pending before the Court is Plaintiff's Motion to Compel Full and Complete Responses to Her Discovery Requests Regarding Her Spoliation Claims [ECF No. 466], filed on July 9, 2021. Also, the Court is in receipt of Under Armour, Inc.'s and Under Armour Retail, Inc.'s ("Under Armour") response in opposition, thereto [ECF No. 471], filed on July 19, 2021.

By Order [ECF No. 467] dated July 12, 2021, Senior United States District Judge Irene M. Keeley referred the motion to the undersigned Magistrate Judge for hearing and order as to appropriate disposition.

On July 21, 2021, the undersigned Magistrate Judge conducted a hearing on the subject motion and other referred matters, and took the parties' arguments under advisement.

### I. FACTUAL AND PROCEDURAL BACKGROUND

By Order of March 8, 2021, Judge Keeley allowed Plaintiff to amend her Complaint to add claims for intentional spoliation, and has allowed for further limited discovery on those claims. [ECF No. 292]. To that end, on June 9, 2021, Plaintiff took the deposition of Steven Kitchen

1

("Kitchen"), who is an IT professional on-site at Under Armour's headquarters and who works for a third-party vendor, HCL Technologies, providing IT services.[1] Kitchen has been involved in searching for, locating, and examining one or more electronic devices which Plaintiff has sought in connection with her spoliation claims. Plaintiff takes issue with Under Armour's timing and manner of production, in discovery, of electronic devices which were in use by Under Armour employees, including those who are parties to this litigation. The undersigned has been referred several discovery disputes centered upon these electronic devices and is familiar with the background of the dispute presently at bar.

In the pending motion, Plaintiff demands supplements to Under Armour's Responses to Plaintiff's First Set of Requests for Production of Documents Related to Her Spoliation Claims. Under Armour's responses to which Plaintiff demands supplementation are attached as Exhibit C to Plaintiff's motion. [See ECF No. 466-4]. Specifically, the supplementation Plaintiff seeks is set forth in a letter, dated June 14, 2021, from Plaintiff's counsel to Under Armour's counsel, attached as Exhibit B to Plaintiff's motion. [See ECF No. 466-3].

## II. ISSUES, ANALYSIS, AND DISPOSITION

Before evaluating the particular discovery requests, the undersigned addresses two overarching issues: (1) whether the crime-fraud exception applies to allow discovery of materials otherwise shielded by the attorney-client privilege and the work product doctrine, and (2) irrespective of the application of the crime-fraud exception, whether "substantial need" exists to allow discovery of work product.

---

[1] The undersigned Magistrate Judge actually was present, by videoconference, for much of Kitchen's deposition, having been called upon by the parties to resolve a series of disputes arising in the course of that deposition.

## A. Crime-Fraud Exception

Plaintiff seeks to compel information which would ordinarily be protected from discovery by application of the attorney-client privilege and/or the work product doctrine. Plaintiff argues that she may obtain such discovery because of the crime-fraud exception to these protections.[2] In recent orders, the undersigned concluded that the crime-fraud exception did not apply to allow Plaintiff here to obtain discovery. [ECF No. 401 in the instant matter, ECF No. 21 Civil Action No. 1:21-MC-25, and ECF No. 38 in Civil Action No. 1:21-MC-27].[3] The undersigned **FINDS** the same here.

Under the Federal Rules of Civil Procedure:

Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs the likely benefit.

Fed. R. Civ. P. 26(b)(1) (emphasis added). Of course, "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Id.

Nonetheless, where privileged information is sought, discovery is not so readily had. As in prior orders, the undersigned recognizes that, in civil actions such as this one where the Court's jurisdiction is based upon the parties' diversity of citizenship, the federal common law governs the applicability of the work product doctrine, while state law governs the applicability of the attorney-client privilege. Nicholas v. Bituminous Cas. Corp., 235 F.R.D. 325, 329 n. 2 (N.D.W.V. 2006).

---

[2] The undersigned here analyzes whether the crime-fraud exception applies in the course of discovery, rather than the elements of the underlying cause of action for intentional spoliation. The two analyses share similarities. But it is not for this stage of the litigation (nor is it the role of the Magistrate Judge in this context) to evaluate whether elements of the cause of action are met.

[3] Civil Action Nos. 1:21-MC-25 and 1:21-MC-27 are related to the instant matter. They involve discovery disputes in this instant matter which arose out-of-district, were transferred to this Court, and then were referred to the undersigned.

As for the attorney-client privilege, the Supreme Court of the United States has explained:

> The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends upon the lawyer's being fully informed by the client.

Upjohn Co. v. United States, 449 U.S. 383, 389 (1981) (citation omitted). Moreover, under West Virginia caselaw:

> In order to assert an attorney-client privilege, three main elements must be present: (1) both parties must contemplate that the attorney-client relationship does or will exist; (2) the advice must be sought by the client from that attorney in his capacity as a legal adviser; (3) the communication between the attorney and client must be identified to be confidential.

State ex rel. U.S. Fid. & Guar. Co. v. Canady, 194 W. Va. 431, 442, 460 S.E.2d 677, 688 (1995) (quoting Syl. Pt. 2, State v. Burton, 163 W. Va. 40, 254 S.E.2 129 (1979)).

Similarly, as to the work product doctrine, the Fourth Circuit has contextualized it as follows: "[W]hile the protection of opinion work product is not absolute, only extraordinary circumstances requiring disclosure permit piercing the work product doctrine. We acknowledge that the opinion work product rule should be jealously guarded . . ." In re Doe, 662 F.2d 1073, 1079 (4th Cir. 1981).

The crime-fraud exception may apply when a client provides information to an attorney or communicates with an attorney so as to further some crime or fraud. In that event, the attorney-client privilege and work product doctrine may not shield such information or communications from discovery by an adverse party. In re Grand Jury Proc. #5 Empanelled Jan. 28, 2004, 401 F.3d 247, 251 (4th Cir. 2005). However, it is Plaintiff's burden here to demonstrate application of the

crime-fraud exception. "The party asserting the crime-fraud exception . . . must make a prima facie showing that the privileged communications fall within the exception." Id. More specifically:

> [W]e have held that the party invoking the crime-fraud exception must make a prima facie showing that (1) the client was engaged in or planning a criminal or fraudulent scheme when he sought the advice of counsel to further the scheme, and (2) the documents containing the privileged materials bear a close relationship to the client's existing or future scheme to commit a crime or fraud. Prong one of this test is satisfied by a prima facie showing of evidence that, if believed by a trier of fact, would establish the elements of some violation that was ongoing or about to be committed. Prong two may be satisfied with a showing of a close relationship between the attorney-client communications and the possible criminal or fraudulent activity.

Id. (citations omitted).

The undersigned **FINDS** that the crime-fraud exception does not apply here. As noted in the undersigned's prior orders on this issue, by alleging spoliation alone, without more, Plaintiff has not demonstrated that a violation was ongoing or about to be committed. More to the point, Plaintiff has not shown a close relationship between any attorney-client contact and the spoliation activity alleged. Plaintiff cannot first seek discovery of privileged and confidential information in order to make her prima facie case, but that appears to be what Plaintiff is attempting here.

These privileges are not as easily infringed upon as Plaintiff would seem to argue. These privileges are part of the foundation of our civil justice system. They promote candor between lawyers and clients, encourage counsel's zealous advocacy of clients, and help to yield just results. There is no specificity of how Under Armour has inappropriately used its relationship with counsel. Thus, the undersigned refuses to apply the crime-fraud exception here.

Thus, to the extent which Plaintiff's motion seeks to invoke the crime-fraud exception to obtain otherwise privileged information, her motion is hereby **DENIED in part**.

### B. "Substantial Need" for Work Product

As to all of the materials sought here which are work product materials, Plaintiff claims that she is entitled to them because of "substantial need." Plaintiff bases this argument on the provision that documents and tangible things "prepared in anticipation of litigation or for trial by or for another party (including the other party's attorney . . .)" are not usually discoverable unless "(i) they are otherwise discoverable under Rule 26(b)(1) and (ii) the party shows that is has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A). In this regard, the Fourth Circuit has explained that there are two kinds of work product: (1) that which is "absolutely" immune, being "the pure work product of an attorney insofar as it involves mental impressions, conclusions, opinions, or legal theories ... concerning the litigation" and which "is immune to the same extent as an attorney-client communication" and (2) that which is "qualifiedly immune, being "[a]ll other documents and tangible things prepared in anticipation of litigation or for trial may be discovered, but only on a showing of 'substantial need.'" Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., 967 F.2d 980, 984 (4th Cir. 1992) (quotations and citations omitted).

Work product protections are in place for obvious reasons. "[O]ur adversary system depends on the effective assistance of lawyers, fostered by the privacy of communications between lawyer and client and the privacy in development of legal theories, opinions, and strategies for the client." Id. at 983. Thus, Plaintiff must clear a high hurdle to show that she should obtain opposing counsel's work product. As with the crime-fraud exception summarized above, the undersigned previously concluded, in similar contexts, that Plaintiff here did not demonstrate "substantial need" to allow her to obtain opposing counsel's work product. [ECF No. 21 in Civil Action No. 1:21-

MC-25, and ECF No. 38 in Civil Action No. 1:21-MC-27]. The undersigned concludes similarly here.

As to the instant discovery dispute and related disputes as to spoliation claims, Plaintiff's search for information to support her claims has been exhaustive. Discovery as to spoliation has given rise to multiple prior discovery disputes in this jurisdiction and others; the appearance of third parties and their counsel in the instant litigation; the retention and appearance of counsel in disputes in other jurisdictions; the review and exchange of hundreds, perhaps thousands, of documents; review and exchange of numerous electronic files and digital images; the retention and deployment of IT experts; both physical and forensic review of electronic devices; the preparation and submission of multiple sworn written statements; numerous depositions of parties and non-parties alike; and interstate travel by counsel and others. At times, the efforts and resources dedicated to the spoliation claims overshadow the litigation of the underlying claims.

Yet, despite all of this, Plaintiff continues to seek opposing counsel's work product. It is far from clear what pivotal evidence or other information Plaintiff believes this would yield. And based on the undersigned's review of the record, there is nothing which would be particularly helpful to Plaintiff. Plaintiff does not and cannot show there is "undue hardship" in seeking the "substantial equivalent" of whatever information she desires "by other means." In a nutshell, Plaintiff fails to demonstrate a compelling reason to pierce the work product protection. Thus, the undersigned **FINDS** that Plaintiff may not obtain work product based upon substantial need. Accordingly, to the extent which Plaintiff's motion seeks an order compelling production of materials which are attorney work product, Plaintiff's motion is **DENIED in part**.

7

### C. Particular Discovery Requests

The undersigned reiterates the Court's ruling, above, that Plaintiff may not seek information protected by the attorney-client privilege or the work product doctrine. However, in that context, the undersigned takes the particular discovery requests in dispute in turn.

1. *First request to supplement, documents concerning the theft of a laptop computer which Under Armour had issued to co-Defendant Brian Boucher ("Boucher") during his employment with Under Armour, and which reportedly was stolen at an airport in Bogotá, Columbia.* At the hearing before the undersigned on July 21, 2021, Plaintiff's counsel indicated that Under Armour had provided responsive information here, but that it is indicated on one document that there may be a stolen item report associated with the theft of this device. Plaintiff requested that Under Armour further supplement with that report. Under Armour's counsel stated that Under Armour would search for such a report and provide it if the report is located. Thus, the undersigned **DIRECTED** Under Armour to so search for the report and provide it to Plaintiff if it is located. It appearing that there is nothing further for the Court to act upon here, Plaintiff's motion here is **DENIED in part as moot**.

2. *Second request to supplement, reports created by Kitchen about audits of Under Armour's legal "hold room."* This pertains to review(s) by Kitchen of Under Armour's operations when the company is supposed to retain electronic devices and similar items which are subject to a legal hold. Under Armour argues that such material is attorney-client protected. At the hearing before the undersigned on July 21, 2021, Under Armour explained that the "report" actually is a spreadsheet. Under Armour advised that there are no entries on the spreadsheet pertaining to names of individuals or devices at issue in this case. As such, Under Armour stated, the entries related to other litigation holds would need to be redacted if it produced it for these purposes, such that the

entire spreadsheet would be redacted. The undersigned **DIRECTED** Under Armour to provide the un-redacted spreadsheet for in camera review by July 28, 2021, which Under Armour did.[4] Based upon an in camera review, the undersigned **FINDS** that, as Under Armour represented, the spreadsheet does not contain responsive information. Further, then, nothing in the materials supports the application of the crime-fraud exception. Thus, Plaintiff's motion to compel as to this issue is **DENIED in part**.

3.   *Third request to supplement, WebEx Teams chat logs about Under Armour's efforts to locate the laptop Plaintiff used during her employment at Under Armour, especially chat logs between Mike Maryanksi (Kitchen's supervisor) and Kitchen.* At the hearing before the undersigned on July 21, 2021, Under Armour explained that it already has provided responsive information here, namely, a series of messages between Kitchen and Maryanski. Under Armour subsequently provided this exchange to the undersigned for in camera review. Upon in camera review of the materials noted here, nothing supports the application of the crime-fraud exception.[5] In any event, Plaintiff argued that Under Armour must conduct a more thorough search. The undersigned engaged in a lengthy dialogue with counsel on both sides about the extent and nature of the materials already produced. The undersigned further inquired of Plaintiff's counsel about what more Plaintiff believed to exist and what more Plaintiff wished Under Armour to search. Plaintiff's desired additional searches appeared to be intensive yet speculative, with no firm idea of whether they would yield anything germane. And upon the undersigned's questioning of Under Armour's counsel, it is unclear what more might be searchable or reviewable within Under

---

[4] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. [ECF No. 484-1].

[5] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. [ECF No. 484-2]. These materials are not confidential, and have been provided to Plaintiff, but nonetheless are restricted on the CM/ECF system out of an abundance of caution.

Armour's operations which could be responsive in this regard. Thus, the undersigned **FINDS** that the documentation which Under Armour previously provided is sufficient, and that to undertake even further search is not proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). Thus, Plaintiff's motion to compel as to this issue is **DENIED in part.**

    4.    *Fourth request to supplement, a list of all devices, identified by serial number or similar means, used by Boucher during his employment at Under Armour.* Plaintiff states that during Kitchen's deposition, Kitchen described a platform called "Absolute" which Under Armour uses to keep track of which computers are issued to Under Armour employees. Plaintiff seeks access to that platform to obtain the information sought here. At the hearing before the undersigned on July 21, 2021, Under Armour explained that Absolute is an interactive program for Under Armour's IT department to manage the issuance of computers. Absolute is not a forensic or preservation tool, and does not allow for retrieval of deleted information concerning past issuance of computers. Thus, a search of Absolute is not necessarily responsive to Plaintiff's desired inquiry. However, Under Armour stated that it could simply supplement its prior discovery responses to provide a listing of devices which Under Armour issued to Boucher during his employment with the company. Thus, the undersigned **DIRECTED** Under Armour to so provide this supplementary information. It appears that Under Armour so supplemented. [ECF No. 483]. Thus, Plaintiff's motion here is **DENIED in part as moot.**

    5.    *Fifth request to supplement, a legible chain of custody form for Boucher's electronic devices.* At the hearing before the undersigned on July 21, 2021, Plaintiff indicated that she had received a satisfactory supplement from Under Armour such that there was no further dispute here. Thus, Plaintiff's motion here is **DENIED in part as moot.**

6. *Sixth request to supplement, a lease-return spreadsheet indicating which electronic devices were in the lease return or recycle bin at Under Armour's legal hold room.* At the hearing before the undersigned on July 21, 2021, Plaintiff indicated that she had received a satisfactory supplement from Under Armour such that there was no further dispute here. Thus, Plaintiff's motion here is **DENIED in part as moot.**

7. *Seventh request to supplement, documents/emails/communications showing why Plaintiff's laptop was in the lease return bin at Under Armour instead of on legal hold.* At the hearing before the undersigned on July 21, 2021, Under Armour indicated that anything which may be responsive here are privileged attorney-client communications. The undersigned **DIRECTED** Under Armour to provide these materials to the Court for in camera review by July 28, 2021, which Under Armour did.[6] The undersigned reviewed the materials and indeed **FINDS** that they are attorney-client communications. As such, they are protected from disclosure in the ordinary course. And per the analysis set forth above, the crime-fraud exception does not operate here to compel disclosure of these materials to Plaintiff. Upon in camera review of the materials noted here, nothing supports the application of the crime-fraud exception. Thus, Plaintiff's motion is **DENIED in part** as to this issue.

8. *Eighth request to supplement, an updated privilege log showing when emails were sent to Kitchen regarding locating Plaintiff's and Boucher's devices.* At the hearing before the undersigned on July 21, 2021, Under Armour indicated that it has updated its privilege log in this regard and provided the same to Plaintiff. The undersigned **DIRECTED** Under Armour to provide this updated privilege log to the Court for in camera review by July 28, 2021, which Under Armour

---

[6] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. [ECF No. 484-3].

did.[7] While the undersigned would not expect to discern information otherwise in review of a privilege log, upon in camera review of the materials noted here, nothing supports the application of the crime-fraud exception. The undersigned has reviewed the same and determined that Under Armour has supplemented as indicated. Thus, Plaintiff's motion here is **DENIED in part as moot**.

9. *Ninth request to supplement, emails or other communications from Under Armour's legal team to Kitchen instructing him to locate Plaintiff's and Boucher's devices.* At the hearing before the undersigned on July 21, 2021, Under Armour argued that this seeks privileged attorney-client communications. The undersigned **DIRECTED** Under Armour to provide the subject materials for in camera review by July 28, 2021, which Under Armour did.[8] Upon in camera review of the materials noted here, nothing supports the application of the crime-fraud exception. In past orders, and while attending Kitchen's deposition by videoconference, the undersigned found that inquiry of Kitchen about the logistics of who directed him to respond to discovery and prepare his sworn declaration was a permissible line of inquiry. In other words, Plaintiff has been permitted to inquire about mere logistics of Kitchen's work in aiding Under Armour in its responses to discovery requests. But Plaintiff has not been permitted to probe as to attorney-client communications involving Kitchen. Likewise, in the instant context, Plaintiff may not obtain attorney-client communications, because as set forth above, the crime-fraud exception does not operate here to compel disclosure of these materials to Plaintiff. The undersigned reviewed the materials and indeed **FINDS** that they are attorney-client communications. As such,

---

[7] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. [ECF No. 484-5]. These materials are not confidential, and have been provided to Plaintiff, but nonetheless are restricted on the CM/ECF system out of an abundance of caution.

[8] These materials are filed in this matter on the Court's CM/ECF system for access by Court staff only. [ECF Nos. 484-4 and 484-6]. Certain of these materials, namely those at ECF No. 484-6, previously were provided by Kitchen's counsel for an in camera review in another discovery dispute in this matter. In the course of that previous review, the undersigned found them to be privileged. [ECF No. 401 at 9].

they are protected from disclosure in the ordinary course. Thus, Plaintiff's motion is **DENIED in part** as to this issue.

### III. CONCLUSION

Based on the foregoing, and as set forth more particularly herein, Plaintiff's motion is hereby **DENIED**. It is all so **ORDERED**.

The Clerk of the Court is directed to provide a copy of this Order to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

**DATED: July 30, 2021**

MICHAEL JOHN ALOI
UNITED STATES MAGISTRATE JUDGE