## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CYNTHIA D. PAJAK,

        Plaintiff,

    v.

UNDER ARMOUR, INC.,
UNDER ARMOUR RETAIL, INC.,
AND BRIAN BOUCHER,

        Defendants.

CIVIL ACTION NO. 1:19-cv-160
JUDGE KLEEH

### UNDER ARMOUR'S MOTION IN LIMINE NO. 6 TO EXCLUDE EVIDENCE RELATED TO PLAINTIFF'S ALLEGATIONS THAT BRIAN BOUCHER RETALIATED AGAINST MISSY SAGE, KIM NICKELS, AND DAYNA PERILLO

Under Armour Inc. and Under Armour Retail, Inc. move this Court, *in limine*, to exclude evidence and argument that Brian Boucher retaliated against Missy Sage, Kim Nickels, and Dayna Perillo. Plaintiff has provided notice of her intention to introduce Rule 404(b) evidence regarding the past experiences of Missy Sage, Kim Nickels, and Dayna Perillo to show that Brian Boucher retaliated against these women or had some role in their departures from Under Armour. (*See* ECF No. 245, Plaintiff's Response to Under Armour's Fifth Set of Discovery's Requests at Interrogatory No. 1, attached hereto as Exhibit 1.). This evidence should be excluded. First, the evidence is not relevant or probative of any claims in this case, and otherwise inadmissible pursuant to Rule 404(b). Second, the risk of prejudice far outweighs whatever probative this evidence might have, pursuant to Rule 403.

### A.    Relevant Background

Missy Sage was formerly employed by Under Armour as the Regional Director for the West Region when Brian Boucher ("Boucher") was hired as the Regional Director for the East

Region. (Boucher Nov. 2020 Dep. Tr. at 175:19-176:1, attached hereto as Exhibit 2; Melisa Miller

Dep. Tr. at 205:24-206:2; attached hereto as Exhibit 3.)  Ms. Sage served as the interim Head of

Stores in mid-2016 and sought to be the permanent Head of Stores, but Under Armour hired an

external candidate, Kim Nickels, instead. (Ex. 2, Boucher Dep. Tr. at 176:2-13; Ex. 3, Miller Dep.

Tr. at 205:24-206:2; Pasche Jeffries Dep. Tr. at 29:7-30:20, attached hereto as Exhibit 4.)  Ms.

Sage voluntarily left Under Armour shortly after she did not receive the Head of Stores position.

(Ex. 2, Boucher Dep. at 176:10-13; Ex. 4, Jeffries Dep. Tr. 94:2-8; Ex. 3, Miller Dep. Tr. at 206:6-

11.)  Ms. Sage never alleged that Boucher was the reason why she left Under Armour, nor did she

allege that Boucher was "out to get her." (Ex. 4, Jeffries Dep. Tr. at 94:12-21; Ex. 3, Miller Dep.

Tr. at 206:12-15.)  In fact, Ms. Sage and Mr. Boucher were "very friendly and supportive of each

other." (Ex. 4, Jeffries Dep. Tr. at 94:22-95:3.)  No evidence has been produced in this case that

Boucher did anything inappropriate to encourage Ms. Sage to leave Under Armour.

Kim Nickels, who received the Head of Stores position over Ms. Sage, was involuntarily

discharged in April 2017 because she engaged in retaliation against several employees, including

Pasche Jeffries (Human Resources) and Mr. Boucher, and because she treated Ms. Jeffries "very

poorly." (Ex. 4, Jeffries Dep. Tr. at 95:4-7; Ex. 3, Miller Dep. at 86:1-10, 87:3-14, 88:19-23;

Nickels Letter, attached hereto as Exhibit 5.)  Ms. Nickels was given feedback regarding her

behaviors related to leadership style and her overall communication skills, and then she tried to

find out who was raising concerns about her, despite being told by Human Resources that she

should not retaliate against Under Armour employees. (Ex. 3, Miller Dep. Tr. at 85:19-86:21.)

Ms. Jeffries, who was involved in Ms. Nickels' discharge, testified that she reported Ms.

Nickels for engaging in "highly inappropriate" behaviors including bullying and threatening, as

well as "how she made decisions in a silo and not partnering with HR appropriately." (Ex. 4,

Jeffries Dep. Tr. at 95:10-96:1.)  Ms. Jeffries also received concerns about Ms. Nickels from other employees, including Shea Louie, Jim Toner (Human Resources Business Partner ("HRBP")), and Jamey Chan (HRBP). (*Id.* at 120:10-21.)  Boucher and HRBP Megan McClain also relayed concerns about Ms. Nickels to Ms. Jeffries, and these concerns reached then-Senior Director for Human Resources, Melisa Miller.  (*Id.* at 96:2-13.)  Boucher, like Ms. Jeffries, observed Ms. Nickels treating employees poorly and not acting in an inclusive manner. (*Id.* at 96:19-24.)  Ms. Jeffries testified she had no reason to believe that the information relayed to HR by Boucher about Ms. Nickels was inaccurate or fabricated.  (*Id.* at 116:22-117:2.)  Ms. Jeffries testified that she encouraged Mr. Boucher to come forward with his concerns about Ms. Nickels. (*Id.* at 118:3-4.)  Finally, Plaintiff also shared concerns about Ms. Nickels. (Plaintiff Jan. 2021 Dep. Tr. at 172:8-11, attached hereto as Exhibit 6.)  She admitted that she shared accurate information about Ms. Nickels, despite the fact that she claimed that Boucher "coached" her. (*Id.* at 172:15-17.)  In sum, no admissible evidence has been produced that Boucher participated in the decision to discharge Ms. Nickels, or otherwise acted inappropriately relative to Ms. Nickels.

Dayna Perillo served as a Regional Director, working alongside Plaintiff and Ms. Stewart. (Ex. 4, Jeffries Dep. Tr. 119:10-14.)  Ms. Perillo's position was eliminated in connection with a reduction in force that resulted from organizational restructuring.  Under Armour combined its brand house stores and its factory house stores, and Plaintiff and Ms. Stewart retained their Regional Director positions.[1]  (Ex. 4, Jeffries Dep. Tr. at 118:5-11, 119:10-120:1; Ex. 3, Miller Dep. Tr. at 81:1-5.)  The reduction in force impacted nearly 100 employees. (Ex. 4, Jeffries Dep. Tr. at 118:12-19.)

---

[1] Plaintiff subpoenaed Ms. Perillo's text messages and learned that Ms. Perillo believed that Plaintiff should have been discharged instead of Ms. Perillo in 2017. (*See* PERILLO 13, 16, attached hereto as Exhibit 7.)  Ms. Perillo told Ms. Stewart that she was "baffled how it was me they let go and not [Cyndi]." (*Id.* at PERILLO 16.)  Plaintiff abandoned her intent to depose Ms. Perillo shortly after her text messages were produced by Ms. Perillo.

3

Ms. Miller testified that Mr. Boucher and Mr. Hanson made the decision to eliminate Ms. Perillo's position, and HR provided assistance to make sure "it was a fair decision and that the appropriate process took place." (Ex. 3, Miller Dep. Tr. at 81:14-22.)  Ms. Perillo never told Ms. Miller that she felt "misled" by Boucher.  (*Id.* at 81:9-13.)  Ms. Jeffries did not recall ever being told by Ms. Perillo that she had concerns about Boucher or that she felt "misled" by Boucher regarding receiving severance.  (Ex. 4, Jeffries Dep. Tr. at 98:13-19, 99:9-14.)  Ms. Perillo's employment with Under Armour ended on August 12, 2017.  (Perillo Separation Agreement, PERILLO 00028, attached hereto as Exhibit 8.)

Finally, Plaintiff has produced no evidence that Ms. Sage, Ms. Nickels or Ms. Perillo ever engaged in protected activity.

## B.     Applicable Law

Rule 401 of the Federal Rules of Evidence provides that evidence is relevant if "it has a tendency to make a fact more or less probable that it would be without the evidence," and the "fact is of consequence in determining the action."   Fed. R. Evid. 401.   Rule 404(b) provides, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1).  Such evidence "may be admissible for another purpose, [however,] such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).  The rule regarding inadmissibility of prior bad acts evidence "is based on the danger that this type of evidence will overly influence the finders of fact and thereby persuade them to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge." *United States v. Hall*, 858 F.3d 254, 265–66 (4th Cir. 2017) (citation omitted).

4

The Fourth Circuit adheres to a four-step test to determine the admissibility of prior bad acts evidence under Rule 404(b): (1) "[t]he evidence must be relevant to an issue, such as an element of an offense, and must not be offered to establish the general character of the defendant"; (2) "[t]he act must be necessary in the sense that it is probative of an essential claim or an element of the offense"; (3) "[t]he evidence must be reliable"; and (4) "the evidence's probative value must not be substantially outweighed by confusion or unfair prejudice in the sense that it tends to subordinate reason to emotion in the factfinding process." *Id.* at 266 (alterations in original) (quoting *United States v. Queen*, 132 F.3d 991, 997 (4th Cir. 1997)). *See also* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury"). The proponent of the evidence bears the burden of demonstrating each of these prongs. *Hall*, 858 F.3d at 266. Plaintiff cannot satisfy the first, second or forth prongs.

**C.      Mr. Boucher's alleged retaliation against Ms. Sage, Ms. Nickels, and Ms. Perillo is inadmissible under Rule 404(b).**

As made clear by her discovery responses, Plaintiff intends to use Ms. Sage, Ms. Nickels, and Ms. Perillo to argue that Boucher retaliated against other women, and thus, Boucher retaliated against Plaintiff. This evidence is simply inadmissible under Rule 404(b).

The experiences regarding the departure Ms. Sage, Ms. Nickels, and Ms. Perillo do not relate to Plaintiff's claims in this case. The gist of this case is Plaintiff's claim for retaliatory discharge. Plaintiff complains that her employment was terminated in retaliation for relaying concerns about three episodes: (1) the Clarksburg incident; (2) the Yammer post; and (3) the listening session following publication of the Wall Street Journal article. Ms. Sage, Ms. Nickels, and Ms. Perillo were not employed during the time these events occurred. As a result, none of

these witnesses can testify as to whether they observed retaliatory animus from Boucher towards Plaintiff regarding her protected activity in 2018.

Plaintiff clearly intends to use Ms. Sage, Ms. Nickels, and Ms. Perillo to argue that Boucher acted with retaliatory animus toward her, just as he purportedly did toward Ms. Sage, Ms. Nickels, and Ms. Perillo in unrelated circumstances. Critically, there has been no evidence that Boucher retaliated against Ms. Sage, Ms. Nickels, and Ms. Perillo. Such evidence has no tendency to make any fact of consequence in determining this action more or less probable and runs afoul of the prohibition of character evidence under Rule 404(b). *See* Fed. R. Evid. 401 ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence and the fact is of consequence in determining the action."). *See also Kanida v. Gulf Coast Med. Pers. LP*, 363 F.3d 568, 581–82 (5th Cir. 2004) (former co-worker's testimony that boss became angry with her and threatened her life during process of settling overtime compensation claim was impermissible propensity character evidence in plaintiff's retaliation action because plaintiff planned to use boss's reaction towards co-worker to show that boss reacted same way towards her after she complained about overtime compensation). Moreover, there is no evidence that Ms. Sage, Ms. Nickels, or Ms. Perillo engaged in protected activity. Accordingly, their individual employment separations simply have no relevance to the claims and defenses in this case.

Second, evidence regarding Ms. Sage, Ms. Nickels, and Ms. Perillo's employment separations do not meet the necessity prong of the Rule 404(b) test; they do not provide any context or explanation regarding Under Armour's motivation for terminating Plaintiff's employment. Again, Ms. Sage, Ms. Nickels, and Ms. Perillo were not employed by Under Armour in 2018 when Plaintiff engaged in alleged protected activity. These individuals did not observe Plaintiff's performance in 2018. As a result, any evidence regarding Boucher's alleged actions toward Ms.

Sage, Ms. Nickels, or Ms. Perillo, has no probative value to Plaintiff's claims for retaliatory discharge.

Third, Plaintiff's evidence regarding Mr. Boucher's alleged retaliation is not reliable. "Evidence of prior bad acts is reliable if a jury could reasonably find, by a preponderance of the evidence, that the act was committed by the defendant." *United States v. Mussmacher*, No. 09-CR-0169, 2010 WL 2292214, at *5 (D. Md. June 3, 2010) (citing *Huddleston v. United States*, 485 U.S. 681, 690 (1988); *United States v. Hadaway*, 681 F.2d 214, 218 (4th Cir. 1982)). "In assessing this 'minimal standard of proof,' the court must consider all potential evidence, as 'the sum of an evidentiary presentation may well be greater than its constituent parts.'" *Id.* (quoting *Huddleston*, 485 U.S. at 690).  Considering all of the evidence, a jury could not reasonably find by a preponderance of the evidence that Mr. Boucher retaliated against or caused the employment separation of Ms. Sage, Ms. Nickels, and Ms. Perillo for improper reasons.  Ms. Sage left Under Armour voluntarily for a new position at a different company after she was not selected for the Head of Stores position, and no evidence has been produced to refute this. Ms. Nickels was involuntarily terminated for retaliation after multiple Under Armour employees—including Plaintiff—raised concerns regarding Ms. Nickels' behavior. Ms. Perillo's employment ended after her position was eliminated due to restructuring.  No admissible evidence has been produced that Ms. Perillo's position was eliminated due to any illegal motivation.  No reasonable jury could find that Mr. Boucher retaliated against Ms. Sage, Ms. Nickels, or Ms. Perillo.

> **D.     Mr. Boucher's alleged retaliation toward Ms. Sage, Ms. Nickels and Ms. Perillo is inadmissible pursuant to Rule 403.**

Even if evidence regarding the alleged retaliation by Mr. Boucher against Ms. Sage, Ms. Nickels, and Ms. Perillo had any probative value (it does not), Rule 403 still requires exclusion of this evidence.  As discussed above, Plaintiff intends to introduce this evidence to bolster Plaintiff's

claim that Boucher and/or Under Armour acted with retaliatory animus toward her for allegedly reporting inappropriate conduct. Obviously, Plaintiff's alleged reports are unrelated to Ms. Sage, Ms. Nickels, and Ms. Perillo. This evidence is unfairly prejudicial because Plaintiff intends to use it to show that Boucher has a propensity to retaliate against female employees, despite the fact that Plaintiff has not asserted a gender discrimination claim.

The evidence is also a misleading comparison that would confuse the issues, mislead the jury, and result in needless presentation of evidence on irrelevant matters. The circumstances regarding the departures of Ms. Sage, Ms. Nickels, and Ms. Perillo are wholly unrelated to Plaintiff's discharge and the claims in this case. Plaintiff was discharged based upon performance in 2018, whereas Ms. Nickels was discharged for misconduct (retaliation) in 2016; Ms. Sage voluntarily left for another job in 2016; and Ms. Perillo's position was eliminated due to restructuring in August 2017. The circumstances associated with Ms. Sage, Ms. Nickels, and Ms. Perillo's employment separation are simply too extraneous and would involve a mini-trial on irrelevant matters, overshadowing Plaintiff's claims and diverting the jury's attention from the real facts of consequence.[2]

Based on the foregoing, Under Armour respectfully requests that this Court grant this motion *in limine* and enter an Order precluding any argument and testimony regarding Mr. Boucher's alleged retaliation against Ms. Sage, Ms. Nickels, and Ms. Perillo.

Respectfully submitted this 11th day of October, 2022.

---

[2] To be clear, Under Armour does not seek to exclude the fact that these individuals are no longer employed by Under Armour; Under Armour seeks to exclude any evidence or argument that Mr. Boucher retaliated against these individuals.

4889-9199-0071.v1

**UNDER ARMOUR, INC. and UNDER ARMOUR RETAIL, INC.**

By Counsel

*/s/ Justin M. Harrison*
Justin M. Harrison, Esq. (WVSB #9255)
Jill E. Hall, Esq. (WVSB #8812)
Grace E. Hurney, Esq. (WVSB # 12751)
Jackson Kelly PLLC
500 Lee Street, East, Suite 1600
Post Office Box 553
Charleston, West Virginia 25322
Telephone: (304) 340-1358
Facsimile: (304) 340-1080
justin.harrison@jacksonkelly.com
jill.hall@jacksonkelly.com
grace.hurney@jacksonkelly.com

4889-9199-0071.v1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CYNTHIA D. PAJAK,

        Plaintiff,

    v.

UNDER ARMOUR, INC.,
UNDER ARMOUR RETAIL, INC.,
AND BRIAN BOUCHER,

        Defendants.

CIVIL ACTION NO. 1:19-cv-160
JUDGE KLEEH

## CERTIFICATE OF SERVICE

I, Justin M. Harrison, counsel for Under Armour, Inc. and Under Armour Retail, Inc., do certify that on the 11ᵗʰ day of October, 2022, I served "*Under Armour's Motion In Limine No. 6 To Exclude Evidence Related to Allegations that Brian Boucher Retaliated Against Missy Sage, Kim Nickels, and Dayna Perillo*" upon the following parties and counsel of record, via the CM/ECF system:

Robert M. Steptoe, Jr.
Larry J. Rector
Amy M. Smith
Allison B. Williams
Dylan T. Hughes
Steptoe & Johnson PLLC
400 White Oaks Boulevard
Bridgeport, West Virginia 26330
***Counsel for Plaintiff***

Scott Kaminski
Ray, Winton & Kelley, PLLC
109 Capitol Street, Suite 700
Charleston, West Virginia 25301
***Counsel for Defendant Brian Boucher***

Amy E. Askew
Kramon & Graham, P.A.
1 South St., Suite 2600
Baltimore, Maryland 21202
***Counsel for Under Armour, Inc. and Under Armour Retail, Inc.***

*/s/ Justin M. Harrison*
Justin M. Harrison

10