IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

CYNTHIA D. PAJAK,

       Plaintiff,

v.                              CIVIL ACTION NO. 1:19-CV-160
                                           (KLEEH)

UNDER ARMOUR, INC.,
UNDER ARMOUR RETAIL, INC.,
and BRIAN BOUCHER,

       Defendants.

## MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

      Pending before the Court are *Defendant Brian Boucher's Motion for Summary Judgment* [ECF No. 692] and *Under Armour's Motion for Summary Judgment* [ECF No. 699]. For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** the motions. ECF Nos. 692, 699.

### I.   PROCEDURAL BACKGROUND

      On July 16, 2019, Plaintiff, Cynthia Pajak ("Pajak"), sued Under Armour, Inc., Under Armour Retail, Inc., and Brian Boucher in the Circuit Court of Harrison County, West Virginia, alleging she was discharged in retaliation for reporting various instances of inappropriate workplace behavior and seeking damages and potential reinstatement. Her initial complaint alleges four causes of action, including: (1) wrongful discharge under Harless v. First National Bank of Fairmont, 246 S.E.2d 270 (W. Va. 1978); (2)

Pajak v. Under Armour                                    1:19cv160

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

violations of the West Virginia Human Rights Act ("WVHRA"); (3) negligent hiring, supervision, and retention; and (4) intentional infliction of emotional distress. Under Armour timely removed the case to this Court on August 19, 2019 [ECF No. 1]. On March 8, 2021, Pajak amended the complaint and asserted a fifth and sixth cause of action, Intentional Spoilation of Evidence against Defendants Under Armour and Brian Boucher. ECF No. 291, Am. Compl.

In the motions pending before the Court, the defendants move for summary judgment against Pajak on all claims pleaded in the Amended Complaint. ECF Nos. 692, 699. On October 11, 2022, the Court convened for a hearing. The motions being ripe for decision and fully considered, the Court makes its rulings herein.

## II.  FACTS

Pajak initiated this lawsuit after she was discharged by her employer, Defendant Under Armour Retail, Inc.[1] ECF No. 291, Am. Compl. at 1-2; ECF No. 750 at 2; Ex. D, ECF No. 750-4. Pajak alleges that after she reported internal complaints of inappropriate conduct that created a hostile work environment and subjected the complainants to gender discrimination, she was the

---

[1] The Court views the evidence in the light most favorable to Pajak, the non-moving party, and draws any reasonable inferences in Pajak's favor. Fed. R. Civ. P. 56(a); Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

Pajak v. Under Armour                                                      1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
### DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

victim of a retaliatory discharge. ECF No. 291, Am. Compl. at 1-2.

On November 5, 2013, Under Armour, Inc., hired Pajak as its Regional Director of the East and Canada regions. Id. ¶¶ 8-9; ECF No. 750-2, Ex. B, Offer of Employment. Pajak worked remotely from Bridgeport, West Virginia and reported to the defendant, Brian Boucher ("Boucher"). ECF No. 291, Am. Compl. ¶¶ 5, 10. According to Pajak's state and federal tax documents for the tax year of 2018, she was employed by Under Armour Retail, Inc. ECF No. 750-2, Ex. E, Form 1095-C & W-2.

In January, April, and November 2018, female employees reported several instances of inappropriate workplace conduct to Pajak. The three instances of alleged inappropriate workplace conduct which prompted Pajak's alleged protected activity: the Clarksburg Incident (January 2018), the Yammer Post (April 2018), and the Listening Session (November 2018). The Clarksburg Incident allegedly involved a male district manager, Joey McKenna, taking off his shirt and pretending to do a striptease. Id. ¶ 15. Another district manager, Brendan Costigan, allegedly made comments about a female colleague's appearance. Id. Pajak encouraged these female employees to submit written statements, which she then provided to Boucher. Id. ¶ 16.

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

In April 2018 (the Yammer Post), Joey McKenna, the same district manager involved in the January 2018 striptease, posted photographs of himself posing in a speedo for a body building competition to a social media site. Id. ¶ 19. Again, a female employee reported the conduct to Pajak. Id. Boucher felt the complainant was "overreacting and that there was no issue to discuss." Id.

Third, in November 2018 (the Listening Session), the Wall Street Journal published an article titled, "Under Armour's #METOO Moment: No more Strip Clubs on Company Dime." Id. ¶ 26. In response to the WSJ article, Founder and CEO Kevin Plank pledged to improve the company's culture, and Under Armour scheduled a call with Human Resource employees and all district managers to conduct an open forum on the article and address any concerns. Id. ¶ 28. McKenna reacted to the article by making jokes and down-playing concerns. Id. After the call, a female employee reached out to Pajak concerning McKenna's comments. Id. It was brought to Pajak's attention that several other female District Managers felt the comments by McKenna were inappropriate. Id. ¶ 30. Pajak reported the complaints, and again, Boucher minimized the employees' concerns regarding each incident and directed Pajak to "move on." Id. ¶¶ 17, 32.

Pajak v. Under Armour                                    1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

On June 12, 2018 – five months prior to the Listening Session - Boucher delivered Pajak's midyear review, the "Half Time Huddle," which raised no concerns about her job performance. Id. ¶ 22. But a mere nine (9) days later, on June 21, 2018, Boucher, "unexpectedly and with no warning, called Ms. Pajak saying that he would like her to make an offer on her terms to leave Under Armour." Id. Boucher had not consulted Under Armour's human resources department before approaching Pajak. Id. ¶¶ 22-23. Boucher did not supplement this unexpected offer with documentation of dissatisfaction regarding Pajak's performance. Id. Pajak was surprised by the negative feedback, as Boucher had not criticized her performance before this. See ECF No. 750-32, Ex. FF. Pajak declined to leave her position, and, on September 10, 2018, Boucher placed her on a sixty-day Performance Improvement Plan ("PIP"), although the typical "PIP period" at Under Armour is ninety days. ECF No. 291, Am. Compl., ¶ 25. Pajak contends Boucher provided no guidance in the PIP as to what areas of her performance needed to improve. Id. ¶ 25. She further alleges that the PIP contained only subjective performance metrics, and that, although Boucher told her he would meet with her regularly during the PIP period, he did so only once and that was at her request. Id. On December 10, 2018, Pajak was fired after her PIP period expired. Id. ¶¶ 9-10, 34.

Pajak v. Under Armour                                          1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
### DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

Pajak sued on July 16, 2019. Under Armour had knowledge of a potential civil suit as early as September 2018 and at least by February of 2019. See ECF No. 294. On February 15, 2019, Pajak's counsel "sent Under Armour a demand letter outlining Ms. Pajak's claims and notifying the company of impending litigation against it." ECF No. 291, Am. Compl., ¶ 36. The letter included "Under Armour's evidentiary preservation obligations and instruct[ed] Under Armour to preserve all forms of potential evidence related to Ms. Pajak's claims." Id. Pajak alleges Defendants failed to preserve this evidence, and relevant data to Pajak's claims was deleted. Id. ¶ 38.  Indeed, "while Under Armour at one point had physical custody of Mr. Boucher's Under Armour controlled cell phone, it relinquished custody on March 15, 2019, and now the device is missing with no explanation for its whereabouts." Id. ¶ 38. While "Under Armour claims it gave the device to Boucher and Boucher claims he returned it to Under Armour," it has never been found and therefore never disclosed in discovery. Id. ¶ 38. Documents and other information relating to Pajak's claims, including text messages involving Pajak, have been erased. Id. ¶¶ 39-40.

6

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

### III. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). The nonmoving party must "make a sufficient showing on an essential element of its case with respect to which it has the burden of proof." <u>Id.</u> at 317-18. Summary judgment is proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no 'genuine issue for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).

This Court has previously summarized the burden imposed on parties opposing a summary judgment challenge.

> However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

---

showing that there is a genuine issue for trial." Id. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial-whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." Id. at 586. That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial. Fed. R. Civ. P. 56(c); Celotex Corp., 477 U.S. at 323-25; Anderson, 477 U.S. at 248. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Anderson, 477 U.S. at 249 (citations omitted).

Watson v. Warden, FCI Hazelton, Civil Action No. 2:16-CV-76, 2017 WL 1955532, at *2 (N.D.W. Va. May 11, 2017) (Bailey, J.). The Court views the evidence in the light most favorable to Plaintiff, the

Pajak v. Under Armour                                    1:19cv160

MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

non-moving party, and draws any reasonable inferences in Plaintiff's favor. Fed. R. Civ. P. 56(a); Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011) (en banc).

## IV.  DISCUSSION

In his Memorandum of Law in Support of Summary Judgment [ECF No. 693], Boucher joins in Under Armour's Motion for Summary Judgment [ECF Nos. 699, 716], stating "their interests on those issues are aligned." Therefore, the Court will address the arguments raised in the motions together.

**A. The West Virginia Human Rights Act ("WVHRA") violations, W. Va. Code 5-11-9.**

**1. Defendant Under Armour Retail, Inc., is not subject to the WVHRA.**

Under the WVHRA, "[t]he term 'person' means one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons." W. Va. Code § 5-11-3(a). "[T]he term 'employer' means . . . any person employing twelve or more persons within the state for twenty or more calendar weeks in the calendar year in which the act of discrimination allegedly took place or the preceding calendar year." W. Va. Code § 5-11-3(d).

9

Pajak v. Under Armour                                         1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
### DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

This numerosity requirement is "clear and unambiguous." Williamson v. Greene, 490 S.E.2d 23, 28 (W. Va. 1997).

In this action, the Supreme Court of Appeals of West Virginia answered a certified question regarding WVHRA's application to the Under Armour defendants named in the action, specifically whether, "in the context of an employee/employing entity, [] the term 'person' as used in West Virginia Code § 5-11-9(7) is intended by the Legislature to include an entity, such as Under Armour, that does not meet the WVHRA definition of 'employer.'" Pajak v. Under Armour, Inc., 873 S.E.2d 918, 922 (W. Va. 2022). The Court held:

> An entity that does not meet the West Virginia Human Rights Act definition of "employer," as set out in West Virginia Code § 5-11-3(d) (eff. 1998), may not be potentially liable to its own employee as a "person," as defined in West Virginia Code § 5-11-3(a), for an alleged violation of West Virginia Code § 5-11-9(7) (eff. 2016).

Id., Syl. Pt. 5.

> The district court determined, for purposes of the underlying litigation, that Under Armour does not meet the definition of "employer" as set out in West Virginia Code § 5-11-3(d) and declined to certify a question to this Court addressing that issue. Accordingly, for purposes of this opinion, we accept the district court's determination as to Under Armour's status as an "employer" under the WVHRA.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

<u>Id.</u> at 922. The Supreme Court of Appeals did not differentiate between Under Armour Retail, Inc., and Under Armour, Inc., in its Opinion. Indeed, the Court begins by describing the parties as "Petitioner, Ms. Cynthia D. Pajak ("Ms. Pajak")" as the person hired by "the respondents, Under Armour, Inc. and/or Under Armour Retail, Inc. (collectively "Under Armour")." <u>Id.</u> at 920.

Since April 2022, however, the parties have attempted to clarify who Pajak's employer is in this case. At the October 11, 2022, hearing, the parties agreed that Defendant Under Armour Retail, Inc., is Pajak's employer. Therefore, according to the Supreme Court of Appeals' answer to the certified question, and by this Court's prior findings regarding both Under Armour, Inc., and Under Armour Retail, Inc., falling short of the WVHRA numerosity requirement,[2] Defendant Under Armour Retail, Inc. (Pajak's employer) is not a covered employer – or a person - under the WVHRA. Defendants' Motions for Summary Judgment [ECF Nos. 692, 699] are **GRANTED** as to Pajak's claim for WVHRA violations against Defendant Under Armour Retail, Inc., because, though her employer, it does not meet the statutory requirements to be considered an "employer" under the WVHRA, and "may not be potentially liable to

---

[2] The numerosity requirement is found in W. Va. Code § 5-11-3(d): "[T]he term 'employer' means . . . any person employing **twelve or more persons** within the state . . . ."

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

its own employee as a 'person.'". Pajak v. Under Armour, Inc., 873 S.E.2d 918 (W. Va. 2022); see also ECF No. 438.

> **2. Defendant Under Armour, Inc., is subject to the WVHRA as a person, and Pajak established a link between her alleged protected activity and the discharge to defeat summary judgment on this claim.**

The Court must next consider whether Under Armour, Inc., is subject to liability under the WVHRA. Under Armour argues Pajak failed to allege that Under Armour, Inc., can qualify as a person under the Act and that the Court should not allow her to "salvage her only fee-shifting claim." ECF No. 716 at 25. "When faced with a statutory provision, the starting point for any issue of statutory interpretation . . . is the language of the statute itself." Redeemed Christian Church of God (Victory Temple) Bowie, Md. v. Prince George's Cty., 17 F.4th 497, 508 (4th Cir. 2021) (internal citation and quotation marks omitted). "[P]lain and unambiguous meaning" of the statute controls. Id.

Again, the Court has already found Under Armour, Inc., is not an employer under the Act because it fails to meet the numerosity requirement of having twelve or more employees working in the state. Importantly, only one person employed by Under Armour, Inc., lives in West Virginia. ECF No. 1-2 at 2, Decl. Loren Pearl; ECF No. 671-5, Ex. C. The parties have determined through discovery that Under Armour Retail, Inc., and not Under Armour, Inc., is

Pajak v. Under Armour                                    1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

Pajak's employer. Because Under Armour, Inc., is not Pajak's employer, the Court must determine whether it is a "person" as defined in W. Va. Code § 5-11-3(a).

The Court finds Under Armour, Inc. is a person under the Act: "**one or more individuals**, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons." W. Va. Code § 5-11-3(a) (emphasis added). This Court has previously noted a parent company of a defendant employer "qualifies as a 'person' against whom an aiding and abetting action may be filed under the HRA." <u>Larry v. Marion Cnty. Coal Co.</u>, 302 F.Supp.3d 763, 776 n.1 (N.D.W. Va. 2018).

> It shall be an unlawful discriminatory practice . . . (7) For any person, employer, employment agency, labor organization, owner, real estate broker, real estate salesman or financial institution to: (A) Engage in any form of threats or reprisal, or to engage in, or hire, or conspire with others to commit acts or activities of any nature, the purpose of which is to harass, degrade, embarrass or cause physical harm or economic loss or to aid, abet, incite, compel or coerce any person to engage in any of the unlawful discriminatory practices defined in this section[.]

W. Va. Code § 5-11-9(7)(A). "[Restatement (Second)] § 876(b) concludes that aiding and abetting liability occurs when

Pajak v. Under Armour                                    1:19cv160

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

the actor 'knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other.'" <u>Larry</u>, 302 F.Supp.3d at 777. It is undisputed that Under Armour, Inc., is made up of "one or more individuals." ECF No. 671-5, Ex. C; ECF No. 671-6, Ex. D. Clearly, by the statute's plain and unambiguous meaning, Under Armour, Inc., is subject to the WVHRA as a "person." Therefore, the Motions for Summary Judgment [ECF Nos. 692, 699] are **DENIED** on this ground as to Defendant Under Armour, Inc.

Under Armour argues that, even if Under Armour, Inc., is subject to the WVHRA, which the Court finds it is, Pajak has failed to establish a <u>prima facie</u> case for retaliatory discharge.

> In order to set forth a prima facie case of impermissible employment discrimination under the [WVHRA], a plaintiff must establish the following: (1) that she is a member of a protected class; (2) that the employer made an adverse employment decision affecting her; and (3) that, but for her protected status, the employer would not have made the adverse decision. Syl. pt. 3, <u>Conaway v. E. Associated Coal Corp.</u>, 178 W.Va. 164, 358 S.E.2d 423, 429 (1986).

<u>Larry</u>, 302 F.Supp.3d at 770. Under Armour, Inc., disputes the third element: whether Pajak established a link between her alleged protected activity and the discharge.

14

Pajak v. Under Armour                                    1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

Pajak has submitted evidence of Under Armour, Inc. "aiding and abetting," thus establishing the link between the protected activity and the discharge, that requires denial of summary judgment as to Under Armour, Inc.  Both Under Armour, Inc., and Pajak have presented evidence that Under Armour, Inc., knew Pajak's firing was discriminatory. The Amended Complaint includes Count Two, violations of the WVHRA, against "all Defendants." ECF No. 291, Am. Compl. ¶ 60. Pajak alleges liability against both Under Armour defendants – even though Under Armour Retail, Inc. is dismissed from the claim - and cites W. Va. Code § 5-11-9(7) as basis for her cause of action, which includes the "aiding and abetting" language as applied to any person or employer. Id. ¶ 61. Under Armour, Inc., is the 100% owner of Under Armour Retail, Inc. ECF No. 750-1, Ex. A. George Hanson (Under Armour, Inc.'s North America Ecommerce unit) and Melisa Miller (Under Armour, Inc.'s Global Revenue Support unit) were both affiliated with Under Armour, Inc., and "participated in reviewing Pajak's performance and the decision to terminate her employment." ECF No. 716 at 30; ECF No. 671-6, Ex. D.

Evidence exists supporting the link between her alleged protected activity and her employment discharge which requires consideration by the jury. Pajak was promoted in 2016 and received

Pajak v. Under Armour                                     1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

a "meets UA's high expectations" review in 2017. ECF No. 750-12, Ex. L; ECF No. 750-13, Ex. M. Unbeknownst to Pajak, in May 2018, Boucher relayed to James Toner, an employee of Under Armour Retail, Inc. in the North America Retail unit, that Pajak's role with the company "isn't the role for her any longer." ECF No. 750-29, Ex. CC. Just one month later in June 2018, Pajak attended a "half time huddle" with Boucher, and reported her feedback was positive and no concerns regarding her performance were mentioned. After the half time huddle, and after Pajak had raised concern over the Clarksburg Incident and Yammer Post, Boucher sent messages to James Toner and George Hanson about firing Pajak. Boucher relayed to Mr. Toner that he had "[c]onnected with [George Hanson.] He is aligned to separating immediately via a package." ECF No. 750-29 at 13, Ex. CC. Mr. Toner also indicated he had been in contact with Melisa Miller of Under Armour, Inc. about Pajak's severance package. Id. After this correspondence, Boucher called Pajak on June 21, 2018, and criticized her job performance and told her to look for a new job.

Pajak was put on a performance improvement plan ("PIP") on September 10, 2018, by the suggestion of Human Resources. During the PIP, Hanson was made aware of Boucher's intention to push her out of employment by October. ECF No. 750-30, Ex. DD. On November

16

Pajak v. Under Armour                                    1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

2, 2018, Boucher updated Hanson that Pajak had 30 days left on the PIP, and that HR – Melisa Miller of Under Armour, Inc. – would not allow Boucher to offer Pajak severance but that "[s]he will be out of the business on 12/10." ECF No. 750-30, Ex. DD.

Defendant Under Armour, Inc., fails to show there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law on this issue. Fed. R. Civ. P. 56(a). There is ample evidence in the record to establish a prima facie case that Under Armour, Inc., knew Boucher and Under Armour Retail, Inc., were engaging in a discriminatory firing of Pajak. Multiple conversations between Boucher, Toner, Miller, and Hanson were had about Pajak's firing. Viewing the evidence in the light most favorable to Pajak, including all reasonable inferences drawn in her favor, the record reveals Under Armour, Inc., itself gave "substantial assistance or encouragement" to those defendants by charging its employees with responsibility to make the firing decision. Larry, 302 F.Supp.3d at 777. Summary judgment is **DENIED** on this issue.

### 3. Defendant Brian Boucher is subject to the WVHRA as a person.

Turning to Defendant Boucher, the Court determines he, like Defendant Under Armour, Inc., is subject to liability under the WVHRA as a "person." Boucher contends that if his employer cannot

17

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

be held responsible under the "WVHRA due to the numerosity requirement, then neither could he be so covered as his only relation to Pajak was as her supervisor for a non-covered employer and he never worked within the state of West Virginia." ECF No. 692 at 3.

Boucher's reasoning holds little weight. "[A] cause of action [under the WVHRA] may properly be based upon an allegation that the defendant employee aided or abetted an employer engaging in unlawful discriminatory practices." Syl. Pt. 4, Holstein v. Norandex, Inc., 461 S.E.2d 473, 474 (W. Va. 1995). In the June 11, 2021, *Memorandum Order and Opinion Denying Brian Boucher's Motion to Certify Question to the West Virginia Supreme Court of Appeals,* Judge Keeley previously declared:

> As an individual, Boucher is a "person" to whom the WVHRA applies. This is so regardless of the fact that he only interacted with Pajak as an Under Armour employee and the WVHRA may not apply to Under Armour. See Holstein, 461 S.E.2d at 476 (holding that the plaintiff's former manager was a "person" who aided and abetted their employer's unlawful act of discrimination). Despite Boucher's contention otherwise, the WVHRA does not require the plaintiff's employer to be found liable prior to a plaintiff's assertion of supervisory liability. As such, it would be inappropriate for the Court to read such a requirement into the WVHRA. See Banker v. Banker, 474 S.E.2d 265, 476-477 (W. Va. 1996) ("It is not for [courts] arbitrarily to read into [a statute] that which it does not say.").

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

ECF No. 439 at 4-5. The same remains true. There has been no new evidence presented for the Court to consider on this issue as to Defendant Boucher. Therefore, for the same reasons the Court finds Under Armour, Inc., is not entitled to summary judgment on this issue, the Motions for Summary Judgment [ECF Nos. 692, 699] are **DENIED** as to Defendant Boucher because he is a person to whom the WVHRA applies.

   **B. Common Law Retaliatory Discharge Claim under _Harless v. First Nat'l Bank of Fairmont_, 246 S.E.2d 270 (W. Va. 1978).**

   **1. Under Armour Retail, Inc. fails to show there is no genuine dispute as to any material fact and that it is entitled to judgment as a matter of law on Pajak's _Harless_ claim.**

At the crux of Pajak's lawsuit are her common law claims for retaliatory discharge. ECF No. 291, Am. Compl. ¶¶ 50-58. She alleges the _Harless_ claim against all defendants. _Id._

> The rule that an employer has an absolute right to discharge an at will employee must be tempered by the principle that where the employer's motivation for the discharge is to contravene some substantial public policy principle, then the employer may be liable to the employee for damages occasioned by this discharge.

Syl., _Harless v. First Nat'l Bank of Fairmont_, 246 S.E.2d 270 (W. Va. 1978).

Pajak v. Under Armour                                    1:19cv160

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

At trial, Pajak must prove the following elements: (1) "[t]hat a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law"; (2) "[t]hat dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy"; (3) "[t]he plaintiff's dismissal was motivated by conduct related to the public policy"; and (4) "[t]he employer lacked overriding legitimate business justification for the dismissal." Burke v. Wetzel Cnty. Comm'n, 815 S.E.2d 520, 537 (W. Va. 2018).

> When an employee makes a prima facie case of discrimination, the burden then shifts to the employer to prove a legitimate, nonpretextual, and nonretaliatory reason for the discharge. In rebuttal, the employee can then offer evidence that the employer's proffered reason for the discharge is merely a pretext for the discriminatory act.

Syl. Pt. 4, Birthisel v. Tri-Cities Health Servs. Corp., 424 S.E.2d 606 (W. Va. 1992) (internal citation omitted).

Turning to elements one and two of Burke, Defendants argue Pajak's reports regarding the April 2018 Yammer Post are not protected by a substantial public policy. Pajak easily defeats Defendants' motions for summary judgment here as the law has been settled since 1997. The public policy sources Pajak identified in

20

Pajak v. Under Armour                                          1:19cv160

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

her Amended Complaint are the West Virginia Human Rights Act ("WVHRA"), W. Va. Code § 5-11-9, and other statutes and the common law of West Virginia. ECF No. 291, Am. Compl ¶ 53. "The West Virginia Human Rights Act establishes a clear and unequivocal public policy against sex discrimination in employment and retaliatory discharge based thereon." Williamson v. Greene, 490 S.E.2d 23, 32 (W. Va. 1997). Here, like in Williamson, Pajak cannot maintain a statutory WVHRA claim against her employer, Under Armour Retail, Inc.; however, the WVHRA "sets forth a clear statement of public policy sufficient to support a common law claim for retaliatory discharge against an employer . . . exempted by [the WVHRA]." Id. at 33. Therefore, "the discharged employee may nevertheless maintain a common law claim for retaliatory discharge against the employer based on alleged sex discrimination or sexual harassment because sex discrimination and sexual harassment in employment contravene the public policy of this State articulated in the West Virginia Human Rights Act." Id.

Specifically, Pajak alleges she "is female and suffered retaliation, harassment, and discrimination because of her sex, in that Defendants were guilty of allowing a hostile work environment to occur in Under Armour's workplace." ECF No. 291, Am. Compl., ¶ 52. "Ms. Pajak was discharged on December 10, 2018, because she

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

reported sexual misconduct and other workplace misconduct that violated the substantial public policy of West Virginia and Under Armour's own policies." Id. ¶ 55. The pleaded facts and testimony in support show a series of instances of alleged protected activity relevant and sufficiently proximate to the retaliatory discharge that would jeopardize the public policy. Pajak has identified the existence of a clear public policy and that her alleged retaliatory discharge would jeopardize the policy. Elements one and two of Burke, therefore, are met.

As to the third Burke factor, "motive issues [in employment law cases] ordinarily present classic questions of fact." Tiernan v. Charleston Area Med. Ctr., Inc., 575 S.E.2d 618, 622 (W. Va. 2002) (internal quotation marks omitted).

> [T]he issue of discriminatory animus is generally a question of fact for the trier of fact, especially where a prima facie case exists. The issue does not become a question of law unless only one conclusion could be drawn from the record in the case. In an employment discrimination context, the employer must persuade the court that even if all of the inferences that could reasonably be drawn from the evidentiary materials of the record were viewed in the light most favorable to the employee, no reasonable jury could find for the plaintiff.

Conrad v. ARA Szabo, 480 S.E.2d 801, 809 (W. Va. 1996).

Pajak v. Under Armour                                          1:19cv160

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

Pajak meets the "de minimus initial burden of showing circumstances giving rise to an inference of discrimination" and survives summary judgment here. Hanlon v. Chambers, 464 S.E.2d 741, 748 (W. Va. 1995). There remains a genuine issue of material fact for a jury to decide whether Pajak "express[ed] opposition to a series of incidents related in several ways that she reasonably and in good faith believed constituted sexual harassment and hostile work environment." ECF No. 750 at 23.

Defendants take most issue with Pajak's Harless allegations as they relate to the April 2018 Yammer Post incident. In April 2018, the same district manager involved in the January 2018 striptease (Clarksburg Incident) posted photographs of himself in a speedo posing in a body building competition to a social media site. ECF No. 291, Am. Compl. ¶ 19. When Pajak reported this, Boucher minimized the reporting employees' concerns regarding the Yammer Post incident and directed Pajak to "move on." Id. ¶¶ 17, 32. The history of Pajak's overall satisfactory performance at Under Armour Retail, Inc., coupled with the timeline of the three incidents and alleged discriminatory events that followed, defeat summary judgment. Pajak was promoted in 2016 and received a "meets UA's high expectations" review in 2017. ECF No. 750-12, Ex. L; ECF No. 750-13, Ex. M. In May 2018, Boucher relayed to James Toner, an

Pajak v. Under Armour                                    1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

employee of Under Armour Retail, Inc., that Pajak's role with the company "isn't the role for her any longer." ECF No. 750-29, Ex. CC. One short month later, Pajak's half time huddle with Boucher resulted in positive feedback and no criticism of her performance at Under Armour Retail, Inc. After the half time huddle, and after Pajak had raised concern over the Clarksburg Incident and Yammer Post, Boucher sent messages to James Toner and George Hanson - Under Armour, Inc.'s North America Ecommerce unit - about firing Pajak. Boucher then called Pajak, criticized her job performance, and told her to look for a new job.

"[C]lose temporal proximity weighs heavily in favor of finding a genuine dispute as to causation." Jacobs v. N.C. Admin. Off. of the Cts., 780 F.3d 562, 575 (4th Cir. 2015); see also Roberts v. Glenn Indus. Grp., Inc., 998 F.3d 111, 126 (4th Cir. 2021) ("An adverse action that bears sufficient temporal proximity to a protected activity may, along with the existence of other facts, suggest that the adverse employment action occurred because of the protected activity.") (citation omitted). The almost one-year lapse between the first sexual harassment incident report (January 2018) and Pajak's termination (December 2018) is not the only factor the Court must consider here in determining the third Burke factor. Upon being surprised by Boucher's negative feedback,

24

Pajak v. Under Armour                                    1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

Pajak declined to leave her position at Under Armour. See ECF No. 750-32, Ex. FF. On September 10, 2018, Boucher placed her on the sixty-day PIP, although the typical PIP period at Under Armour is ninety days. ECF No. 291, Am. Compl., ¶ 25. Pajak contends Boucher provided no guidance in the PIP as to what areas of her performance needed to improve, nor did he meet with Pajak during the PIP period other than one time upon her own request. Id. ¶ 25. Regardless, during the PIP period, Boucher intended to terminate Pajak by October. ECF No. 750-30, Ex. DD. On November 2, 2018, Boucher updated Hanson that Pajak had 30 days left on the PIP, and that HR – Melisa Miller of Under Armour, Inc. – would not allow Boucher to offer Pajak a severance package but that "[s]he will be out of the business on 12/10." ECF No. 750-30, Ex. DD. Upon expiration of the PIP, Pajak was fired. ECF No. 291, Am. Compl., ¶¶ 9-10, 34. Drawing all reasonable inferences in Pajak's favor, Pajak has produced sufficient affirmative evidence from which a reasonable jury could conclude that she was terminated because of her sex and her reports of sexual harassment in the workplace.

Finally, Under Armour Retail, Inc., has not shown an "overriding legitimate business justification of the dismissal." Burke v. Wetzel Cnty. Comm'n, 815 S.E.2d 520, 537 (W. Va. 2018). Defendants claim that Pajak's performance is to blame for her

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

employment termination. ECF No. 716 at 22. Having been promoted in late 2016, produced a "meets UA's high expectations" review in 2017, and given positive reviews throughout the year of 2018 until her first negative feedback on June 21, 2018, Pajak's employment history with Under Armour fails to show her performance deficit at summary judgment stage. ECF No. 750-12, Ex. L; ECF No. 750-13, Ex. M. The reasonable inferences available from the circumstances most certainly satisfy Pajak's burden at this stage. See Hanlon, 464 S.E.2d at 748 (describing plaintiff's burden to show circumstances give rise to inference of unlawful motivation as de minimis) (quoting Cronin v. Aetna Life Ins., Co., 46 F.3d 196, 204 (2d Cir. 1995)). Defendants' motions for summary judgment [ECF Nos. 692, 699] are **DENIED** on this ground as to Defendant Under Armour Retail, Inc., Pajak's employer.

**2. Under Armour, Inc., and Boucher are entitled to judgment as a matter of law on Pajak's common law Harless claim.**

"[F]ederal courts in West Virginia have repeatedly held that a plaintiff cannot maintain both a *Harless*-based common law action and a WVHRA claim based on the same conduct." Romans v. Wayne Cnty. Comm'n, No. 3:20-0797, 2021 WL 4005614, *5 (S.D.W. Va. Sept. 2, 2021) (citing Adkins v. Cello P'ship, Inc., No. 3:17-2772, 2017 WL 2961377, at *3 (S.D.W. Va. July 11, 2017)) (internal quotation marks omitted); see also Seavolt v. Variform, Inc., No. 3:19-CV-

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

136, 2020 WL 6146574, *7 (N.D.W. Va. Mar. 11, 2020) (granting, in part, a motion for judgment on the pleadings because "West Virginia federal district courts have repeatedly found that a plaintiff cannot maintain a Harless-type common law action and a WVHRA claim based on the same conduct.") (citing Adkins at *3).

Because this Court has found Defendants Boucher and Under Armour, Inc., subject to the WVHRA as persons under the act, and therefore subject to statutory liability as individuals, Pajak cannot maintain both the Harless claim and WVHRA claim against them. Pajak's Harless claim against Under Armour, Inc., and Boucher is based on the public policies of the WVHRA.[3] Therefore, as a matter of law, Pajak cannot maintain the common law cause of action for wrongful discharge against these defendants for the same conduct or same theory. Defendants' Motions for Summary Judgment [ECF Nos. 692, 699] are **GRANTED** as to Defendants Boucher and Under Armour, Inc., on Pajak's common law Harless claim.

---

[3] While Pajak refers to "other statutes and the common law of West Virginia" in her Amended Complaint to allege wrongful discharge under Harless against all three defendants, she has failed to identify an source of public policy, other than the West Virginia Human Rights Act. ECF No. 291, Am. Compl. ¶ 53. A brief mention in the Amended Complaint, and no factual support or legal authority in her response to motions for summary judgment, is inadequate to salvage this claim.

Pajak v. Under Armour                                              1:19cv160

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

---

### C. Intentional Infliction of Emotional Distress

**1. Defendant Under Armour Retail, Inc., Pajak's employer, enjoys West Virginia Workers' Compensation Act immunity for the intentional infliction of emotional distress claim and, therefore, is entitled to judgment as a matter of law.**

Pajak pleads intentional infliction of emotional distress or the tort of outrage against all three named defendants. ECF No. 291, Am. Compl., ¶¶ 73-78.

An

> intentional infliction of emotional distress claim[] require[s] that a plaintiff suffer 'severe emotional distress' in order to be successful. See Minshall v. Health Care Retirement Corp. of Am., 208 W.Va. 4, 9, 537 S.E.2d 320 (2000) (setting forth elements of intentional infliction of emotional distress claim, the fourth element being that "the emotional distress was severe") (quoting Harless v. First Nat'l Bank in Fairmont, 169 W.Va. 673, 289 S.E.2d 692 (1982)), and Marlin v. Bill Rich Constr., 198 W.Va. 635, 652, 482 S.E.2d 620 (1996) ("A claim for emotional distress without an accompanying physical injury can only be successfully maintained upon a showing by the plaintiffs in such an action of facts sufficient to guarantee that the claim is not spurious and upon a showing that the emotional distress is undoubtedly real and serious.")

Councell v. Homer Laughlin China Co., 823 F.Supp.2d 370, 383 (N.D.W. Va. 2011). Evidence of outrageous conduct must also be

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

alleged. Id. at 384. "Additionally, the actual act of terminating an employee for an invidious cause cannot be grounds for 'outrageous' conduct under West Virginia law." Id. (quoting syl. pt. 2, Dzinglski v. Weirton Steel Corp., 445 S.E.2d 219 (W. Va. 1994)). Notwithstanding whether Pajak proved her prima facie case of intentional infliction of emotional distress ("IIED"), Defendants argue the tort of IIED is barred by the West Virginia Workers' Compensation Act ("WCA") as to Defendant Under Armour Retail, Inc.

Subject to certain limitations, the WCA confers responsibility to the employer to pay its employees, through the Workers' Compensation Fund, "who have received personal injuries in the course of and resulting from their covered employment." W. Va. Code § 23-4-1(a). An employer is "not liable to respond in damages at common law or by statute for injury" caused by employer's negligence, if the employer is otherwise in compliance with the Act. Id. § 23-6-2; see also Canterbury v. Valley Bell Dairy Co., 95 S.E.2d 73, 75 (W. Va. 1956).

> As the West Virginia Supreme Court of Appeals has explained, the workers' compensation system was "designed to release both an employer and its employees from common-law rules of liability and damage, protect an employer from expensive and unpredictable litigation, and provide compensation for injuries to employees without

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

> the burdensome requirements of proving common-
> law negligence."

United Fin. Cas. Co. v. Ball, 941 F.3d 710, 714 (4th Cir. 2019)

(quoting Erie Ins. Prop. & Cas. Co. v. Stage Show Pizza, JTS, Inc.,

553 S.E.2d 257, 262 (W. Va. 2001)).

Judge Stamp dismissed allegations of intentional tort claims

for intentional infliction of emotional distress or the tort of

outrage because they failed to satisfy the deliberate intent

exception to WCA's immunity, having not been pleaded with the

specific intent required.

> The Workers' Compensation Act creates
> "sweeping immunity" for employers from all
> tort negligence actions by employees for
> injuries, including emotional distress, that
> occur "in the course of and resulting from
> employment." *Bias v. Eastern Associated Coal
> Corp.*, 220 W. Va. 190, 194-96, 640 S.E.2d 540
> (2006); W. Va. Code § 23-4-1. The plaintiffs
> argue that the emotional distress claimed in
> this action was not a result of a workplace
> incident or accident, but instead was a result
> of Ms. Councell's termination. While true, the
> plaintiffs misunderstand the breadth of the
> West Virginia Workers' Compensation Act in
> that it provides almost complete immunity from
> common law tort liability for negligently
> inflicted injuries to employees as a result of
> their employment. *State ex rel. Frazier v.
> Hrko*, 203 W. Va. 652, 659, 510 S.E.2d 486
> (1998) ("The employer is entitled to immunity
> for any injury occurring to an employee and
> 'shall not be liable to respond in damages at
> common law or by statute.'" (quoting W. Va.
> Code § 23-2-6)). Emotional distress which

30

Pajak v. Under Armour                                        1:19cv160

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

---

results from termination from employment does,
in turn, result of employment.

However, exceptions to employer immunity for
injuries to employees under the Workers'
Compensation Act, while extremely narrow, do
exist. *See Bias*, 220 W. Va. at 194, 640 S.E.2d
540. One of these narrow exceptions is "when
an employer has deliberately intended to cause
injury or death to an employee." *Id.* While the
plaintiffs do plead the broad tort of
intentional infliction of emotional distress,
such a broad pleading of this intentional tort
is insufficient to plead deliberate intention
to cause injury. *Weirton Health Partners, LLC
v. Yates,* 2010 WL 785647, *6, 2010 U.S. Dist.
LEXIS 19951, *16-17 (N.D.W. Va. Mar. 4, 2010).
In *Weirton Health Partners*, this Court found
that, in order for an intentional infliction
of emotional distress claim to fall outside of
the immunity provisions of the West Virginia
Workers' Compensation Act, the plaintiff must
plead facts that suggest "'an actual, specific
intent,'" and liability cannot result from
"'(A) Conduct which produces a result not
specifically intended; (B) conduct that
constitutes negligence, no matter how gross or
aggravated; or (C) willful, wanton or reckless
misconduct.'" *Id.* at *6, 2010 U.S. Dist. LEXIS
19951, at *17 (quoting W. Va. Code § 23-4-
2(d)(2)(I)).

Councell v. Homer Laughlin China Co., 823 F.Supp.2d 370, 384

(N.D.W. Va. 2011).

It remains undisputed that Pajak has not pleaded a deliberate

intent claim against her employer, Under Armour Retail, Inc.

W. Va. Code [] 23-2-6a [1949] extends the
employer's immunity from liability set forth
in W. Va. Code [] 23-2-6 [1991] to the

Pajak v. Under Armour                                    1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

> employer's officer, manager, agent, representative or employee when he is acting in furtherance of the employer's business and does not inflict an injury with deliberate intention. Syllabus point 4, Henderson v. Meredith Lumber Co., Inc., 190 W.Va. 292, 438 S.E.2d 324 (1993).

Syl. Pt. 1, Wisman v. William J. Rhodes and Shamblin Stone, Inc., 447 S.E.2d 5 (W. Va. 1994). While Pajak has not pleaded a deliberate intent claim against her employer, Under Armour Retail, Inc., and has therefore failed to allege the specific intent required under W. Va. Code § 23-4-2(d). Pajak's IIED claim against Under Armour Retail, Inc., fails, and summary judgment is **GRANTED**.

> **2.  There is no genuine dispute of material fact on the intentional infliction of emotional distress claim against Defendants Under Armour, Inc., and Boucher, and they are entitled to judgment as a matter of law.**

Pajak's claim for intentional infliction of emotional distress or the tort of outrage against Defendants Boucher and Under Armour, Inc., "fails to allege that such action was undertaken with specific intent of causing [her] injury." Brevard v. Racing Corp. of W. Virginia, No. 2:19-cv-578, 2020 WL 1860713 at *7 (S.D.W. Va. Apr. 13, 2020). "[W]hen the employee's distress results from the fact of his discharge—e.g., the embarrassment and financial loss stemming from the plaintiff's firing—rather than from any improper conduct on the part of the employer in effecting

32

Pajak v. Under Armour                                    1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

the discharge, then no claim for intentional infliction of emotional distress can attach." Syl. Pt. 2, Dzinglski v. Weirton Steel Corp., 445 S.E.2d 219 (W. Va. 1994).

Pajak pleads that Defendants, in effecting the alleged retaliatory discharge, "acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from their conduct." ECF No. 291, Am. Compl. ¶¶ 74-75. But no facts support this allegation. Instead, Pajak spends considerable time outlining the factual allegations, and discovering the same, to support her retaliatory discharge claim, not the IIED claim. The discovery has revealed alleged discriminatory events – that she reported - throughout her employment with Under Armour Retail, Inc. However, the discharge alone is the basis for her IIED cause of action and the conduct alleged fails to rise to the level of extreme and outrageous conduct required to survive a motion for summary judgment. As inflammatory as the Clarksburg, Yammer Post, and Listening Session incidents – the incidents which support her retaliatory discharge claim - may have been to the complainants, they do not support Pajak's IIED claim. Pajak has failed to show evidence of outrageous conduct with respect to her alleged retaliatory discharge. There is no evidence that her retaliatory discharge "was undertaken with

Pajak v. Under Armour                                    1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

specific intent of causing [her] injury." Brevard, at *7. Furthermore, the damages available to Pajak under the retaliatory discharge claim mirror those available under the IIED claim. See Dzinglski, 445 S.E.2d at 229. Accordingly, Defendants' Motions for Summary Judgment [ECF Nos. 692, 699] are **GRANTED** on this ground as to Defendant Boucher and Under Armour, Inc.

### D. Negligent Hiring, Supervision, and Retention.

Remaining is Defendants' argument for summary judgment against Pajak's negligence claims. Pajak alleges claims of negligent hiring, supervision, and retention against Defendants Under Armour, Inc. and Under Armour Retail, Inc. ECF No. 291, Am. Compl., ¶¶ 66-72. Defendants' motions for summary judgment are **GRANTED** on the negligent hiring and supervision claims and **DENIED** on the negligent retention claim.

> **1. There is no genuine dispute of material fact and Defendants Under Armour, Inc. and Under Armour Retail, Inc., are entitled to judgment as a matter of law on Pajak's negligent hiring claim.**

Pajak claims that Defendants Under Armour, Inc., and Under Armour Retail, Inc., negligently hired Boucher "as an employee, agent, and supervisor despite the Defendants' knowledge that Defendant Boucher has repeatedly, intentionally, maliciously and grossly violated Plaintiff's rights as protected under the [WVHRA]

34

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

and other applicable laws." ECF No. 291, Am. Compl., ¶ 67.
Defendants move for summary judgment on this claim, stating that
Pajak has not produced evidence supporting a claim for negligent
hiring. ECF No. 671 at 34. Pajak did not respond to this argument
and instead focused her opposition on the negligent retention
theory (discussed <u>infra</u>).

> [A] fair formulation of the inquiry upon which
> liability for negligent hiring or retention
> should be determined is: "when the employee
> was hired or retained, did the employer
> conduct a reasonable investigation into the
> employee's background vis a vis the job for
> which the employee was hired and the possible
> risk of harm or injury to co-workers or third
> parties that could result from the conduct of
> an unfit employee? Should the employer have
> reasonably foreseen the risk caused
> by hiring or retaining an unfit person?"

<u>McCormick v. West Virginia Dep't of Pub. Safety</u>, 503 S.E.2d 502,
507 (W. Va. 1998) (internal citation omitted). There has been no
evidence presented of either Defendants Under Armour, Inc., or
Under Armour Retail, Inc.'s, negligent hiring of Defendant
Boucher. Plaintiff has failed to allege or marshal sufficient facts
at this stage the Under Armour defendants did not conduct a
reasonable investigation into Boucher's background or that the
possible risk of harm or injury was reasonably foreseeable by
hiring Boucher. Defendants Under Armour, Inc., and Under Armour
Retail, Inc. are entitled to summary judgment on Pajak's claim for

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

negligent hiring because there is no genuine dispute as to any material fact for the jury to resolve, and they are entitled to judgment as a matter of law. Summary Judgment [ECF Nos. 692, 699] is **GRANTED** on the negligent hiring claim.

> **2. There is no genuine dispute of material fact and Defendants Under Armour, Inc. and Under Armour Retail, Inc., are entitled to judgment as a matter of law on Pajak's negligent supervision claim.**

Pajak claims that Defendants Under Armour, Inc., and Under Armour Retail, Inc., negligently supervised Boucher "as an employee, agent, and supervisor despite the Defendants' knowledge that Defendant Boucher has repeatedly, intentionally, maliciously and grossly violated Plaintiff's rights as protected under the [WVHRA] and other applicable laws." ECF No. 291, Am. Compl., ¶ 67. Defendants moved for summary judgment on this claim, stating that Pajak has not produced evidence supporting her claim for negligent supervision, and, again, Pajak did not respond to Defendants' argument. ECF No. 671 at 34.

"Plaintiffs alleging negligent supervision or training must first make an underlying showing of a negligence claim as to an employee, and then demonstrate that the employee was negligently trained or supervised." Launi v. Hampshire Cnty. Prosecuting Attorney's Off., 480 F.Supp.3d 724 (N.D.W. Va. 2020) (internal citation omitted). Pajak's claim for negligent supervision against

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

the Under Armour defendants requires a showing that they "failed to properly supervise [Boucher] and, as a result, [Boucher] committed a negligent act which proximately caused [Pajak's] injury." Taylor v. Cabell Huntington Hosp., Inc., 538 S.E.2d 719, 725 (W. Va. 2000).

All conduct committed by Boucher and alleged by Pajak is intentional. See C.C. v. Harrison Cnty. Bd. of Educ., 859 S.E.2d 762, 775 (W. Va. 2021) (finding "because all of the acts alleged to have been committed by the Assistant Principal were comprised of intentional conduct, the circuit court correctly ruled that the Petitioners had not made the requisite predicate showing of the Assistant Principal's negligence to support a claim of negligent supervision by the Board . . . ."). Because no negligence on the part of Boucher is alleged, Pajak's negligent supervision claim fails. Defendants are entitled to summary judgment on this claim, and the motions [ECF Nos. 692, 699] are **GRANTED** on the negligent supervision claim.

     **3. There remains a genuine dispute of material fact on Pajak's negligent retention claim, and Defendants Under Armour, Inc. and Under Armour Retail, Inc., are not entitled to judgment as a matter of law.**

Pajak alleges that Defendants Under Armour, Inc., and Under Armour Retail, Inc., negligently retained Boucher "as an employee, agent, and supervisor despite the Defendants' knowledge that

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

Defendant Boucher has repeatedly, intentionally, maliciously and grossly violated Plaintiff's rights as protected under the [WVHRA] and other applicable laws." ECF No. 291, Am. Compl., ¶ 67. Defendants move for summary judgment on this claim, stating that Pajak has not produced evidence supporting her claim for negligent retention, and Pajak responded in opposition. ECF No. 750 at 44.

"[T]o hold an employer liable for negligent retention, the employer must have been able to foresee the possible risk of harm or injury to co-workers or third parties that could result from the conduct of an unfit employee." Harrison Cnty. Bd. of Educ., 859 S.E.2d at 777 (internal citation and quotation marks omitted). Reasonable foreseeability by the employer is key in the analysis to determine whether a claim for negligent retention survives. Id.

The Under Armour defendants' risk of retaining Boucher was sufficiently foreseeable for Pajak's claim to survive summary judgment challenge. On or about June 20, 2018, Pajak called James Toner (HR) in shock that Boucher had provided negative performance feedback because he had never mentioned it in the past. ECF No. 750-17, Ex. Q, Toner's Dep. 107:2-17. Toner agreed "that wasn't the response that one would expect" if Boucher had been providing the negative feedback to Pajak he had relayed to Toner, and Pajak had indeed been receiving the negative feedback. Id. Toner

Pajak v. Under Armour                                        1:19cv160

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

requested Pajak's performance review in July 2018, and found it to be a positive performance review with constructive feedback regarding strategy. Id. 133:6-134:2. In September 2018, Pajak began voicing concern to Toner, again, about how Boucher was conducting the PIP, specifically about the subjective measures contained in the PIP and the shortened length of the PIP Boucher planned for her. Id. 91:2-92:8. These facts alone provide the Under Armour defendants with foreseeability as to Boucher's risk of retention as early as June 2018.

Viewing the facts in the light most favorable to Pajak, the Court **DENIES** summary judgment on this ground, finding there exists a genuine dispute of material fact and Defendants are not entitled to judgment as a matter of law. Summary judgment [ECF Nos. 692, 699] is **DENIED** on the negligent retention claim.

**E. Intentional Spoliation of Evidence.**

The Court, having granted Defendants Under Armour, Inc. and Under Armour Retail, Inc.'s, Motion to Bifurcate Spoliation Claims [ECF No. 772],[4] **DENIES WITHOUT PREJUDICE** Defendants' Motions for Summary Judgment [ECF Nos. 692, 699] on this claim.

---

[4] The Court granted this motion at the hearing convened on March 16, 2023. An Order memorializing the Court's reasons is forthcoming.

Pajak v. Under Armour                                    1:19cv160

### MEMORANDUM OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT

To prevail in an action for the intentional spoliation of evidence, a plaintiff must prove seven elements:

> (1) a pending or potential civil action; (2) knowledge of the spoliator of the pending or potential civil action; (3) willful destruction of evidence; (4) the spoliated evidence was vital to a party's ability to prevail in the pending or potential civil action; (5) the intent of the spoliator to defeat a party's ability to prevail in the pending or potential civil action; (6) the party's inability to prevail in the civil action; and (7) damages.

Syl. Pt. 11, Hannah v. Heeter, 584 S.E.2d 560, 564 (W. Va. 2003). In order to succeed, Pajak's "inability to prevail in the civil action" must first be determined. The verdicts or judgments on her underlying claims may prove dispositive on that element. Therefore, at this stage, the motion is premature and the Court **DENIES WITHOUT PREJUDICE** Defendants' Motions for Summary Judgment [ECF Nos. 692, 699] on this claim.

### V.   CONCLUSION

For the reasons consistent in this Memorandum Opinion and Order, the Court **GRANTS in part** and **DENIES in part** Defendants' Motions for Summary Judgment. [ECF Nos. 692, 699].

It is so **ORDERED.**

The Clerk is directed to transmit copies of this Memorandum Opinion and Order to counsel of record. The Clerk is further

Pajak v. Under Armour                                              1:19cv160

**MEMORANDUM OPINION AND ORDER GRANTING IN PART AND
DENYING IN PART MOTIONS FOR SUMMARY JUDGMENT**

directed to enter a separate order of judgment consistent with

this Memorandum Opinion and Order.

**DATED:** March 30, 2023

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA