IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**CYNTHIA D. PAJAK,**

    **Plaintiff,**

v.     CIVIL ACTION NO. 1:19-CV-160
                                                  (KLEEH)

**UNDER ARMOUR, INC.,**
**UNDER ARMOUR RETAIL, INC.,**
**and BRIAN BOUCHER,**

    **Defendants.**

**ORDER ON MOTIONS IN LIMINE**

Pending before the Court are motions *in limine* implicating Rule 404(b) of the Federal Rules of Evidence, filed by Plaintiff and Defendants. ECF Nos. 768, 769, 775, 776, 779, 780, 874, 876, 880. On March 16, 2023, the Court convened an evidentiary hearing on the motions to determine whether the evidence is admissible. See United States v. Hall, 858 F.3d 254, 266 (4th Cir. 2017). The motions are fully briefed and ripe for decision. The Court will discuss each in turn below.

    I.    **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, Cynthia Pajak ("Pajak"), sued Defendants Under Armour, Inc., Under Armour Retail, Inc.,[1] and Brian Boucher,[2]

---

[1] Defendants Under Armour, Inc., Under Armour Retail, Inc., will be collectively referred to as "Under Armour."
[2] Defendants Under Armour, Inc., Under Armour Retail, Inc., and Brian Boucher will be collectively referred to as "Defendants."

alleging she was discharged in retaliation for reporting various instances of inappropriate workplace behavior. Pajak was fired on December 10, 2018, and sued on July 16, 2019. The claims to be tried are:

1. West Virginia Human Rights Act ("WVHRA") violations against Defendants Under Armour, Inc., and Boucher;

2. Wrongful discharge under Harless v. First National Bank of Fairmont, 246 S.E.2d 270 (W. Va. 1978) against Under Armour Retail, Inc.;

3. Negligent retention against Under Armour, Inc., and Under Armour Retail, Inc.; and

4. Intentional spoliation of evidence against Under Armour, Inc., Under Armour Retail, Inc., and Boucher.

Pajak alleges that, after she reported internal complaints of inappropriate conduct that created a hostile work environment and subjected the complainants to gender discrimination, she was the victim of a retaliatory discharge. ECF No. 291, Am. Compl. at 1-2. Under Armour, Inc., hired her on November 5, 2013, but Pajak's state and federal tax documents for the tax year of 2018 report she was employed by Under Armour Retail, Inc. ECF No. 750-2, Ex. E, Form 1095-C & W-2.

In January, April, and November 2018, female employees reported several instances of inappropriate workplace conduct to Pajak. Three instances of alleged inappropriate workplace conduct

prompted Pajak's alleged protected activity: the Clarksburg Incident (January 2018), the Yammer Post (April 2018), and the Listening Session (November 2018). Each of these incidents involved alleged harassment or inappropriate work conduct by a male Under Armour employee against a female Under Armour employee. Each was reported to Pajak, who encouraged the female employees to submit written statements and, in turn, provided these statements to Boucher. Boucher minimized the female employees' concerns regarding each incident and directed Pajak to "move on."

It is based on these facts that Pajak believes she was discharged for reporting harassment. Pajak was fired after receiving unexpected negative feedback from Boucher, who had never before criticized her job performance. On September 10, 2018, Boucher placed her on a sixty-day Performance Improvement Plan ("PIP"), although the typical "PIP period" at Under Armour is ninety days. Boucher did not meet with her regularly for review during PIP period, and she was fired after her abbreviated PIP period expired in December 2018.

Under Armour – and therefore Boucher - had knowledge of a potential civil suit as early as September 2018 and at least by February of 2019. On February 15, 2019, Pajak's counsel "sent Under Armour a demand letter outlining Ms. Pajak's claims and notifying the company of impending litigation against it." ECF No. 291, Am. Compl., ¶ 36. The letter included "Under Armour's evidentiary

preservation obligations and instruct[ed] Under Armour to preserve all forms of potential evidence related to Ms. Pajak's claims." Id. Pajak alleges Defendants failed to preserve this evidence, and data relevant to Pajak's claims was deleted. Id. ¶ 38.

## II. LEGAL STANDARD

"Evidence is relevant if [] it has any tendency to make a fact more or less probable than it would be without the evidence[,] and [] the fact is of consequence in determining the action." Fed. R. Evid. 401. Generally, relevant evidence is admissible, and irrelevant evidence is not. Fed. R. Evid. 402. Relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Generally, character evidence is inadmissible. Rule 404(b) of the Federal Rules of Evidence provides, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Exceptions to this rule include "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

The Fourth Circuit Court of Appeals adheres to a four-step test to determine the admissibility of "prior bad acts evidence"

**ORDER ON MOTIONS IN LIMINE**

under Rule 404(b): the evidence must (1) be relevant and not offered to establish general character; (2) be probative of the essential claim; (3) be reliable; and (4) be able to pass the Rule 403 balancing test. United States v. Hall, 858 F.3d 254, 266 (4th Cir. 2017) (citing United States v. Queen, 132 F.3d 991, 997 (4th Cir. 1997)).

### III. MOTIONS IN LIMINE

Motions *in limine* [ECF Nos. 768, 769, 775, 776, 779, 780, 874, 876, 880] implicating Rule 404(b) of the Federal Rules of Evidence are **GRANTED in part** and **DENIED in part** for the reasons that follow. Outright, Boucher's motion for joinder in Under Armour's motions *in limine* is **GRANTED**. ECF No. 770. Boucher is hereby considered to have joined Under Armour's motions *in limine* [ECF Nos. 768 and 769].

a. **Defendants' Motion in Limine No. 3 Regarding Text Messages Exchanged Between Boucher and KG [ECF No. 768]**

Under Armour states that evidence of text messages between Boucher and KG, one of his subordinates, is irrelevant and prejudicial, and requires an *in limine* ruling under the Federal Rules of Evidence. ECF No. 768. Although Pajak noticed her intent to introduce this evidence under Rule 404(b) [ECF No. 245], at oral argument, she asserted that Rule 404(b) does not apply. Instead, she stated that this evidence is "part and parcel" to her claims. ECF No. 934, Tr. 16:2-17.

**ORDER ON MOTIONS IN LIMINE**

The Court finds the text messages between Boucher and KG to be admissible as "prior bad acts evidence" under Rule 404(b). The text messages, dated during Pajak's employment with Under Armour, included inappropriate discussions between Boucher and KG, a direct report of Boucher's at the time. The conversations included flirtatious messages from Boucher about his fantastical plans of going to the beach, playing golf, staying at the Four Seasons Resort, and drinking "endless [orange] crushes" with KG. ECF No. 892-5, Ex. E. KG often responds to the messages in agreement. Because there is no dispute that the text messages at issue were exchanged, the messages are undoubtedly reliable.

The defendants' intent in effectuating Pajak's discharge is the crux of her Harless and WVHRA. The disputed text messages are relevant to and probative of these claims as they relate to the intent and motive of Boucher and other Under Armour decisionmakers at the time of Pajak's alleged retaliatory discharge. Queen, 132 F.3d at 994. Furthermore, because circumstantial evidence is largely introduced in cases of alleged retaliatory discharge, "[a]ny evidence of an actual pattern of harassing conduct for submitting the claim is very persuasive." Powell v. Wyoming Cablevision, Inc., 403 S.E.2d 717, 721 (W. Va. 1991). "Such evidence may also be used to support allegations that an employer harbors an improper retaliatory intent or motive pursuant to Rule 404(b)." McLain v. McDonough, No. 8:17-CV-1283-WFJ-CPT, 2022 WL

ORDER ON MOTIONS IN LIMINE

604846, at *1 (M.D. Fla. Mar. 1, 2022) (citing Goldsmith v. Bagby Elevator Co., Inc., 513 F.3d 1261, 1286 (11th Cir. 2008)).[3]

Because the evidence is reliable, probative, and relevant, and it is not unduly prejudicial under the Rule 403 balancing test, it is admissible at trial.  The motion *in limine* is **DENIED**.

**b. Defendants' Motion in Limine No. 4 to Exclude Declaration and Testimony of Matthew Webster [ECF No. 769]**

Under Armour requests an *in limine* ruling prohibiting Pajak from introducing the declaration and testimony of Matthew Webster, a prior Under Armour employee.  It seeks to prevent Pajak from relying on Webster's testimony to establish that Boucher retaliated against Webster and therefore Boucher acted in accordance with his character. ECF No. 769. Pajak argues the evidence is relevant to Boucher's motive in firing Pajak and is otherwise admissible under the Federal Rules of Evidence. ECF No. 899.

Matthew Webster is a former District Manager at Under Armour. He was fired in February 2019 for violating the discount policy because he allowed nonemployees to use his employee discount. Prior to his termination, Webster knew Boucher had been sending inappropriate text messages to KG in violation of Under Armour's

---

[3] Defendants reference McLain in their brief but provided an inaccurate citation to that decision.  ECF No. 768 at p.5.

7

policies, and reported the issue Jim Toner, who did not address it. ECF No. 769-6, Webster Dec. ¶¶ 2-4.

Under Armour argues that Webster's testimony is unreliable because he claims to have been fired even though he was authorized by Pajak to misuse the discount policy. Pajak denies that she authorized this. "Evidence is reliable for purposes of Rule 404(b) unless it is so preposterous that it could not be believed by a rational and properly instructed juror." United States v. Siegel, 536 F.3d 306, 319 (4th Cir. 2008) (internal citation and quotation marks omitted). The fact that Webster and Pajak do not agree whether Webster was authorized to use the discount policy for nonemployees is by no means "preposterous" and therefore does not make his sworn testimony so unreliable to warrant exclusion prior to trial.

The evidence is likewise relevant. During the month of September or October 2019, while Pajak was on a PIP, Webster told Boucher he knew about the text messages between he and KG. ECF No. 933-3, Webster Dep. 196-198. This fact alone creates the inference that Defendants argue is missing regarding Boucher's intent. Therefore, for the same reasons Boucher's text messages with KG are relevant prior acts to show his intent with regard to Pajak's retaliatory discharge claim [see section III.a., supra]. Webster's declaration and testimony are relevant and otherwise admissible and the motion *in limine* is **DENIED.**

**c. Boucher's Motion in Limine to Exclude Evidence of Alleged Alcohol Use [ECF No. 775] and Stolen Golf Clubs [ECF No. 776]**

Boucher moves the Court to exclude evidence of his alleged alcohol use and stolen golf clubs, arguing the evidence is irrelevant and unfairly prejudicial. ECF Nos. 775, 776. Pajak responds in opposition, stating the evidence is relevant because the discussions between Boucher and KG via text message involve these topics, reflecting on Boucher's credibility, and are relevant to show Pajak's good faith belief that the work environment at Under Armour was hostile. ECF Nos. 894, 890.

The Court finds the evidence of Boucher's alleged alcohol consumption and stolen golf clubs to be irrelevant and inadmissible. Pajak has not alleged her discharge was fueled by Boucher's alleged alcohol use or theft. Likewise, Pajak has not shown how the evidence could be admissible for another purpose under Rule 404(b)(2). Evidence of these topics is inadmissible character evidence pursuant to Rule 404(b) and should be excluded. The motions *in limine* are **GRANTED**. ECF Nos. 775, 776.

**d. Under Armour's Motion in Limine No. 5 to Exclude Evidence Regarding Unrelated Events that Occurred in 2013 or 2014 [ECF No. 779]**

Under Armour moves the Court to exclude evidence regarding its employee's experience with unwelcomed advances in 2013 or 2014 from a fellow Under Armour employee. ECF No. 779. The employee, MD, was subjected to the 2013 or 2014 advances and also the 2018

Clarksburg incident, one of the three incidents supporting Pajak's <u>Harless</u> and WVHRA claims.

Defendants have indicated they intend to dispute whether Pajak's alleged protected activity was undertaken in good faith. Pajak argues the evidence related to the 2013 and 2014 incidents is relevant to her alleged good faith reporting of the three 2018 incidents supporting her claims. She became aware of the 2013 and 2014 events when they occurred, well before the Clarksburg incident in January 2018. ECF No. 934, Tr. 120:3-121:25. Therefore, when MD raised an issue with the Clarksburg incident in 2018, Pajak relied on her prior knowledge and experience to report the conduct in good-faith. The Court agrees and denies the motion on this ground. The 2013-2014 evidence is relevant to Under Armour's pattern and practice of handling HR complaints of inappropriate conduct, and to Pajak's awareness of Under Armour's shortcomings in this regard while reporting the three incidents of alleged protected activity at issue in this case.

Therefore, finding the evidence relevant and otherwise admissible under the Federal Rules of Evidence, the Court **DENIES** the motion *in limine*. The Court will instruct the jury that it may consider this evidence only with respect to whether Pajak's reporting of the three incidents – Clarksburg, Yammer Post, and WSJ Listening Session – was made in good faith.

e. **Under Armour's Motion in Limine No. 6 to Exclude Evidence Related to Pajak's Allegations that Boucher Retaliated against Missy Sage, Kim Nickels, and Dayna Perillo [ECF No. 780]**

Under Armour moves the Court to exclude evidence of alleged retaliation by Boucher against Missy Sage, Kim Nickels, and Dayna Perillo. ECF No. 780. Pajak argues the evidence is relevant 404(b) evidence that shows her proper motive in reporting the three at-issue incidents, which ultimately led to her alleged retaliatory discharge. The Court agrees with Pajak and denies the motion *in limine*.

Missy Sage, Kim Nickels, and Dayna Perillo were former Under Armour employees, each of whom held leadership roles within the company. There is evidence supporting the contention that Under Armour failed to take action when these employees reported concerns about Boucher, and that Boucher thereafter retaliated against them. This evidence is relevant to Pajak's alleged good faith reporting of the three 2018 incidents supporting her claims and fits within the proper admissibility standards under Rule 404(b). Because the evidence supports Pajak's belief that other Under Armour employees were retaliated against by Boucher, the evidence is relevant to the good-faith reporting argument she will advance at trial, and is not otherwise inadmissible at this pretrial juncture under the Federal Rules of Evidence.

Furthermore, at the hearing convened on March 15, 2023, the Court heard argument as to whether this evidence should be excluded under the rule against hearsay. At this juncture, the Court finds that the evidence is not inadmissible hearsay because it is not being offered for the truth of the matter asserted. Fed. R. Evid. 801(c). The motion *in limine* is **DENIED**.

f. **Under Armour's Motion in Limine No. 9 to Preclude Pajak from Introducing Evidence or Testimony Relating to Previously Decided or Irrelevant Issues [ECF No. 874]**

Under Armour argues the evidence of spoliation is irrelevant to the first trial on Pajak's retaliatory discharge and negligent retention claims because the intentional spoliation claim is being tried by a sequel trial. ECF No. 874]. Pajak responds that the evidence is relevant and otherwise admissible to prove motive and to support Pajak's claim for attorneys' fees. ECF No. 912.

As an initial matter, the question of bad faith litigation conduct, and any appropriate remedy such as a potential award of attorney's fees, is not for the jury's consideration. Thus, the Court rejects Pajak's argument that the purported spoliation evidence is relevant at trial on that ground. However, the Court finds the evidence of alleged intentional spoliation relevant to Pajak's retaliatory discharge and negligent retention claims because it raises an inference that Defendants made a concerted effort to "hide tracks" of their retaliatory discharge against

Plaintiff, and negligent retention of Boucher. The Court agrees with Pajak in that the spoliation evidence supports a "bad motive" theory on behalf of Boucher and possibly other Defendants. Motive and intent evidence is, of course, admissible in retaliatory discharge cases and, here, also under Rule 404(b). Alleged efforts to cover tracks are relevant to the question of unlawful intent in discharging Pajak. Rule 403 provides no basis for exclusion either. As the Court has repeatedly indicated, a limiting and/or adverse inference instruction concerning this evidence and its potential consideration by the jury will be provided. Such an instruction will further mitigate any alleged prejudice to Defendants.

Pajak is entitled to present this evidence to the jury because it is relevant to the underlying claims. The motion *in limine* is **DENIED**.

g. **Under Armour's Motion in Limine No. 10 to Preclude Pajak from Introducing Evidence Relating to Relativity Fest 2019 [ECF No. 876]**

Relativity Fest is a conference for the e-discovery and compliance communities. At the 2019 Relativity Fest, an Under Armour litigation specialist, Nicole Finck, spoke and reported that, in the past on an old platform, Under Armour encouraged its employees to delete text messages. This Court has previously stated the evidence is not germane to the issues in this case because

13

Under Armour discontinued its use of the platform Finck referenced on August 13, 2018; the litigation hold was placed in February 2019; and Pajak sued in July 2019. See ECF No. 21. This chronology of events supports a ruling to **GRANT** the motion *in limine* as the evidence would not have a tendency to make a fact more or less probable than it would be without the evidence.

### h. Pajak's Motion in Limine No. 2 [ECF No. 880]

Pajak moved *in limine* for an exclusion of evidence that she forwarded to herself, by email, more than 1,500 pages of confidential information. Because this evidence is relevant to Under Armour's defense to Pajak's claims under the after-acquired evidence doctrine, and all other Hall factors, though largely undisputed, are met, the Court denies the motion. The evidence also is relevant to Pajak's credibility, and Defendants are entitled to present it to the jury. There is nothing about this evidence that is unduly prejudicial to warrant exclusion under Rule 403 of the Federal Rules of Evidence, and other admissibility requirements are met.

Therefore, Pajak's motion in limine No. 2 [ECF No. 880] is **DENIED**. The Court **HOLDS IN ABEYANCE** the remaining motions *in limine* contained in docket number 880 and will address these in a forthcoming order.

## ORDER ON MOTIONS IN LIMINE

i. **Under Armour's motion in limine No. 7 [ECF No. 781]**

Finally, because Under Armour withdrew its motion *in limine* No. 7 on March 31, 2023 [ECF No. 943], the Court **DENIES** it **AS MOOT**.

### IV.  CONCLUSION

For the reasons discussed, the Court:

(1) **GRANTS** Boucher's motion to join Under Armour's motions *in limine* [ECF No. 770];

(2) **GRANTS** Under Armour's motion *in limine* no. 10 [ECF No. 876];

(3) **DENIES** Under Armour's motions *in limine* nos. 3, 4, 5, 6, 9 [ECF Nos. 768, 769, 779, 780, 874];

(4) **DENIES AS MOOT** Under Armour's motion *in limine* no. 7 [ECF No. 781];

(5) **GRANTS** Boucher's motions *in limine* to exclude evidence of alleged alcohol use and stolen golf clubs [ECF Nos. 775, 776]; and

(6) **DENIES-IN-PART** Pajak's motion in limine [ECF No. 880].

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to all counsel of record herein.

**DATED:** April 5, 2023

*Tom S Kleeh*

THOMAS S. KLEEH, CHIEF JUDGE
NORTHERN DISTRICT OF WEST VIRGINIA